**FILED**

**JANUARY 22, 2008**
MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| AMERICAN SERVICE INSURANCE COMPANY, an Illinois insurance company, )<br><br>Plaintiff, )<br><br>v. )<br><br>NAFTA GENERAL AGENCY, a Texas, Corporation, UNDERWRITERS MGA, Inc., a Texas corporation, and RAMON VILLARREAL, an individual, )<br><br>Defendants. ) | **08 C 443**<br><br>Case No.<br><br>**JUDGE COAR<br>MAGISTRATE JUDGE KEYS** |

## VERIFIED COMPLAINT FOR INJUNCTIVE AND OTHER RELIEF

Now comes the Plaintiff, American Service Insurance Company, an Illinois insurance company ("ASI"), by and through its attorneys, Sullivan Hincks & Conway, and for its Complaint against the defendants, NAFTA General Agency, a Texas corporation ("NAFTA"), Underwriters MGA, Inc., a Texas corporation ("UMGA") and Ramon Villarreal, an individual ("Villarreal"), all of the foregoing collectively referred to herein as "Defendants," states as follows:

### INTRODUCTION

1.    This is an action seeking injunctive relief, declaratory relief under 28 U.S.C. §2201, relief for breach of contract, relief for breach of fiduciary duties and damages for conversion.

### PARTIES

2.    ASI is an Illinois insurance company with its principal place of business located in Elk Grove Village, Illinois.

3.      NAFTA is a corporation that was organized under the laws of the state of Texas with its principal place of business located in Brownsville, Texas.

4.      UMGA is a Texas corporation with its principal place of business in McAllen, Texas.

5.      Villarreal is a Texas resident whose domicile is located at 3206 N. Bryan, Mission, Texas.

## JURISDICTION

6.      The present action arises out of a dispute over the termination of an agreement between the Plaintiff and the Defendants whereby the Defendants were to solicit and ASI was to issue insurance policies in an annual premium volume of up to $8,000,000 for non resident commercial auto insurance and $7,000,000 for non resident private passenger insurance. *See* Agreement, attached hereto and incorporated herein as Exhibit A, at Endorsement B, Article I, Section E.

7.      As of October of 2007, the total premiums earned on the policies solicited by the Defendants were approximately $2,200,000 and the total losses incurred by ASI under those policies were over $3,300,000.

8.      This Court has diversity jurisdiction under 28 U.S.C. Section 1332, as it involves a dispute between citizens of different states and the amount in controversy exceeds $75,000.

## VENUE

9.      Venue lies in this district pursuant to the parties' selection of this Court as the forum to resolve the dispute presented by this action. *See* Agreement, attached hereto and incorporated herein as Exhibit A, at Article XX, Section F.

-2-

## COMMON FACTS

10.  ASI entered into a Program Manager Agreement (the "Agreement") with NAFTA and UMGA for the issuance by ASI of short-term automobile insurance policies to Mexican nationals coming into the United States pursuant to the North American Free Trade Agreement.  *See* Agreement, Exhibit A hereto.

11.  The Agreement became effective on July 1, 2006.

12.  Pursuant to the Agreement, NAFTA and UMGA agreed to act as agent or manager of the insurance program.

13.  NAFTA and UMGA's duties under the Agreement included, *inter alia*, soliciting, issuing and servicing policies, collecting premiums, and depositing the same into a Premium Account for remittance to ASI.  *See* Exhibit A, at Article III, Sections A, B, G and K.

14.  NAFTA and UMGA agreed that all premiums, policy fees, and revenues received from the business generated under the Agreement were the property of ASI and NAFTA and UMGA agreed to act as a fiduciary for ASI with respect to the collection, depositing, and payment of all monies that it received under the Agreement.  *See* Exhibit A, at Article III, Section N.

15.  Villarreal guaranteed the performance of NAFTA's and UMGA's obligations under the Agreement.  *See* Exhibit A, at Endorsement F.

## COUNT I – PRAYER FOR DECLARATORY RELIEF

1-15.  ASI realleges and repleads paragraphs 1 through 15 above as and for paragraphs 1-15 this Count I of its Complaint as though fully set forth herein.

16.  The Agreement provided that it may be terminated immediately and without prior notice if the loss ratio for any accident year is 105% or greater:

> This Agreement may be terminated immediately at any time by either party
> by written notice:
>
> . . .
>
> (e.) <u>Loss ratio</u>.     If the Losses Incurred (as defined in Endorsement D)
> develop to 105% or more of the premium earned for any accident year.

*See* Exhibit A, at Article XV, Section A(4)(e).

17.     "Losses Incurred" for an accident year are further defined by the Agreement as
follows:

> "Accident Year (Agreement Year) Losses Incurred" shall mean: losses
> outstanding for the accident year at the end of the year, plus losses paid for
> the accident year, less accident year recoveries, plus accident year loss
> adjustment expense and legal fees paid and outstanding, plus fees paid under
> any Claims Service Agreement, plus IBNR reserve at the end of the year, plus
> all assessments and regulatory required contributions.

*See* Exhibit A, at Endorsement D, Article I.

18.     Premiums earned are defined as follows:

> "Premiums Earned" shall mean "Premiums Earned" shall mean unearned net
> premiums at the beginning of the year; plus Gross Written Premiums, less
> return premiums (GWP) during the year; less unearned net premiums at the
> end of the year.

*Id.*

19.     During the 2006 and 2007 accounting years, ASI experienced excessive losses under

the insurance program written as a result of the Agreement, resulting in losses of 130.6% of

premiums earned for 2006 and losses of 159.2% of premiums earned for 2007.

20.     As of October, 2007, the total losses incurred in 2006 were $512,980.00. The

premiums earned in 2006 were $392,874. Therefore, the 2006 loss ratio was 130.6%.

21.    As of October, 2007, the total losses incurred in 2007 were $2,833,515.00. The premiums earned in 2007 were $1,781,650.00. Therefore, the 2007 loss ratio was 159.2%.

22.    On November 7, 2007, ASI sent the Defendants a letter notifying them of the termination of the Agreement. The letter cited Article XV, Section A(4)(e), the loss ratio provision, as the reason for termination and instructed that no new business may be bound on or after November 12, 2007. *See* November 7 letter, attached hereto as Exhibit B.

23.    Upon request by Mr. Villarreal, ASI agreed to delay the effective date of termination until December 31, 2007.   Thus, on November 15, 2007, ASI sent NAFTA/UMGA a Modified Termination Agreement extending the termination date to December 31, 2007, and instructing: "under no circumstances will new or renewal business be written after that date." *See* November 15 letter, attached hereto and incorporated herein as Exhibit C.

24.    The Agreement also provided that it could be terminated immediately by either party at any time if:

> Misconduct. In the event of fraud, abandonment, gross or willful misconduct, material breach of contract, insolvency, or lack of legal capacity to act, including cancellation, suspension or non-renewal of its license or certificate of authority, on the part of either party. Gross or willful misconduct shall include, but shall not be limited to:
>
> * * *
>
> Either party being delinquent two (2) times in any consecutive twelve (12) month period in either the accounting for or the payment of any and all monies due the other party for any reason.

*See* Exhibit A, Article XV, Section A.

25.    Under the Agreement, the Defendants were obligated to immediately deposit into a Company account all monies received with respect to business written under the Agreement. *See* Exhibit A, at Article III, Section N.

26.    Defendants' payment to ASI for business generated under the Agreement for the month of October, 2007 was short by $15,860.33, which shortfall had not been paid to ASI as of December 31, 2007.

27.    Defendants' payment to ASI for business generated under the Agreement for the month of November, 2007 was short by $135,549.34, which shortfall still has still not been paid to ASI and, as of today, said shortfall is $129,409.67.

28.    On January 3, 2008, ASI notified the Defendants of their failure to pay amounts due to ASI for October and November, 2007 business generated under the Agreement and of their intent to exercise their rights under the Agreement for these breaches.

29.    The Defendants have admitted that they have received and failed to forward to ASI at least $90,000 of monies generated under the Agreement from November 1, 2007 to the present.

30.    The Agreement also provides that it shall be secured by an irrevocable, unconditional evergreen Letter of Credit in the face amount of $250,000.

31.    In approximately December, 2007, ASI attempted to make a valid charge to Defendants' letter of credit at Falcon Bank, which charge has been unfulfilled.

32.    Subsequently, ASI received correspondence from Falcon Bank stating that the line of credit the Defendants presented had been or would soon be canceled.

33.    In November of 2007, Villarreal agreed to confirm that the letter of credit was in place, but ASI still remains unable to charge on the account, in violation of the Agreement.

34.    The Agreement states that the Defendants shall indemnify ASI against all losses and expenses, including attorneys' fees and costs stemming from the Defendants' acts or

-6-

omissions. *See* Exhibit A, Article XII.

35.    Defendants have disputed that ASI has the right to terminate the Agreement or that the Agreement has been terminated by ASI.

36.    The Agreement provides that, in the event that there is a dispute over the termination of the Agreement, ASI has the right to suspend the Defendants' authority to bind coverage in respect to insurance policies issued as a result of the Agreement. *See* Exhibit A, at Article XIV, Section I.

37.    On January 8, 2008, ASI notified the Defendants that, in the alternative, the Defendants' binding authority was suspended pending the resolution of the dispute over the termination of the Agreement. *See* January 8 letter, attached hereto as Exhibit D.

38.    ASI continues to assert that it has right to terminate the Agreement and that the Agreement has been terminated, which contentions the Defendants continue to deny.

39.    ASI continues to assert that, in the alternative, ASI has the right to and did suspend the Defendants' authority to bind coverage for ASI insurance policies, which contentions the Defendants continue to deny.

40.    ASI continues to assert that Defendants have breached the Agreement by failing to timely pay the amounts due to ASI for the October 2007 and November 2007 activity under the Agreement and by failing to maintain $250,000 security for the Defendants' obligations under the Agreement, which contentions are denied by the Defendants.

41.    As a result of the parties' disputes over their respective rights and obligations in respect to the termination or suspension of the Agreement and in respect to Defendants' breaches of the Agreement, an actual controversy exists between ASI and the Defendants.

WHEREFORE, the Plaintiff, ASI requests this Court enter an Order providing for the following:

1.     Declaring that the losses that ASI incurred from policies issued as a result of the Program Manager Agreement were more than 105% of the premiums earned for the 2006 and/or 2007 year;

2.     Declaring that the Defendants breached the Program Manager Agreement by failing to timely pay to ASI the amounts due for the October and November activity under the Agreement;

3.     Declaring that the Defendants' failure to timely pay to ASI the amounts due for the October and November activity under the Agreement constituted gross or willful misconduct under the Agreement;

4.     Declaring that ASI had the right to terminate the Program Manager Agreement;

5.     Declaring that the Program Manager Agreement has been validly terminated effective December 31, 2007;

6.     Declaring that the Defendants breached the Program Manager Agreement by failing to maintain $250,000 security;

7.     Declaring that the Defendants are entitled to damages in an amount in excess of the jurisdictional minimum for the Defendants' breaches of the Agreements, plus their attorneys' fees and costs;

8.     Alternatively, declaring that ASI had the right to suspend the Defendants' binding authority under the Agreement; and

9.     Alternatively, declaring that the Defendants' binding authority under the Agreement has been suspended.

10.    Declaring that the Defendants did not have the right to issue, renew or bind ASI insurance policies after December 31, 2007.

## COUNT II – PRAYER FOR INJUNCTIVE RELIEF

1. – 41.    ASI restates and incorporates herein paragraphs 1-41 of Count I of this Complaint as if fully set forth herein.

42.    Based upon the foregoing, there is a likelihood that ASI will succeed on the merits of its claims.

43.    The Defendants continue to solicit business from members of the general public.

44.    UMGA continues to solicit agents to underwrite the policies it sells, including policies covering vehicles travelling over the United States-Mexican border.

45.    UMGA and NAFTA have each stated insureds will have been issued policies for which there is no coverage based upon ASI's termination of the Agreement.

46.    In support of its continued operations, on or about December 28, 2007, UMGA filed an action in Texas state court in Hidalgo County, Texas ("Hidalgo Action") claiming that the Agreement was improperly terminated and seeking to enjoin ASI from exercising any further action terminating the Agreement or cancelling ASI policies issued by UMGA.

47.    On or about January 7, 2008, NAFTA intervened in the Hidalgo action.

48.    On or about January 14, 2008 the *ex parte* temporary restraining order obtained by UMGA in the Hidalgo Action terminated following that Court's consideration of the arguments raised by ASI and the Court's subsequent comments to the Defendants to notify their agents and subagents of the termination of the Agreement.

49.  On January 14, 2008, the same day that the temporary restraining order in the Hidalgo Action terminated, NAFTA obtained another *ex parte* restraining order in a separate action it filed in Texas state court in Cameron County, Texas ("the Cameron Action").  The January 14 *ex parte* Order in the Cameron Action was nearly identical to the *ex parte* Order obtained by UMGA in the Hidalgo Action.

50.  The Agreement provides that the Defendants are obligated to maintain full and complete records pertaining to all transactions arising under the Agreement, which records shall be the property of ASI and available to ASI at all times. *See* Exhibit A at Article III, Section M.

51.  The Agreement provides that all policies, forms, manuals, equipment or supplies are to remain the Property of ASI and shall be returned to ASI upon demand. *See* Exhibit A, Article III, Section O.

52.  The Agreement provides that the Defendants are obligated to maintain true and accurate copies of all records pertaining to policies bound or written under the Agreement, which documents shall remain the property of ASI and shall be provided to ASI in a usable format upon demand. *See* Exhibit A, Article III, Section W.

53.  Upon the termination of the Agreement for any reason, the Defendants agreed to return to ASI all of its property, including records relating to all transactions under the Agreement, all policies, forms, confidential manuals and other documents, equipment and supplies and records of all policies written or bound  under the Agreement. *See* Exhibit A at Article XV, Section C. The Agreement also obligated the Defendants to immediately discontinue using ASI's name and logo upon termination. *Id.*

-10-

54.     All monies collected by the Defendants were the property of ASI and were to be deposited as they were received into ASI's premium trust account. The Defendants were also obligated to pay ASI all funds owed on a daily basis. *See* Exhibit A, at Article III, Section N.

55.     ASI has demanded the return of all its records, but the Defendants have failed and refused to return any records to ASI or to confirm that the Defendants have discontinued using ASI's name or logo.

56.     ASI has demanded the payment of funds due to it under the Agreement, but such amounts still have not been paid by the Defendants.

57.     With each passing day that the Defendants continue to solicit agents and insurance business and continue to act as if the Agreement is still in effect while failing to provide ASI with the records to which it is entitled and ASI's policy forms, manuals and other materials, ASI is suffering irreparable harm to its goodwill and reputation and ASI is deprived of its ability to control the unauthorized use of its name, logo, and confidential materials.

58.     ASI has an inadequate remedy at law because a legal remedy will not prevent the Defendants from continuing to act as if the Agreement is in effect and continuing to hold and use materials bearing ASI's name and logo.

59.     ASI also needs injunctive relief to prevent the Defendants from continuing to institute new lawsuits, which lawsuits continue to vexatiously interfere with ASI's rights under the Agreement.

60.     Injunctive relief is also needed to prevent the dissipation of monies due to ASI under the Agreement.

61.    The balancing of harms favors ASI. An injunction will stop the Defendants from making unauthorized use of ASI's names, policy materials and records. Without injunctive relief, the harm to ASI will be severe as it will be unable to stop the ongoing injury to its reputation and good will from the Defendants' unauthorized use of ASI's name and materials and unauthorized issuance of its policies.

62.    The public has an interest in having injunctive relief to insure that only legitimate insurance policies and certificates are being sold and issued and to insure that personal and commercial vehicles crossing the United States borders on a daily basis have valid insurance and legitimate insurance documents.

WHEREFORE, the Plaintiff, American Service Insurance Company requests that this Court enter a temporary restraining order and preliminary and permanent injunction that provides that:

1.    Restraining and enjoining the Defendants, NAFTA General Agency, Underwriters MGA, Inc., and Ramon Villarreal, any of their officers, agents, employees, successors, or assigns or any person or entity acting in concert with or participating with any of the foregoing from soliciting, selling or renewing American Service Insurance Company insurance policies, or directly or indirectly holding themselves out as representatives or authorized agents for American Service Insurance Company.

2.    Restraining and enjoining the Defendants, NAFTA General Agency, Underwriters MGA, Inc., and Ramon Villarreal, any of their officers, agents, employees, successors, or assigns or any person or entity acting in concert with or participating with any of the foregoing from filing or instituting any new legal proceedings or action in any court or other forum concerning the parties' rights and remedies stemming from the Program Manager Agreement;

-12-

3.      Requiring the Defendants, NAFTA General Agency, Underwriters MGA, Inc., and Ramon Villarreal, any of their officers, agents, employees, successors, or assigns or any person or entity acting in concert with or participating with any of the foregoing to immediately deliver to the Plaintiff any records pertaining to business or transactions conducted under the Program Manager Agreement at issue, conducted as an actual or purported representative or agent of American Service Insurance Company, or which otherwise pertain to any American Service Insurance policy.

4.      Requiring the Defendants, NAFTA General Agency, Underwriters MGA, Inc., and Ramon Villarreal, any of their officers, agents, employees, successors, or assigns or any person or entity acting in concert with or participating with any of the foregoing to immediately transfer to the Plaintiff any and all monies obtained from the sale of American Service Insurance Company policies to the present that have not previously been forwarded to the Plaintiff, which monies are American Service Insurance Company property.

## COUNT III – BREACH OF CONTRACT

1-63.   ASI restates and incorporates herein paragraphs 1 - 63 of Count II as fully set forth herein.

64.     Based upon the foregoing, the Defendants have breached the Agreement.

65.     As a result of the Defendants' breach, ASI has suffered damages.

WHEREFORE, the Plaintiff requests that the Court enter an order that provides that:

1.      The Defendants shall be ordered to account for each of the transactions generated as a result of the Agreement;

2.      The Plaintiff shall be awarded a judgment equal to the amount of the damages it suffered on account of Defendants' breaches of the Agreement;

-13-

3.     The Plaintiff shall be awarded the costs and attorneys' fees which it incurred as a result of Defendants' breaches of the Agreement, including the attorneys' fees and costs incurred in prosecuting this action.

4.     For such other and further relief in the Plaintiffs' favor as the Court deems proper.

## COUNT IV – BREACH OF FIDUCIARY DUTY

1.-63.     ASI realleges and replends paragraphs 1-63 of Count II as though incorporated herein.

64.     The Defendants owed ASI a fiduciary duty with respect to the collection, depositing and payment of all monies that it received under the Agreement.  *See* Exhibit A, at Article III, Section N.

65.     By virtue of being appointed ASI's manager under the Agreement, the Defendants owed ASI a fiduciary duty to: a) devote their best efforts to the business of ASI; and b) to act with good faith and loyalty toward ASI.

66.     The Defendants breach their fiduciary duty toward the Plaintiff by failing to immediately forward to ASI all monies due to it and/or the monies Defendants received in connection with Defendants' issuance of ASI policies.

67.     The Defendants breached their fiduciary duty to ASI by failing to maintain the letter of credit they put up to secure their obligations under the Agreement.

68.     The Defendants have breached their fiduciary duty to ASI by continuing to hold themselves out as being able to act as a Manager under the Agreement following the termination of the Agreement.

-14-

69.     The Defendants have breached their fiduciary duty to ASI by failing to immediately forward to ASI all documents, forms and materials related to the business written under the Agreement, including documents , forms and materials bearing ASI's name and logo.

70.     ASI has suffered significant damages as a result of the Defendants' breaches of their fiduciary duties.

71.     The Defendants' conduct is intentional, malicious and willful.

WHEREFORE, the Plaintiff requests that the Court enter and order that:

1.     Imposes a constructive trust on all monies received by the Defendants, NAFTA General Agency, Underwriters MGS, Inc., and Ramon Villarreal, any of their officers, agents, subagents, employees, successors, or assigns or any person or entity acting in concert with or participating with any of the foregoing from business generated under this Agreement or in respect to American Service Insurance Company policies from October 1, 2007 to the present.

2.     Order the Defendants, NAFTA General Agency, Underwriters MGS, Inc., and Ramon Villarreal, any of their officers, agents, subagents, employees, successors, or assigns or any person or entity acting in concert with or participating with any of the foregoing to account for and disgorge to the Plaintiff all money received from business generated under the Agreement or from ASI policies from October 1, 2007 or the date they first breached their fiduciary duties to Plaintiff, whichever is earlier, and award the Plaintiff a judgment in the amount of any other consequential changes stemming from the Defendants' conduct.

3.     Award the Plaintiff such punitive damages as may be appropriate under the circumstances.

4.    Award the Plaintiff the attorneys' fees and costs incurred as a result of Defendants' conduct, including the fees and costs incurred in connection with this action.

5.    Grant the Plaintiff such other and further relief in its favor as the Court deems appropriate.

## COUNT V – CONVERSION

1.-15.    Plaintiff restates and realleges paragraphs 1-15 of this Complaint as though fully set forth herein.

16.    Pursuant to the Agreement, all premiums, policy fees and revenues received from the business generated under the Agreement belonged to ASI and were to be immediately paid into an ASI account. *See* Exhibit A, at Article III, Section N.

17.    ASI restates and realleges Paragraph 29 from Count I of this Complaint as if fully set forth herein.

18.    ASI has demanded that the money due to it, including the $90,000 that the Defendants received and failed to forward, be promptly forwarded to the Plaintiff, but the Defendants have failed and refused to do so.

19.    The Defendants' conduct has been intentional, knowing, willful and malicious.

WHEREFORE, the Plaintiff requests that the Court enter an Order:

1.    Imposing a constructive trust on all monies received by the Defendants, NAFTA General Agency, Underwriters MGA, Inc. and Ramon Villarreal, any of their officers, agents, subagents, employees, successors or assigns of any person or entity acting in concert with or participating with any of the foregoing from business generated under the Agreement or in respect to any American Service Insurance Company policies from November 1, 2007 to the present.

2.      The Plaintiff is awarded a judgment in an amount equal to the compensatory damages stemming from Defendants' conversion of Plaintiff's monies, plus interest.

3.      The Plaintiff be awarded such primitive damages as may be appropriate under the circumstances.

4.      The Plaintiff be awarded the attorneys' fees and costs it incurred as a result of Defendants' actions, including the attorneys' fees and costs incurred in prosecuting this action.

5.      The Plaintiff be granted such other and further relief in its power as the Court deems appropriate.

Respectfully submitted,

American Service Insurance Company

By: /s/ Matthew P. Barrette                    .
      One of Its Attorneys

Patrick M. Hincks
Desmond Patrick Curran
Matthew P. Barrette
Sullivan Hincks & Conway
120 West 22nd Street, Suite 100
Oak Brook, Illinois  60523
Phone:  (630) 573-5021

## **VERIFICATION**

I, Stephen Bosy, pursuant to 28 U.S.C. §1746, do hereby declare under penalty of perjury that the following statement is true and correct and, if called to testify, my testimony would be as follows:

1.      I am the Vice President of American Service Insurance Company, the Plaintiff in this action, and am authorized by the Plaintiff to submit this affidavit.

2.      I have reviewed the foregoing Verified Amended Complaint for Injunctive and Other Relief.

3.      I have knowledge of the facts stated herein.

4.      If called as a witness in the above-captioned cause, I could testify competently to the facts stated in the foregoing Verified Amended Complaint for Injunctive and Other Relief.

5.      Exhibit A is a true and correct copy of the Program Manager Agreement reached between the parties to this action.

6.      Exhibit B is a true and correct copy of a letter sent to Ramon Villarreal on or about November 7, 2007.

7.      Exhibit C is a true and correct copy of a letter sent to Ramon Villarreal on or about November 15, 2007.

8.      Exhibit D is a true and correct copy of a letter sent to Ramon Villarreal at ASI's direction on or about January 8, 2008.

FURTHER, AFFIANT SAYETH NOT.

I declare under penalty of perjury that the foregoing is true and correct. Executed on January 21, 2008:

-18-