IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| AMERICAN SERVICE INSURANCE COMPANY, an Illinois insurance company,  )<br><br>Plaintiff,  )<br>v.  )<br>  )<br>NAFTA GENERAL AGENCY,  )<br>UNDERWRITERS MGA, INC., and  )<br>RAMON VILLARREAL,  )<br>  )<br>Defendants.  ) | Case No. 08 CV 443<br><br>Judge David H. Coar |

**PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION OR, IN THE ALTERNATIVE, TO EXTEND THE TEMPORARY RESTRAINING ORDER**

Now Comes the Plaintiff, American Service Insurance Company ("ASI"), by and through its attorneys, Sullivan Hincks & Conway, and hereby moves this Court for a Preliminary Injunction or, in the alternative, for an extension of the Temporary Restraining Order entered by Judge Coar on January 22, 2008. In support of its Motion, ASI states as follows:

### INTRODUCTION

On January 22, 2008, Judge Coar entered a Temporary Restraining Order after hearing arguments from counsel for ASI and counsel for Defendants who appeared by telephone. The Order, attached hereto as Exhibit "1" enjoins the Defendants from soliciting, selling or renewing any American Service Insurance Company insurance policies and from instituting any new legal proceedings against the ASI, among other things. At the hearing, Judge Coar set the matter over to February 1, 2008 for hearing before the Emergency Judge in light of the fact that he is scheduled to be on vacation during that week.

This Motion for Preliminary Injunction is necessitated by the alarming, continuing actions of NAFTA General Agency ("NAFTA"), Ramon Villarreal ("Villarreal") and

1

Underwriters MGA, Inc. ("UMGA") who have misused the parties' Program Manager Agreement and the Texas state court system to renew and issue insurance policies to the general public in ASI's name despite the fact that ASI, a licensed insurance company, has lawfully terminated its Program Manager Agreement with NAFTA/UMGA. The continuing actions of NAFTA/UMGA and Villarreal pose a real and substantial risk to ASI who may be asked to provide coverage on future automobile claims under these unauthorized policies and, further, NAFTA/UMGA's actions pose a great risk to the Mexican nationals who are driving under the assumption that NAFTA/UMGA is authorized to issue such policies and to the rest of the general public due to people crossing our borders with invalid insurance policies. ASI has information that <u>as recently as January 19, 2008, NAFTA/UMGA issued a policy in ASI's name to a Mexican national who attempted to provide proof of such policy to a United States border agent</u>. See the documents attached hereto as Exhibit (i) received by ASI from the Federal Motor Carrier Safety Administration.

## BACKGROUND

ASI is an Illinois insurance company in the business of selling insurance in numerous states, including Texas. (Ver. Comp., ¶ 2.) On or about July 5, 2006, ASI entered into a Program Manager Agreement ("PMA") with NAFTA which authorized NAFTA to offer insurance as a program agent of ASI to Mexican nationals driving passenger and commercial vehicles in the United States. (Decl. Bosy, ¶ 3 & Exh. "1"). NAFTA's duties under the PMA included soliciting, issuing, and servicing policies, collecting premiums, and depositing the same into a premium account for remittance to ASI. On or about February 23, 2007, the parties amended the PMA to include UMGA as another manager. (Decl. Bosy, ¶ 6 & Exh. "1").

The parties continued under this arrangement until November 7, 2007, when ASI delivered a letter to NAFTA/UMGA terminating the PMA effective November 12, 2007. (Decl. Bosy, ¶ 9 & Exh. "2"). The termination was delivered in accordance with Article XV, paragraph 4(e) of the PMA which permits ASI to terminate immediately if "losses incurred develop to 105% or more of the premium earned for any accident year." (Decl. Bosy, Exh. "1"). For the 2006 and 2007 accounting years, ASI incurred losses under the insurance program, resulting in loss ratios of 130.6% for 2006 and 159.2% for 2007. (Decl. Suerth, ¶¶ 6-7).

On November 15, 2007, at the request of NAFTA/UMGA, ASI and NAFTA/UMGA agreed to delay termination of the PMA until December 31, 2007, on the conditions that NAFTA/UMGA send 100% of all premiums and fees generated directly to ASI, that new rates would be imposed for personal and commercial insurance sales, and that NAFTA/UMGA would cause its bank to confirm that ASI's $250,000.00 letter of credit was renewed. (Decl. Bosy, ¶ 10 & Exh. "3"). The November 15, 2007, Agreement confirmed that "[u]nder no circumstances will new or renewal business be written after [December 31, 2007.]" (Decl. Bosy, Exh. "3").

On December 28, 2007, notwithstanding NAFTA/UMGA's agreement to cease issuing and renewing policies as of December 31, 2007, NAFTA/UMGA obtained an *ex parte* temporary restraining order from a Judge in the District Court of the 92nd Judicial District, Hidalgo County, Texas ("Hidalgo County Court") which purported, among other things, to preclude ASI from taking steps to "unjustifiably cancel or cause a non-renewal of insurance policies issued by UMGA..." (Decl. Bosy, ¶ 11 & Exh. "4"). The temporary restraining order was entered and continued for hearing on January 11, 2008. (Decl. Bosy, Exh. "4").

On January 3, 2008, ASI directed a letter to NAFTA/UMGA's counsel advising him of several of NAFTA/UMGA's breaches of the PMA. (Decl. Bosy, ¶ 12 & Exh. "5"). The

breaches delineated in the January 3, 2008, letter included NAFTA/UMGA's failure to maintain collateral levels of $250,000.00 to secure Villarreal's personal guarantee as required by the PMA and NAFTA/UMGA's past due receivables on the insurance non-resident program for the October and November bordereau. (Decl. Bosy, Exh. "5").

On January 8, 2008, ASI notified NAFTA/UMGA that, to the extent any Court would entertain the notion that ASI's termination of the PMA was ineffective, NAFTA/UMGA's right to bind new or renewal insurance policies was suspended immediately pursuant to Article XIV, I, of the PMA. ASI received no response from NAFTA/UMGA to that letter. (Decl. Bosy, ¶ 13 & Exh. "6").

Three days later, on January 11, 2008, the Hidalgo County Court heard oral argument on NAFTA/UMGA's request for a preliminary injunction. (Decl. Bosy, ¶ 14). Prior to the hearing, ASI moved to quash service and to dismiss NAFTA/UMGA's lawsuit or, in the alternative, to dissolve the temporary restraining order, among other things. At the hearing, the Hidalgo County Court extended the temporary restraining order for three more days until January 14, 2008 at 5:00 p.m. at which time the Court's injunction was scheduled to terminate. The Hidalgo County Court extended the order for the sole purpose of allowing NAFTA/UMGA the opportunity to contact its sub-agents to notify them of the termination. (Decl. Bosy, ¶ 14). The Hidalgo County Court withheld judgment on ASI's motion to quash service or dismiss for lack of jurisdiction until a later time.

Notwithstanding the order of the Hidalgo County Court, on January 14, 2008 at 9:55 a.m., NAFTA/UMGA obtained a new *ex parte* temporary restraining order in the District Court of Cameron County, Texas ("Cameron County Court") identical to the temporary restraining order that had been terminated by the Hidalgo County Court. In obtaining the restraining order

4

in the Cameron County Court, NAFTA/UMGA misrepresented that the *ex parte* restraining order was necessary because "there was not enough time to give notice to Defendant..." (Decl. Bosy, ¶ 15).

As matters stand, NAFTA/UMGA poses an imminent threat to ASI. NAFTA/UMGA retains numerous written materials, including policy forms, policies, manuals and marketing materials, bearing ASI's name and logo. (Decl. Bosy ¶¶ 17 – 19). UMGA continues to advertise on its website that it offers automobile insurance to Mexican nationals driving in the United States and it continues to solicit new agents to write more such policies. (Decl. Bosy, ¶ 16). NAFTA/UMGA also continues to issue insurance policies in ASI's name including at least one issued on January 19, 2008. Despite ASI's valid termination of the PMA, the actions of NAFTA/UMGA create a substantial risk to the goodwill of ASI, expose ASI to continuing claims, and threaten to harm members of the driving public that believe they are covered for automobile insurance when, in fact, they are not. (Decl. Bosy, ¶ 20).

## ARGUMENT

### A. THE PRELIMINARY INJUNCTION SHOULD BE GRANTED

In order to prevail on a motion for preliminary injunction, ASI must show that (1) ASI is reasonably likely to succeed on the merits, (2) ASI is suffering an irreparable harm that outweighs the NAFTA/UMGA's harm if the injunction were granted, (3) there is no adequate remedy at law, and (4) an injunction would not harm the public interest. Nano-Proprietary, Inc. v. Keesmann, 2007 U.S. Dist. LEXIS 7666, *9-10 (N.D. Ill. Jan. 30, 2007).

#### I. Likelihood of Success:

To demonstrate a reasonable likelihood of success on the merits, ASI need only show that its chances of prevailing are "better than negligible." Kinney v. Int'l Union of Operating

Engineers, 994 F.2d 1271, 1275 (7th Cir. 1993). ASI is likely to succeed on its claims against NAFTA/UMGA based upon NAFTA/UMGA's breach of several provisions of the PMA.

ASI is clearly entitled under the PMA to immediate injunctive relief against NAFTA/UMGA to prohibit NAFTA/UMGA from renewing or issuing policies as ASI's program manager. As stated above, on November 7, 2007, ASI validly terminated the PMA effective November 12, 2007. This termination, later extended by agreement of the parties to December 31, 2007, was valid and effective when made. Consequently, NAFTA/UMGA is no longer entitled to issue or renew policies.

Article XV of the PMA states as follows:

> 4.  This Agreement may be terminated immediately at any time by either party by written notice:
> ***
> (e). Loss ratio. If the Losses Incurred (as defined in Endorsement D) develop to 105% or more of the premium earned for any accident year.
> ***

Endorsement D to the PMA states that the Loss Ratio is to be determined by dividing the Accident Year Losses incurred for the year by the Premiums Earned for the year. The Accident Year Losses Incurred are defined as:

> losses outstanding for the accident year at the end of the year, plus losses paid for the accident year, less accident year recoveries, plus accident year loss adjustment expense and legal fees paid and outstanding, plus fees paid under any Claims Service Agreement, plus IBNR reserve at the end of the year, plus all assessments and regulatory required contributions.

During the 2006 and 2007 accounting years, using the calculations set forth in the PMA, ASI experienced Loss Ratios of 130.6% and 159.2%, respectively. As of October 2007, the total losses incurred by ASI under the PMA for 2006 were $512,980.00. The premiums earned in 2006 were $392,874.00, thereby resulting in a 2006 loss ratio of 130.6%. Similarly, as of October 2007, the total losses incurred by ASI for 2007 under the PMA were $2,833,515.00.

The premiums earned in 2007 were $1,781,650, thereby resulting in a 2007 loss ratio 159.2%. (Decl. Suerth, ¶¶ 4 – 7).

Both loss ratios far exceed the 105% loss ratio threshold above which ASI was permitted to immediately terminate the PMA. Despite having an absolute right to terminate the PMA immediately and, at the very least, no later than December 31, 2007, as agreed by the parties, NAFTA/UMGA has ignored its obligations by continuing to act as if the PMA was still in effect and by repeatedly obtaining *ex parte* temporary restraining orders to continue issuing and renewing policies.

Even assuming that an issue of fact remains as to whether ASI was entitled to terminate the PMA based upon NAFTA/UMGA's excessive loss ratio and NAFTA/UMGA's subsequent agreement to terminate as of December 31, 2007, ASI validly suspended NAFTA/UMGA's binding authority under the PMA in writing on January 8, 2008. (Decl. Bosy, ¶ 13 & Exh. "6"). Article XIV, I of the PMA unambiguously permits ASI to immediately suspend NAFTA/UMGA's binding authority under the PMA where a dispute exists concerning the reason for termination. Notwithstanding ASI's valid suspension of its binding authority, NAFTA/UMGA continues to sell policies under ASI name. See attached Exhibit (i).

NAFTA/UMGA may attempt to argue that this Court is precluded from issuing an injunction based upon the *ex parte* restraining order issued. The PMA states, however, that "the parties hereby consent to the exclusive jurisdiction of either the Circuit Court of Cook County, Illinois or the United States District Court for the Northern District of Illinois…regarding any disputes relating to or arising out of [the PMA]." The *ex parte* order obtained by NAFTA/UMGA from the Cameron County Court constitutes a direct violation of the PMA and is void. It is well-settled that the judgment of a court lacking jurisdiction over the subject matter

7

of the litigation or the parties is void. <u>Burnham v. Superior Court of California, County of Marin</u>, 495 U.S. 604, 608-609 (1990). The judgment of a court lacking such adequate jurisdiction is not entitled recognition under the Full Faith and Credit Clause of the United States Constitution, U.S. Const. Art. IV, § 1. <u>Sunrise Opportunities, Inc. v. Regier</u>, 2006 U.S. Dist. LEXIS 13024, *15-16 (N.D. Ill. Mar. 7, 2006) ("A judgment entered by a court without jurisdiction over the subject matter or parties is void.")

In light of the facts that ASI validly terminated the PMA because NAFTA/UMGA's loss ratio exceeded 105%, that NAFTA/UMGA expressly agreed not to issue or renew policies as of December 31, 2007, and, in the alternative, that ASI validly suspended NAFTA/UMGA's binding authority on January 8, 2008, ASI has shown a likelihood of succeeding on the merits.

### II. Irreparable Harm and No Adequate Remedy At Law

ASI will suffer irreparable harm in the event NAFTA/UMGA continues to issue insurance policies to the general public despite ASI's valid termination and/or suspension of the PMA. For each insurance policy issued or renewed by NAFTA/UMGA, ASI is exposed to potential claims that may be filed under each policy. For example, among the policies issued under the PMA are commercial policies providing $750,000.00 coverage to Mexican truckers operating in the United States. (Decl. Bosy, ¶ 4). If one of these Mexican truckers is involved in an accident tomorrow, ASI will with certainty be hauled into court to defend against a claim as high as $750,000.00 despite the fact that it prohibited the issuance of a policy.

Furthermore, the continued issuance and renewal of ASI policies by NAFTA/UMGA threatens to undermine ASI's goodwill. (Decl. Bosy, ¶ 20). Damage to goodwill can constitute irreparable injury for which there is no adequate remedy at law. Cf. <u>Re/Max N. Cent., Inc. v. Cook</u>, 272 F.3d 424, 432 (7th Cir. 2001). As described above, NAFTA/UMGA has retained

marketing and business-related paperwork containing ASI's logo and name. This makes it extremely easy for NAFTA/UMGA to issue policies, even without authorization from ASI. Each time NAFTA/UMGA issues or renews a policy or advertises under the auspices of ASI, NAFTA/UMGA leads a consumer to believe that the policy is backed by ASI despite the fact that the policy has been issued or renewed without authorization. When these consumers discover that the policy they purchased is not a valid ASI policy, ASI's reputation will suffer. In other words, without an injunction being issued, ASI will be unable to control the nature and quality of the services being provided by NAFTA/UMGA in ASI's name. ASI may properly insist that its reputation should not be imperiled by the acts of NAFTA/UMGA. See Re/Max, 272 F.3d at 432.

### III. Balance of Harms/Public Interest.

The balance of harms resulting from a grant of a preliminary injunction clearly favors ASI. In the event a preliminary injunction is not issued, ASI risks suffering millions of dollars in claims attributable to insurance policies it did not authorize. Furthermore, when consumers discover that policies were issued in ASI's name without ASI's backing, ASI's reputation in the industry will suffer immensely.

Conversely, if the injunction is issued, NAFTA/UMGA may select another insurance company to contract with on this line of business. In addition, NAFTA/UMGA's website reveals that NAFTA/UMGA deals in other lines of insurance. In other words, it will not go out of business merely because the injunction issues.

Besides, NAFTA/UMGA cannot claim an undue hardship if this injunction is issued because the PMA executed by the parties anticipates precisely the relief sought in this motion. As described above, the PMA permits ASI to terminate NAFTA/UMGA's right to issue policies

immediately in the event NAFTA/UMGA's Loss Ratio exceeds 105%. (Decl. Bosy, Exh. "1"). Furthermore, the PMA permits ASI to immediately suspend NAFTA/UMGA's binding authority in the event a dispute exists concerning ASI's right to terminate. Finally, on November 15, 2007, NAFTA/UMGA negotiated and entered into an agreement with ASI to delay the termination until December 31, 2007, thus giving NAFTA/UMGA forty-five days to prepare for the ultimate termination of their relationship. (Decl. Bosy, ¶ 10 and Exh. "3"). Since NAFTA/UMGA reasonably should have anticipated the immediate termination of the PMA, it cannot now claim undue hardship.

If an injunction proscribing NAFTA/UMGA from issuing and renewing ASI insurance policies is not issued, the general public will suffer. The public has an interest in knowing with whom they do business and whether or not the agent is authorized to sell ASI insurance. Re/Max, 272 F.3d at 433. As a result of ASI's valid termination and/or suspension, NAFTA/UMGA is no longer authorized under the PMA to issue or renew ASI policies. Each person purchasing such policies from NAFTA/UMGA will be misled to his detriment if NAFTA/UMGA continues to issue policies in violation of the PMA. Furthermore, each time a person that purchased such a policy approaches the Mexican-U.S. border, he or she will be presenting an illegitimate document to border agents in order to gain entry into the United States. Only an injunction from this Court can prevent this from continuing.

**B.     IN THE ALTERNATIVE, THE COURT SHOULD EXTEND THE TEMPORARY RESTRAINING ORDER PURSUANT TO FED. R. CIV. P. 65(b)(2).**

In the event the Emergency Judge is unable to schedule a hearing on ASI's Motion for Preliminary Injunction on February 1, 2008, as set by Judge Coar, ASI respectfully moves this Court for an Order extending the Temporary Restraining Order for a period not to exceed ten

10

days until such hearing may be held. Such an extension is authorized under Fed. R. Civ. P. 65 (b)(2) which permits the court to extend a Temporary Restraining Order for good cause.

As described above and in the Declarations of Stephen Bosy and Michael Suerth, good cause is indeed shown for an extension of the Temporary Restraining Order entered by Judge Coar after argument. ASI faces a very real risk of exposure to claims and erosion of goodwill as a result of Defendants' continuing sales of policies in violation of the termination and suspension provisions of the PMA.

### CONCLUSION

For the reasons as stated herein, ASI respectfully requests this Honorable Court enter a preliminary injunction as follows:

1.　Restraining and enjoining the Defendants, NAFTA General Agency, Underwriters MGA, Inc., and Ramon Villarreal, any of their officers, agents, employees, successors, or assigns or any person or entity acting in concert with or participating with any of the foregoing from soliciting, selling or renewing American Service Insurance Company insurance policies, or directly or indirectly holding themselves out as representatives or authorized agents for American Service Insurance Company.

2.　Restraining and enjoining the Defendants, NAFTA General Agency, Underwriters MGA, Inc., and Ramon Villarreal, any of their officers, agents, employees, successors, or assigns or any person or entity acting in concert with or participating with any of the foregoing from filing or instituting any new legal proceedings or action in any court or other forum concerning the parties' rights and remedies stemming from the Program Manager Agreement;

3.      Requiring the Defendants, NAFTA General Agency, Underwriters MGA, Inc., and Ramon Villarreal, any of their officers, agents, employees, successors, or assigns or any person or entity acting in concert with or participating with any of the foregoing to immediately deliver to the Plaintiff any records pertaining to business or transactions conducted under the Program Manager Agreement at issue, conducted as an actual or purported representative or agent of American Service Insurance Company, or which otherwise pertain to any American Service Insurance policy.

4.      Requiring the Defendants, NAFTA General Agency, Underwriters MGA, Inc., and Ramon Villarreal, any of their officers, agents, employees, successors, or assigns or any person or entity acting in concert with or participating with any of the foregoing to immediately transfer to the Plaintiff any and all monies obtained from the sale of American Service Insurance Company policies to the present that have not previously been forwarded to the Plaintiff, which monies are American Service Insurance Company property.

OR, IN THE ALTERNATIVE,

Extending Judge Coar's Temporary Restraining Order, entered on January 22, 2008 for a period not to exceed ten days.

Respectfully submitted,

AMERICAN SERVICE INSURANCE COMPANY

By: /s/ Matthew P. Barrette        .
    One of Its Attorneys

Patrick M. Hincks
Desmond P. Curran
Matthew P. Barrette
Sullivan Hincks & Conway
120 W. 22nd Street, Suite 100
Oak Brook, Illinois 60523
(630) 573-5021