IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| AMERICAN SERVICE INSURANCE COMPANY, an Illinois insurance company, ) ) ) Plaintiff, ) ) v. ) ) NAFTA GENERAL AGENCY, a Texas corporation, UNDERWRITERS MGA, INC., a Texas corporation, and RAMON VILLARREAL, an individual, ) ) ) ) ) ) ) Defendants. ) | Case No.: 08 C 443  Judge Coar Magistrate Judge Keys |

**MEMORANDUM IN SUPPORT OF DEFENDANTS'**
**MOTION TO DISMISS OR STAY THIS PROCEEDING**

The Court should dismiss this action, and deny Plaintiff's Motion For Preliminary Injunction Or, In The Alternative, To Extent The Temporary Restraining Order" ("Motion"), pursuant to Fed. R. Civ. P. 12(b) and other governing law, because venue is not proper in this Court.

The issues and parties in this case are virtually identical to those that are being litigated in two previously-filed lawsuits that are currently pending in the U.S. District Court for the Southern District of Texas (collectively the "Texas Actions"), which were initiated before Plaintiff filed this action. That Court, and not this one, is the proper venue. As Plaintiff has acknowledged in its pleadings, it is actively participating in the Texas Actions. The day after the Court granted Plaintiff's request for a temporary restraining order ("TRO") on January 22, Plaintiff removed one of the Texas Actions to the U.S. District Court for the Southern District of Texas; it removed the other Texas Action to a different court in the same district two days later. In each of its notices of removal, Plaintiff acknowledged that **"venue is appropriate"** in the

Southern District of Texas for the action. Additionally, Plaintiff's decision to remove the action to Federal Court was a clear violation of this Court's TRO, which barred the parties from "filing or instituting any new legal proceedings or action in any court or other forum concerning the parties' rights and remedies."

For all of those reasons, this Court should dismiss this entire proceeding, and deny the Motion, because venue is improper in this Court. As Plaintiff has admitted, the U.S. District Court for the Southern District of Texas is the proper venue as a consequence of the previously-filed Texas Actions. In the alternative, the Court should stay this litigation pending the outcome of the Texas Actions.

## INTRODUCTION

This lawsuit by Plaintiff, American Service Insurance Company ("ASI"), is a blatant and transparent attempt to forum-shop a dispute between the parties arising under a July 2006 Program Manager Agreement ("PMA") that is already the subject of earlier-filed Texas Actions. At the time ASI filed its Complaint and Motion For Temporary Restraining Order on January 22, 2008 (*see* Docket Entries #1, #9, respectively), ASI and Defendants NAFTA General Agency, Inc. ("NAFTA") and Underwriters MGA, Inc. ("UMGA") were already parties to the Texas Actions involving the same dispute arising under the PMA.[1]

Defendant Underwriters MGA, Inc. ("UMGA") on December 28, 2007 filed a "Petition For Declaratory Judgment, Petition For Damages, And Petition For Injunctive Relief" in the District Court for the 92d Judicial District of Hidalgo County, Texas. (A true and accurate copy is attached as Exhibit A hereto and made a part hereof.) That petition sought a temporary restraining order against ASI to, among other things, bar it from threatening or taking steps to

---

[1] Defendant Ramon Villarreal is named in this lawsuit in his alleged capacity as a guarantor of certain obligations of the other two defendants. *See* Complaint at ¶ 15.

2

cancel insurance policies issued by UMGA under the PMA, or cancelling the PMA. That petition also requested that the court order an accounting and "[a]fter a trial on the merits," award monetary damages against ASI. ASI filed a notice of removal on January 23, 2008 and that lawsuit is now proceeding in the U.S. District Court for the Southern District of Texas (McAllen). (A true and accurate copy is attached at Exhibit B hereto and made a part hereof.) ASI admitted in that notice that **"venue is appropriate"** in the Southern District of Texas." (*See* Exhibit B (emphasis added).) The Court in that case on January 24, 2008 "Order For Initial Pretrial And Scheduling Conference" and set an initial conference for April 9, 2008 before Judge Hinojosa. (A true and accurate copy of that Order is at Exhibit C hereto and made a part hereof.)

Defendant NAFTA General Agency, Inc. ("NAFTA") filed a "Petition For Intervention And For Declaratory Judgment, Petition For Damages, And Petition For Injunctive Relief" on January 14, 2008 in the District Court for the 197th Judicial Circuit, Cameron County, Texas. (A true and accurate copy of that Order is attached as Exhibit D hereto and made a part hereof). NAFTA likewise requested a temporary restraining order against ASI to, among other things, bar it from threatening or taking steps to cancel insurance policies issued by NAFTA under the PMA, or cancelling the PMA. That petition also requested that the court order an accounting and "[a]fter a trial on the merits", award monetary damages against ASI. ASI filed a notice of removal on January 25, 2008, and that lawsuit is now proceeding in the U.S. District Court for the Southern District of Texas (Brownsville). (A true and accurate copy is attached at Exhibit E hereto and made a part hereof.) ASI admitted in that notice that **"venue is appropriate"** in the Southern District of Texas. (*See* Exhibit E (emphasis added).) The Court in that case on January 28, 2008 "Order For Initial Pretrial And Scheduling Conference" and set an initial

conference for April 24, 2008 before Judge Tagle. (A true and accurate copy of that Order is attached at Exhibit F hereto and made a part hereof.)

ASI's alleged attempts to terminate the PMA, and the amounts the parties allegedly owe each other under it, are thus the subject of two separate lawsuits that were filed before this action and pending in two U.S. District Courts. ASI has nevertheless taken the disingenuous step repackaging its pending claims as an "emergency" requiring this Court to step in and address by taking extraordinary step of issuing temporary restraining orders and preliminary injunctions. ASI's tactic is precisely the type of "forum shopping" that is impermissible in Federal courts. The Court should therefore dismiss this action under the "First-Filed Rule;" or, in the alternative, stay these proceedings pending final resolution of the Texas Actions.

**ARGUMENT**

I.  **DISTRICT COURTS SHOULD DISMISS OR STAY DUPLICATIVE ACTIONS.**

A District Court has authority to dismiss a law suit "for reasons of wise judicial administration" where, as here, "it is duplicative of a parallel action already pending in another federal court." *Serlin v. Arthur Anderson & Co.*, 3 F.3d 221 (7th Cir. 1993) (quoting *Ridge Gold Standard Liquors, Inc. v. Joseph E. Seagram & Sons, Inc.*, 572 F.Supp. 1210, 1213 (N.D.Ill. 1983)). Under this First-Filed Rule, an action filed and pending in one jurisdiction should be given priority over a parallel cause of action later filed in a different jurisdiction, absent countervailing "special factors" that do not exist here. *Id.; see also Northwest Airlines, Inc. v. American Airlines, Inc.*, 989 F.2d 1002, 1005 (8th Cir. 1993)(where proceedings involving the same parties and issues are pending simultaneously in different federal courts, the first-filed of the two takes priority). The purpose of the rule is to conserve judicial resources and avoid conflicting rulings; it "gives priority, for purposes of choosing among possible venues when

4

parallel litigation has been instituted in separate courts, to the party who first establishes jurisdiction." (*Id.* (citation omitted.)

Two actions are considered to be parallel if they involve substantially the same parties, and the same issues, filed in different judicial districts. It is beyond argument that two actions are duplicative if the "claims, parties, and available relief do not significantly differ between the two actions." *Ridge Gold,* 572 F.Supp. at 1213 (citation omitted). And where an action is pending in another jurisdiction, the priority should go to the suit filed first. *See, e.g.,, Martin v. Graybar Elec. Co.*, 266 F.2d 202, 204 (7th Cir. 1959) ("Two simultaneously pending lawsuits involving identical issues and between the same parties ... is certainly anything but conducive to the orderly administration of justice. We believe it to be important that there be a single determination of a controversy between the same litigants and, therefore, a party who first brings [an] issue into a court of competent jurisdiction should be free from the vexation of concurrent litigation over the same subject matter ....").

## II.     THIS CASE IS DUPLICATIVE OF THE EARLIER-FILED TEXAS ACTIONS.

This case is duplicative of the Texas Actions, because it arises from the same set of facts, involves essentially the same parties (since Defendant Ramon Villarreal is involved in his capacity as guarantor of the other Defendants), and both actions will turn on a substantially similar set of inquiries and arguments. The Court should therefore dismiss this later-filed action.

### A.     This Case Is Duplicative Of The Texas Actions.

There can be no dispute that the Texas Actions and this action involve the "same parties [who] are contemporaneously litigating substantially the same issues in another forum." (*See, e.g., Finova Capital Corp. v. Ryan Helicopters U.S.A., Inc.,* N. 98 C 0761, 1998 WL 698900 at *2-3 (N.D.Ill. Oct. 2, 1998), *aff'd,* 180 F.3d 896 (7th Cir. 1999). ASI is a defendant in each of

the two individual Texas Actions brought by NAFTA and UMGA, and thus the parties are the same. ASI's Complaint seeks declaratory and injunctive relief under the same agreement that is the subject of the two Texas Actions, and involves interpretation of the same contract terms regarding whether ASI had the right to terminate the PMA; whether its purported termination was effective under the PMA; whether Defendants can continue to sell coverage; and other matters. And the parties in the Texas Actions and here all seek to recover damages based upon the same PMA.

The duplicative nature of this case in the Texas Actions is underscored by the fact that, if ASI is required to proceed with the first-filed Texas Actions rather than move it here, it will undoubtedly raise as affirmative matters, and thus have adjudicated, the very claims that it asks this Court to decide. Specifically, Count I of the Complaint here seeks a declaration that, among other things, ASI had the right to terminate the PMI, that it did so by December 31, 2007, and that the Defendants failed to maintain required security. (*See* Complaint at Count I.) Those allegations would clearly also be relevant to ASI's defenses to the claims at issue in the Texas Actions, which allege that ASI's purported termination was ineffective and violated the PMA. Similarly, ASI's claims in Count III for breach of contract; in Count IV for breach of fiduciary duty; and in Count V for conversion will each likely involve matters that ASI would be required to raise in its defense, and thus have adjudicated, in the Texas Actions.

### B.   The Texas Actions Were Filed First.

There likewise can be no dispute that the Texas actions were earlier-filed, and thus the Texas Federal Court is the proper venue.

As set forth above, one Texas Action was filed on December 28, 2007 and one on January 14, 2008. ASI filed a notice of removal for each action to Federal Court only after it

filed this case, on January 23 and January 25, 2008, respectively, possibly in an effort to avoid application of the First-Filed Rule. Any such gamesmanship, however, cannot obscure the fact that both matters were pending before ASI initiated this action on January 22. And both matters are still pending; in fact, the District Court in each action has ordered the parties to conduct a discovery conference and submit a joint discovery/case management plan by April 2008. The Texas Actions will thus remain the first-filed over this proceeding until entry of such judgments.

Indeed, ASI filed this action in Illinois federal court less than four weeks after the Texas Actions commenced. ASI's actions are thus precisely the type of "reactive litigation" that District Courts should dismiss if actions are duplicative. *See, e.g.,*, 17A *Moore's Federal Practice*, § 122.06(1) (Matthew Bender 3d Ed.).

III.  **THE COURT SHOULD EXERCISE ITS DISCRETION TO DISMISS THIS CASE BECAUSE ASI HAS VIOLATED THE TEMPORARY RESTRAINING ORDER THAT IT REQUESTED.**

An additional factor which should compel the Court to exercise its discretion to dismiss this case is that ASI has exhibited bad faith by violating the very TRO that they sought and obtained on January 22.

The TRO, among other things, expressly barred Defendants and "any person or entity acting in concert with or participating with" them from "instituting any new legal proceedings or action in any court ... concerning the parties' rights and remedies stemming from the" PMA. TRO (attached hereto at Exhibit G and made a part hereof) at ¶ 2. The PMA, among other things, authorized the corporate Defendants to sell policies of insurance backed by ASI. ASI is thus, by definition, "acting in concert with" and "participating with" Defendants in connection with actions taken pursuant to the PMA. As such, the TRO extended to ASI and barred it from "filing or instituting any new legal proceedings or action in any court" regarding this matter.

7

Despite that clear prohibition, ASI has instituted new legal proceedings with respect to both of the Texas Actions. Specifically, it filed January 23 and January 25, 2008 "Notices of Removal" for both of the Texas Actions, thereby taking action in the U.S. District Court for the Southern District of Texas that the TRO expressly barred it from taking. The bad faith that ASI has exhibited in violating its obligations under the TRO the day after it issued betrays its intention to use the Federal court system and to attain an unfair advantage over Defendants. The Court should therefore exercise its equitable powers to prevent ASI from realizing that advantage by dismissing this action.

## IV.  NO COMPELLING CIRCUMSTANCES WARRANT IGNORING THE FIRST-FILED RULE IN THIS CASE.

Finally, there are no compelling circumstances which justify abrogating the "First-Filed" doctrine in this case. While some courts have recognized such circumstances as a basis for allowing a later-filed case to proceed (*see, e.g., United States Fire Insurance Co. v. Goodyear Tire & Rubber Co.*, 920 F.2d 487, 488 (8th Cir. 1990)), the purpose the exception to avoid a race to the courthouse, such as where the first-filed case is a declaratory judgment action filed after notice has been given that a direct claim concerning the same issues is about to be filed:

> first, that the "first" suit was filed after the other party gave notice of its intention to sue; and second, that the action was for declaratory judgment rather than for damages or equitable relief.

*Boatmen's First Nat'l Bank of Kansas City v. Kansas Pub. Employees Retirement Sys.*, 57 F.3d 638, 641 (8th Cir. 1995), *citing Northwest Airlines*, 989 F.2d at 1005. No such circumstances appear in this case.

## CONCLUSION

For all of the foregoing reasons, this Court should enter an Order denying Plaintiff's deny Plaintiff's Motion For Preliminary Injunction Or, In The Alternative, To Extent The Temporary

Restraining Order; dismiss this action, or in the alternative order a stay in these proceedings pending resolution of the Texas Actions; and grant any and all other relief as this Court deems to be reasonable and appropriate.

                              Respectfully submitted,

                              **NAFTA GENERAL AGENCY, UNDERWRITERS MGA, INC.** and **RAMON VILLAREAL,** Defendants

                              By:   s/ Paul A. Duffy
                                      One of Their Attorneys

Michael J. Scotti, III  #6205868
Paul A. Duffy   #6210496
**FREEBORN & PETERS LLP**
311 S. Wacker Dr., Suite 3000
Chicago, Illinois   60606
(312) 360-6000

Dated: January 30, 2008

Westlaw.

Not Reported in F.Supp.2d  Page 1

Not Reported in F.Supp.2d, 1998 WL 698900 (N.D.Ill.)
**(Cite as: Not Reported in F.Supp.2d)**

**H**
Finova Capital Corp. v. Ryan Helicopters U.S.A., Inc.
N.D.Ill.,1998.
Only the Westlaw citation is currently available.
United States District Court, N.D. Illinois.
FINOVA CAPITAL CORPORATION, a Delaware corporation, Plaintiff,
v.
RYAN HELICOPTERS U.S.A., INC., a Florida corporation, and ST. Lucia Helicopters Limited, a foreign corporation, Defendants.
No. 98 C 0761.

Oct. 2, 1998.

*MEMORANDUM OPINION AND ORDER*

ANDERSEN, J.
*1 This case is before the court on the motion of defendants, Ryan Helicopters U.S.A., Inc. ("Ryan") and St. Lucia Helicopters Limited, to dismiss the complaint of plaintiff, Finova Capital Corporation, on the grounds that this action is duplicative of pending litigation in the High Court of Saint Lucia, West Indies. In the alternative, defendants seek to stay this litigation pending the completion of the proceedings in the High Court of Saint Lucia. For the following reasons, this court stays this action pursuant to the Colorado River doctrine until the proceedings pending in Saint Lucia are completed.

*BACKGROUND*

The events which resulted in the present litigation began on or about September 28, 1992 when Ryan entered into a written Helicopter Lease Agreement with Rotorcraft Partnerships, Ltd. ("Rotorcraft") for the lease of two commercial helicopters. The lease agreement provided that Ryan would lease the two helicopters for a sixty month term, commencing October 15, 1992 and terminating October 15, 1997. The agreement granted Ryan an option to purchase the helicopters for $157,622 at the conclusion of the lease provided it was in compliance with the payments required under the lease. The agreement also stated that any dispute arising out of or related to the lease would take place in Illinois and be resolved under Illinois law.

On August 9, 1996, Rotorcraft assigned all of its rights and interests as lessor under the lease to plaintiff Finova Capital Corporation ("Finova"). Rotorcraft assigned the lease to Finova to secure the performance of its obligations under a secured loan agreement, promissory note, and first priority aircraft chattel mortgage and security agreement. Subsequently, on October 15, 1997, the lease terminated in accordance with its terms. Finova alleges that, while it was entitled to immediate return of the helicopters upon termination of the lease, Ryan and/or St. Lucia Helicopters have refused to return the helicopters as required under the lease and continue to operate the helicopters in St. Lucia. St. Lucia Helicopters is a subsidiary of Ryan and is in the business of providing helicopter services throughout St. Lucia. Finova claims that St. Lucia Helicopters operates the helicopters at issue from the George F.L. Charles Airport in St. Lucia.

On October 15, 1997, Ryan filed suit against Rotorcraft and its president James Panoff in St. Lucia seeking, in part, a declaration that it is the owner of the helicopters upon the payment of $14,713.11, which represents the rental payments for the remaining three months, and the lump sum of $157,000. In that action, Ryan alleges that, after it made forty-five of the sixty payments on the helicopters, Textron Financial Corporation ("Textron") informed Ryan that Textron held title to the helicopters until Rotorcraft paid Textron the amount of an outstanding debt. Textron also

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                                          Page 2
Not Reported in F.Supp.2d, 1998 WL 698900 (N.D.Ill.)
**(Cite as: Not Reported in F.Supp.2d)**

allegedly notified Ryan that it would have to pay $315,200 to purchase the helicopters rather than the $157,600 as provided under the lease. Ryan claims that it refused these requests and continued to perform under the lease agreement with Rotorcraft by transmitting the lease/purchase payments into an escrow account pending the resolution of the dispute.

*2 Ryan further alleges that in August 1996 it was notified that Rotorcraft had changed financiers from Textron to Finova. Subsequently, Ryan entered into a supplemental agreement with Rotorcraft which provided that all lease payments would be paid in an escrow account until the issues concerning title to the helicopters were resolved. The supplemental agreement provided that any dispute arising out of the agreement would take place in either Illinois or St. Lucia and would be resolved under Illinois and/or St. Lucia law. The agreement further provided that Rotorcraft would transfer ownership of the helicopters to Ryan upon payment of the remaining fifteen lease payments and the lump sum of $157,622 as set forth in the original lease agreement. This supplemental agreement was signed by James P. Panoff in his personal capacity who guaranteed title to the helicopters.

In the St. Lucia litigation, Ryan claims that, after it received notice that Finova was in possession of the original lease agreement, it tendered to Rotorcraft the remaining three monthly installments and the lump sum of $157,622. Ryan alleges that Rotorcraft breached the lease agreement by refusing to accept payment which, in turn, would have required Rotorcraft to surrender title to the helicopters. On February 17, 1998, Finova filed an application to intervene in the St. Lucia litigation. Approximately two months later, the St. Lucia Court granted the application of Finova to intervene. On May 21, 1998, Ryan filed an amended complaint that, while retaining substantially the same allegations as the original complaint, added Finova as a party defendant. Meanwhile, Finova filed this action against Ryan and St. Lucia Helicopters seeking, among other things, a declaration that it is the sole owner of the helicopters at issue.

*DISCUSSION*

While the federal courts have a "virtually unflagging obligation ... to exercise the jurisdiction given them,"*Colorado River Water Conservation Dist. v. United States,* 424 U.S. 800, 817, 96 S.Ct. 1236, 1246, 47 L.Ed.2d 483 (1976), certain exceptions to this rule exist. The pragmatic considerations of judicial efficiency and the comprehensive disposition of litigation have led to an expanding doctrine of abstention. The federal district courts may abstain from reaching the merits of a case within its jurisdiction to avoid interfering with pending state judicial or administrative proceedings, *Younger v. Harris,* 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971), to avoid needless conflict with the ability of the state to administer its own affairs, *Buford v. Sun Oil Co.,* 319 U.S. 315, 63 S.Ct. 1098, 87 L.Ed. 1424 (1943), or to leave to the states the resolution of unsettled questions of state law, *Railroad Comm'n v. Pullman Co.,* 312 U.S. 496, 61 S.Ct. 643, 85 L.Ed. 971 (1941).

The federal district courts may also stay or dismiss an action "for reasons of wise judicial administration ... whenever it is duplicative of a parallel action already pending in another federal court."*Serlin v. Arthur Andersen & Co.,* 3 F.3d 221, 223 (7th Cir.1993) (internal quotations omitted). In the interest of international comity, this principle also applies to parallel actions pending in courts in a foreign country. *Ingersoll Mill. Mach. Co. v. Granger,* 833 F.2d 680, 685 (7th Cir.1987). While the federal courts may stay or dismiss an action to avoid duplicative litigation in a foreign country, the court should ordinarily allow both actions "to proceed simultaneously, at least until a judgment is reached in one which can be pled as res judicata in the other" absent exceptional circumstances. *Laker Airways Ltd. v. Sabena,* 731 F.2d 909, 926 (D.C.Cir.1984); *seealsoChina Trade & Dev. Corp. v. M.V. Choong Yong,* 837 F.2d 33, 37 (2d Cir.1987); *Herbstein v. Bruetman,* 743 F.Supp. 184, 187-88 (S.D.N.Y.1990).

*3 The first issue we must address in determining whether to dismiss or stay this litigation in light of the previously filed action in St.

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                                  Page 3
Not Reported in F.Supp.2d, 1998 WL 698900 (N.D.Ill.)
**(Cite as: Not Reported in F.Supp.2d)**

Lucia is whether the concurrent proceedings are parallel. *Caminiti & Iatarola, Ltd. v. Behnke Warehousing, Inc.,* 962 F.2d 698, 700 (7th Cir.1992). A suit is parallel when "substantially the same parties are contemporaneously litigating substantially the same issues in another forum."*Id.* (internal quotations omitted); *seealsoSchneider Nat'l Carriers, Inc. v. Carr,* 903 F.2d 1154, 1156 (7th Cir.1990). The actions, however, need not be identical. The issues are sufficiently similar when there is a "substantial likelihood that the [foreign] litigation will dispose of all claims presented in the federal case."*Lumen Constr., Inc. v. Brant Constr. Co.,* 780 F.2d 691, 695 (7th Cir.1985). Similarly, even though the parties may appear formally distinct, the actions may be parallel when the parties share some legal identity of interest such that they are "substantially the same." *Caminiti,* 962 F.2d at 700-01.

It is clear that this litigation and the St. Lucia action are parallel. Ryan commenced the St. Lucia litigation against Rotorcraft and, after the St. Lucia Court granted Finova's motion to intervene, named Finova as a defendant. While Rotorcraft is not a party to this litigation, Rotorcraft assigned to Finova its rights under the lease agreements. Thus, the parties in the St. Lucia litigation and this federal action are identical or substantially the same. In addition, the matter of contention in the St. Lucia litigation is identical to the issue in this litigation. In the St. Lucia litigation, Ryan seeks, in part, a declaration that it is the owner of the helicopters upon payment of the rental payments for the three remaining months and the lump sum of $157,000. Similarly, Finova seeks in this litigation, among other things, a declaration that it is the sole owner of the helicopters at issue. Thus, resolution of one of these actions would necessarily be dispositive of the other.

While this litigation and the St. Lucia action are parallel, this court may not stay or dismiss this litigation unless there exist exceptional circumstances that justify deference to the St. Lucia proceedings. This court must balance the following factors to determine whether exceptional circumstances exist to warrant abstention in this case: (1) whether the foreign or federal court has assumed jurisdiction over property; (2) the geographical inconvenience of the federal forum; (3) the desirability of avoiding piecemeal litigation; (4) the order in which jurisdiction was obtained by the concurrent forums; (5) the source of governing law; (6) the adequacy of the foreign court action to protect the rights of the federal plaintiffs; (7) the relative progress of the state and federal proceedings; (8) the presence or absence of concurrent jurisdiction; and (9) the vexatious or contrived nature of the federal claim. *SeeColorado River,* 424 U.S. at 818;*Caminiti,* 962 F.2d at 701.

*4 In the present case, there are a number of factors that weigh in favor of abstention. While the St. Lucia litigation apparently has not progressed significantly beyond this case, the St. Lucia court obtained jurisdiction over the instant dispute four months prior to this court. Moreover, the helicopters that are the subject of this dispute are located in St. Lucia and are within the jurisdiction of the St. Lucia court. Similarly, Finova does not dispute defendants' contention that a majority of the witnesses and documentation relevant to this case are also located in St. Lucia. The location of the helicopters and relevant evidence in St. Lucia certainly makes litigating the dispute in this federal forum geographically inconvenient. Further, as Finova concedes, this case involves a contract dispute that will likely be resolved under Illinois law and does not involve any federal questions. Thus, there is no strong federal interest that this case be adjudicated in federal court.

Additionally, considerations of judicial economy strongly favor staying these proceedings pending the outcome of the St. Lucia litigation. As noted above, this court is being asked to determine the same question at issue in the St. Lucia litigation, namely, ownership of the helicopters. Thus, the exercise of jurisdiction in this case would result in piecemeal litigation resulting in a duplication of efforts and a waste of judicial resources. The duplicative nature of this litigation also presents the danger that each court will reach a different result on the same issue. Finally, Finova has not argued, much less produced any evidence, that the St. Lucia court is inadequate to protect its rights. The resolution of this case will likely involve the

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

application of Illinois contract law. There is no evidence before this court from which we could conclude that the St. Lucia court will be unable to resolve the straightforward contract issues relevant to this litigation.

While these factors militate in favor of staying this litigation pending the conclusion of the St. Lucia action, Finova argues that the original lease agreement between Rotorcraft and Ryan requires that the litigation proceed in this forum. As discussed previously, the original lease agreement provides that all disputes arising thereunder will take place in Illinois and be resolved under Illinois law. The 1996 supplemental agreement, on the other hand, provides that all such disputes may be litigated in either Illinois or St. Lucia. Finova claims that the forum selection clause in the original lease agreement controls because its ownership claims are based on that agreement. Alternatively, Finova claims that, even if the 1996 supplemental agreement applies, the supplemental agreement permits the parties to file concurrent suits in St. Lucia and Illinois. (Pl.'s Mem. Opp'n Mot. Dismiss at 9).

After a careful consideration of the original and supplemental lease agreements, we conclude that allowing the present dispute to proceed in St. Lucia is consistent with the agreement of the parties. The supplemental agreement provides that the parties may bring suit in either Illinois or St. Lucia. While this forum selection clause is inconsistent with the original lease agreement, it takes precedence because the supplemental agreement expressly provides that its provisions govern in the event there is a conflict. Finova cannot avoid the operation of this provision with its blanket assertion that its ownership claims are based on the original lease agreement. The supplemental agreement provides that Rotorcraft is entitled to the helicopters unless defendants pay $157,622 and the remaining fifteen monthly payments. Thus, in order to obtain a declaration that it is the owner of the helicopters, Finova apparently will have to establish that defendants failed to comply with this provision.

*5 Therefore, Finova may assert successfully its ownership claims only if it can show that it is entitled to the helicopters under both the original and supplemental agreements. Viewed in this light, the ownership claims Finova advances in this litigation are not based solely on the original lease agreement. As a result, we reject Finova's argument that the agreement between the parties requires that any dispute be resolved in Illinois. While Finova is correct that the supplemental agreement does not forbid concurrent actions in Illinois and St. Lucia, we are unable to discern how that requires this court to permit both actions to proceed. As the above analysis amply demonstrates, there are exceptional circumstances in this case that militate in favor of abstention. We will not allow a private agreement permitting duplicative and wasteful litigation to extinguish our ability to stay such an action.

In summary, we find that allowing both cases to proceed would likely result in duplicative and wasteful litigation, with the possibility that different tribunals could reach inconsistent resolutions of the same issues. While Finova has devoted a substantial portion of its brief to the general rule that federal courts should not abstain in favor of concurrent foreign litigation, it has offered little explanation to rebut the contention that exceptional circumstances exist that bring this case outside the purview of the general rule. Accordingly, this action is stayed pending the completion of the St. Lucia litigation. *See LaDuke v. Burlington Northern R.R. Co.,* 879 F.2d 1556, 1561-62 (7th Cir.1989) (holding that a stay, not a dismissal, is the proper procedural mechanism for a district court to employ when deferring to a parallel proceeding under the Colorado River doctrine).

## CONCLUSION

For all of the foregoing reasons, this court hereby denies in part and grants in part defendants' motion to dismiss. This court grants the motion to the extent it seeks to stay this litigation pending the conclusion of the St. Lucia litigation. The motion is denied to the extent it seeks to dismiss this litigation. The next status hearing in this case is June 8, 1999 at 9:00 a.m. Meanwhile, the parties are

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.