IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| AMERICAN SERVICE INSURANCE COMPANY, an Illinois insurance company, | ) ) ) | |
| Plaintiff, | ) ) ) | |
| v. | ) ) | Case No.: 08 C 443 |
| NAFTA GENERAL AGENCY, a Texas corporation, UNDERWRITERS MGA, INC., a Texas corporation, and RAMON VILLARREAL, an individual, | ) ) ) ) ) ) | Judge Coar<br>Magistrate Judge Keys |
| Defendants. | ) | |

**DEFENDANTS' OPPOSITION TO
PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION OR, IN THE
ALTERNATIVE, TO EXTEND THE TEMPORARY RESTRAINING ORDER**

Defendants, NAFTA GENERAL AGENCY ("NAFTA"), UNDERWRITERS MGA, INC. ("UMGA") and RAMON VILLARREAL, pursuant to the Court's January 30, 2008 Order, and other governing law, submit their MEMORANDUM IN OPPOSITION TO PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION ("Motion").

## INTRODUCTION

American Service Company, Inc. ("ASI") has fallen far short of meeting even a single element of its burden to prove the need for this Court to grant the extraordinary remedy of a preliminary injunction, or further extension of the January 22, 2008 temporary restraining order. ("TRO," as amended, is attached hereto as Attachment A and made a part hereof.) This is a simple breach of contract case, and Defendants should have the full opportunity to take discovery and have its claims adjudicated without issuance of an injunction. Any damages that

ASI claims are monetary, were a known and foreseeable risk that ASI assumed voluntarily assumed by executing an agreement with Defendants.

ASI has not shown that it is likely to succeed on the merits of its claim; indeed, two Texas State courts have already ruled that *Defendants*, and not ASI, are likely to prevail on ASI's contract claims arising under the "Program Manager Agreement" ("PMA") between the parties. (*See* Texas Court Temporary Restraining Orders granted on behalf of NAFTA and UMGA, attached hereto as Attachment B and made a part hereof.) ASI has an adequate remedy at law because any losses that it claims for the alleged issuance of invalid insurance policies may be remedied by an award of damages. ASI has also failed to identify any "irreparable harm" that may result absent an injunction; its claim of non-monetary losses in the form of damage to its "goodwill" among unidentified third-parties with whom ASI has never transacted business is sheer speculation, remote and unsupported by even a single fact. And the balance of the equities here weighs heavily against entering the injunction, because doing so will result in a both loss of business that threatens the viability of NAFTA and UMGA, and threaten public safety due to the prospect that currently-insured third-party drivers will unwittingly lose insurance coverage.

This Court should also deny the Motion because it asks the Court to resolve disputes that, under the PMA, the parties are required to resolve through arbitration. Finally, as Defendants set forth in their January 30, 2008 Motion to Dismiss this action, ASI has already consented to jurisdiction in the U.S. District Court for the Southern District of Texas, where Defendants' earlier-filed suit arising under the identical set of facts at issue here are now pending.

## ARGUMENT

I.     ASI HAS FAILED TO MEET EVEN A SINGLE ELEMENT NECESSARY TO JUSTIFY A PRELIMINARY INJUNCTION, OR TO EXTEND THE TRO.

A.     **Legal Requirements.**

A preliminary injunction is an extraordinary remedy intended to preserve the status quo until the merits of a case may be resolved. (*Indiana Civil Liberties Union v. O'Bannon*, 259 F.3d 766, 770 (7th Cir. 2001), *cert.* denied, 534 U.S. 1162 (2002).) As a threshold matter, a party seeking a preliminary injunction must prove (1) some likelihood of succeeding on the merits, and (2) that it has "no adequate remedy at law" and will suffer "irreparable harm" if preliminary relief is denied. (*Abbott Laboratories v. Mead Johnson & Co.*, 971 F.2d 6, 11-12 (7th Cir. 1992).) If the moving party cannot establish either prerequisite, the Court must deny the injunction. If the moving party clears both thresholds, the court must then consider: (3) the irreparable harm the non-moving party will suffer if preliminary relief is granted, balancing that harm against the irreparable harm to the moving party if relief is denied; and (4) the public interest, meaning the consequences of granting or denying the injunction to non-parties. (*Id.*; *Goodman v. Illinois Dept. of Financial and Professional Regulation*, 430 F.3d 432, 437 (7th Cir. 2005).)

Courts should not grant a preliminary injunction absent a compelling need. "[A] preliminary injunction is an extraordinary and drastic remedy, one that should not be granted unless the movant, *by a clear showing,* carries the burden of persuasion." (*Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997) (emphasis in original) (quotation omitted).) ASI has fallen far short of meeting the extraordinarily high burden of establishing the need for a preliminary injunction.

**B.     ASI Has Adequate Remedies At Law.**

The most gaping of the numerous holes in ASI's Motion is that the only non-theoretical form of injury that it alleges are monetary losses under the PMA. (Mot. at pp. 6-8.) That is a fatal defect in ASI's Motion, because if it is able to prove at trial that Defendants issued policies in violation of the PMA, ASI's damages could be fully ascertained and remedied with an award of monetary damages. That is an entirely adequate remedy at law.

A preliminary injunction is not appropriate where a court can remedy an injury with a monetary award, and monetary damages are not a proper basis for injunctive relief. "Mere injuries ... in terms of money, time and energy necessarily expended in the absence" of an injunction is not enough. (*Sampson v. Murray,* 415 U.S. 61, 90 (1974) (citation omitted).) The "possibility that adequate compensatory ... relief will be available at a later date, in the ordinary course of litigation, weighs heavily against a claim of irreparable harm." (*Id.*) That harm must be an "injury for which a monetary award cannot be adequate compensation." *Jayarai v. Scappini*, 66 F.3d 36, 39 (2d Cir. 1995). And as the U.S. Supreme Court has emphasized, "mere injuries, however substantial, in terms of money, time and energy necessarily expended in the absence of a stay, are not enough." (*Sampson v. Murray*, 415 U.S. 61, 90, (1974).)

ASI cannot escape the fact that its claim is for breach of contract, and any harm to ASI allegedly resulting from Defendants' issuance of invalid insurance policies, may be remedied with a monetary award. The only non-theoretical damages alleged in ASI's Motion are (i) its dissatisfaction over the profits that it has realized pursuant to the PMA (Mot. at pp. 6-8) and (ii) claims that Defendants have not paid ASI for certain matters (Mot. at p. 12). Those amounts (if ASI is able to meet its burden at trial of persuading the Court that they exist) are readily ascertainable and remedied with money. The full measure of its damages would be, if proven,

the amount of money that it lost in connection with those policies. ASI already purports to be able to calculate those amounts (*see* Mot. at pp. 6-8), and thus any damages resulting from an alleged breach are readily ascertainable[1].

### C. ASI Cannot Suffer Irreparable Harm.

A second, independent defect in ASI's Motion is that it is unable to identify any form of "irreparable harm" that may result without an injunction. ASI cannot point to one fact suggesting that Defendants' conduct will cause them imminent harm if the Court does not issue an injunction. And its claim that denying coverage to unidentified third-party truck drivers, who have never transacted business directly with ASI, will cause harm to ASI's "goodwill" is nothing but absurdist, legally-defective speculation.

Not every conceivable injury entitles a litigant to a preliminary injunction, and speculative injuries do not justify such an extraordinary remedy. (*See, e.g., East St. Louis Laborers' Local 100 v. Bellon Wrecking & Salvage Co.*, 414 F.3d 700, 704 (7th Cir. 2005) (union's concern about losing confidence of its members is not irreparable harm); *Tom Doherty Assocs., Inc. v. Saban Ent'mt, Inc.*, 60 F.3d 27, 37-38 (2d Cir. 1995) ("[i]rreparable harm exists only where there is a threatened imminent loss that will be very difficult to quantify at trial"); *Goldie's Bookstore, Inc. v. Superior Court of State of Cal.* 739 F.2d 466, 471-72 (9th Cir.1984) (claim that plaintiff would lose the "goodwill and untold customers ..." in the absence of a preliminary injunction was "not based on any factual allegations[,] appears to be speculative" and did not amount to irreparable harm)(quotation omitted).)

---

[1] Indeed, ASI's own hypothetical example is an acknowledgement that ASI's remedies at law are adequate. ASI speculates that it may suffer damages in the event that Defendants issue an unauthorized insurance policy to a "Mexican trucker[] operating in the United States...If one of these Mexican truckers is involved in an accident tomorrow, ASI will ... be hauled into court to defend against a claim as high as $750,000.00..." (Mot. at p. 8.) Even if such a situation were to arise, ASI can be fully compensated for the full amount paying or challenging a claim under a disputed policy with a monetary award.

5

The "irreparable harm" necessary to justify a preliminary injunction must be something that is specific, and that is "actual and imminent" and not "remote or speculative." (*See, e.g., Tucker Anthony Realty Corp. v. Schlesinger*, 888 F.2d 969, 975 (2d Cir. 1989)). Mere speculation, or unfounded fears, does not amount to irreparable injury. (*Public Serv. Co. of N.H. v. Town of W. Newbury*, 835 F.2d 380, 383 (1st Cir. 1987).) And "preliminary injunction will not be issued simply to prevent the possibility of some remote future injury. A presently existing actual threat must be shown." (*Haussmann v. Chicago Bd. of Educ.*, 737 F.Supp. 56 (N.D.Ill. 1990) (quotation omitted.).

Incredibly, despite its decision to ask the Court to grant the extraordinary remedy of a preliminary injunction, ASI has not – and cannot – point to a shred of evidence suggesting that any harm is imminent and will result in the absence of an injunction. The only actual damages that ASI references in its Motion are losses and amounts Defendants allegedly owed *before* ASI attempted to terminate the PSA. (*See* Mot. at pp. 6-7.) By definition, those alleged damages cannot be altered by an injunction.

ASI seeks to gloss over the absence of any imminent non-monetary harm by arguing, in a single paragraph, that its "goodwill" will suffer without an injunction. (Mot. at p. 8-9.) But that argument fails for multiple, independent reasons. Initially, any such harm would arise solely from ASI's conduct, because it is premised upon a hypothetical situation in which ASI would defend itself if it denies a claim for coverage under a policy that ASI unilaterally declares to be "unauthorized." The determination of whether policies that Defendants issued are authorized or not, however, is for the Court to adjudicate; and any harm that ASI suffers from unilaterally making such decisions on its own is a matter wholly within its control, and cannot be prevented by entering an injunction against Defendants.

Additionally, ASI's "irreparable harm" argument is sheer speculation[2]. In fact, the theory is premised upon five (5) separate layers of speculation that it has not supported with even a single fact. ASI's "harmed reputation" theory requires the belief that: (a) an unidentified third party who has bought insurance from Defendants but may never have dealt directly with ASI, (b) may have an accident, (c) and ASI may refuse coverage (d) because ASI disputes the validity of the underlying insurance policy, and (e) that denial, based upon the validity of the policy, will cause the unidentified third party to lose confidence in ASI.

ASI is unable to cite to a single reported decision suggesting that the denial of insurance coverage to unidentified third parties, with whom it has never transacted business, is a legally-cognizable form of "goodwill" worthy of protection through the issuance of an injunction. ASI has failed to identify any imminent, legally cognizable harm that may result in the absence of an injunction, and thus there is no irreparable harm.

**D.     ASI Has Not Demonstrated A Likelihood Of Success On The Merits.**

ASI has also failed to demonstrate any likelihood of success on the merits. The mere argument of a legal position based upon undisclosed evidence --- which is all that ASI has done here --- does not demonstrate a "likelihood of success" on the merits; otherwise, any claimant would be able to meet this requirement by simply making a legal argument without disclosing supporting evidence. And there is ample reason to believe that ASI will not succeed on the merits given that two (2) State Court Judges in Texas have determined that *Defendants,* and not ASI, are likely to succeed on the merits with respect to the claims at issue here. Both Courts, in

---

[2] The self-serving opinion of ASI's Vice President stating that Defendants' conduct has caused "risks" to ASI's "goodwill" (*see* Mot., Bosy Declaration), which was in a declaration prepared for purposes of litigation, does not identify a single fact to support that opinion.

fact, have previously issued TROs against ASI to bar it from taking the very actions that it asks this Court to allow it to take.[3]

ASI seeks to set the bar impermissibly low by claiming that it must show only a "better than negligible" chance of succeeding on the merits. Mot. At p. 5-6 (citing *Kinnney v. Int'l. Union of Operating Engineers,* 994 F.2d 1271, 1275 (7th Cir. 1993)). But that argument misstates governing law. The Court must apply the "likelihood of success" element on a sliding scale at different points of the analysis. Plainly, a Court will deny a preliminary injunction to any party with no chance of success on the merits (*Kiel v. City of Kenosha,* 236 F.3d 814, 815 (7th Cir. 2000)), so in the first phase of the analysis, a court decides only whether the plaintiff has a "greater than negligible chance of winning." (*AM General Corp. v. DaimlerChrysler Corp.,* 311 F.3d 796, 804 (7th Cir. 2002).)

But that in the second phase, the analysis turns to a "sliding scale" in which a party must prove a higher likelihood of success if its irreparable harm and inadequate remedy at law arguments are weak. (*AM General,* 311 F.3d at 804; *Ty, Inc. v. The Jones Group, Inc.,* 237 F.3d 891, 895 (7th Cir. 2001)). The purpose of applying those factors on a "sliding scale" is to allow the Court to "minimize the costs of being mistaken" (*American Hosp. Supply v. Hospital Products Limited,* 780 F.2d 589, 593 (7th Cir. 1986.) And as demonstrated above, ASI has failed to articulate any valid arguments as to how it will suffer irreparable harm and why its legal remedies are inadequate, and thus its burden of proof on this element is much greater than ASI suggests.

The defects in ASI's "irreparable harm" and "inadequate remedy" arguments therefore force ASI to do substantially more than show that its chances of prevailing are "better than

---

[3] ASI's Motion repeatedly alleges that NAFTA and UMGA jointly brought each of the two Texas actions. Those allegations are patently false. UMGA brought the December 28, 2007 action in Hidalgo County, Texas, NAFTA brought the January 14, 2008 action in Cameron County, Texas. (*See* Ex. C.)

negligible." (*AM General,* 311 F.3d at 804; *Platinum Home Mortgage Corp. v. Platinum Financial Group, Inc.*, 149 F.3d 722, 726 (7th Cir. 1998)(quotation omitted).) But ASI has failed to even meet that minimal threshold; indeed, it offers nothing but legal arguments which it fails to support with sufficient supporting data to allow this Court to make any determination that it is likely to succeed.

Specifically, ASI's argument that it had the right to terminate the PMA is based upon its "Loss Ratio" calculations, which it claims justified termination of the PMA. (*See* Mot. at pp. 6-7) But this argument has utterly no evidentiary support in the Motion. ASI has failed to identify the data upon which it based those calculations, and it has failed to identify the calculations themselves. ASI's argument offers absolutely no basis, whatsoever, to check its math or to determine whether its Loss Ratio calculations – the core of its argument – are correct. It makes the flawed and insupportable assumption that the Court should simply accept as a matter of faith that its numbers and calculations are valid and accurate and thus that it is likely to succeed at trial.

ASI's recitation of unsupported factual conclusions falls far short of establishing a significant likelihood of success on the merits.

### E. Granting The Injunction Will Present A Substantially Greater Hardship To Defendants Than To ASI.

The Court should also deny the Motion because granting it will substantially impair, and possibly destroy, NAFTA's and UMGA's ability to continue to do business. When balanced against the purely speculative monetary damages that ASI claims may result at an uncertain time in the future, that harm to Defendants greatly outweighs any foreseeable benefit of granting the preliminary injunction.

Even if a movant is able to establish the other elements for obtaining a preliminary injunction (which ASI has failed to do), a Court must compare the possible harm that a non-movant will suffer if preliminary relief is granted with the harm the injunction is requested to prevent. (*AM General*, 311 F.3d at 831.) The Court's evaluation of the relative risk to the parties must assess they will lose by an unfavorable ruling on the injunction, and by the risk of harm resulting from an erroneous ruling if the non-movant prevails at trial. (*Id.*) The Court must consider those factors in order to "minimize the costs of being mistaken" (*American Hosp. Supply*, 780 F.2d at 593.)

That balance in this case clearly demonstrates that granting the injunction will damage Defendants significantly more than denial will cause ASI. First, Defendants risk losing the very type of goodwill that ASI asserts it stands to lose if extant policies are cancelled. And it creates the risk that other parties to the PSA will sue Defendants for damages in the future[4]. NAFTA and UMGA also are engaged in the business of selling insurance policies to Mexican citizens who drive passenger and commercial vehicles in the United States. A large number of policies that Defendants have sold were pursuant to the PMA and backed by ASI. Granting the preliminary injunction, and thereby allowing ASI to unilaterally declare some of those policies to be invalid, and to unilaterally prevent Defendants from continuing to exercise their rights under the PMA, will substantially harm NAFTA's and UGMA's ability to continue to do business. It will also expose both entities to potentially substantial civil liability for claims arising under those policies for which ASI elects to deny coverage.

Granting a preliminary injunction thus threatens the very existence of NAFTA and UMGA. When balanced against the purely speculative harm that ASI asserts, which the Court

---

[4] The Court should also dismiss this action pursuant to Fed. R. Civ. P. 12(b) and 19(a) because ASI has failed to join those parties listed in Endorsement G to the PMA as parties to this action; Defendants intend to file a future motion to dismiss on this basis. .

may remedy monetarily, the harm to Defendants greatly outweighs any benefit of issuing the injunction.

### F.   Granting The Injunction Will Present A Substantial Risk To The Public.

The Court should also deny the Motion because entering the injunction that ASI requests will have the effect of causing drivers' insurance policies to lapse without the drivers' knowledge. The Court's evaluation of whether to grant an injunction must take into consideration the consequences to the public interest of granting or denying the relief. (*Ping v. National Educ. Ass'n*, 870 F.2d 1369, 1371-72 (7th Cir. 1989).) The unilateral invalidation of drivers' insurance, without the drivers' knowledge, would have potentially disastrous consequences. Such drivers are not obviously not parties to this litigation, and entering the injunction creates the serious threat that a driver, thinking that he or she is insured under a policy issued pursuant to the PMA and backed by ASI, will not learn that the insurance is invalid. The unilateral invalidation of insurance policies likewise poses a threat to third party drivers who are involved in accident with drivers who hold insurance issued under the PMA.

The potential harm of causing insured drivers and third parties to unknowingly and unwittingly face liability due to the lack of insurance coverage outweighs any alleged benefits of granting the preliminary injunction.

## II.   ARBITRATION IS REQUIRED FOR PLAINTIFF'S CLAIMS.

This Court should also deny ASI's Motion because it seeks to address through the Federal court system matters that it agreed to resolve through arbitration. (PSA, Article XIX.) That provision requires the parties to resolve through arbitration "any dispute between [ASI] and the Manager with reference to the interpretation, application, formation, enforcement or validity

11

of [the PSA], **or their rights with respect to any transaction involved, whether such dispute arises before or after termination** [of the PSA]." (*Id.* (emphasis added).)

ASI's Motion therefore seeks to resolve matters through the issuance of preliminary injunctions that it is bound by contract to submit to arbitration. The Court should therefore deny its Motion.

## CONCLUSION

For all of the foregoing reasons, this Court should enter an Order denying ASI's Motion For Preliminary Injunction Or, In The Alternative, To Extend The Temporary Restraining Order in its entirety; dismissing this action; and granting any and all further relief as this Court deems to be reasonable and appropriate.

          Respectfully submitted,

          **NAFTA GENERAL AGENCY,**
          **UNDERWRITERS MGA, INC.** and
          **RAMON VILLAREAL,** Defendants

          By:___s/ Paul A. Duffy_____
                One of Their Attorneys

Michael J. Scotti, III  #6205868
Paul A. Duffy   #6210496
**FREEBORN & PETERS LLP**
311 S. Wacker Dr., Suite 3000
Chicago, Illinois  60606
(312) 360-6000

Dated: February 1, 2008

12

## CERTIFICATE OF SERVICE

The undersigned certifies that he caused a copy of the foregoing **DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION OR, IN THE ALTERNATIVE, TO EXTEND THE TEMPORARY RESTRAINING ORDER** via the United States District Court, Northern District of Illinois, Eastern Division, ECF filing system, on February 1, 2008 to:

> Patrick M. Hincks
> Desmond Patrick Curran
> Matthew P. Barrette
> Sullivan Hinks & Conway
> 120 W. 22nd Street, Suite 100
> Oak Brook, IL  60523

                                                          /s Paul A. Duffy