## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | | |
|---|---|---|
| AMERICAN SERVICE INSURANCE COMPANY, an Illinois insurance company, | ) ) ) | |
| Plaintiff, | ) | Case No. 08 CV 443 |
| v. | ) ) | Judge David H. Coar |
| NAFTA GENERAL AGENCY, UNDERWRITERS MGA, INC., and RAMON VILLARREAL, | ) ) ) ) | |
| Defendants. | ) | |

## RESPONSE IN OPPOSITION TO DEFENDANTS'
## MOTION TO DISMISS OR STAY

Now Comes the Plaintiff, American Services Insurance Company ("ASI"), by and through its attorneys, Sullivan Hincks & Conway, and for its Response in Opposition to Defendants' Motion to Dismiss or Stay This Proceeding, states as follows:

### INTRODUCTION

Defendants' Motion to Dismiss or Stay this Proceeding must be denied because (1) it disregards the plain language of forum selection clause contained in the Program Manager Agreement entered into between ASI and Defendants, (2) it misinterprets the plain language of the Temporary Restraining Order entered by this Court on January 22, 2008, (3) it incorrectly seeks application of the "first to file" doctrine where Defendants were not in fact the first to file, and (4) it misapplies the "first to file" doctrine as employed by district courts sitting in the Seventh Circuit.

### BACKGROUND

As described in more detail in ASI's Motion for Preliminary Injunction, ASI entered into a Program Manager Agreement ("PMA") with Defendants in August 2006 whereby Defendants

1

were authorized to issue and renew insurance policies for Mexican nationals driving in the United States.  After suffering excessive losses in 2006 and 2007, ASI terminated the PMA on November 7, 2007, pursuant to paragraph 4(e) of the PMA which permitted ASI to terminate the program where its loss ratios exceeded 105%. On November 12, 2007, after Defendants pleaded with ASI for time to notify its subagents of the termination, ASI entered into an agreement with Defendants to extend the termination date of the PMA to December 31, 2007, assuming Defendants met certain conditions.

On December 28, 2007, despite ASI's accommodation to Defendants, Uunderwriters MGA, Inc. obtained an *ex parte* Temporary Restraining Order from the District Court for the 92nd Judicial Circuit in Hidalgo County, Texas.  Defendants took this action notwithstanding the fact that the PMA conferred exclusive jurisdiction over disputes in the Circuit Court of Cook County, Illinois or the District Court for the Northern District of Illinois. (See Art. XX, ¶ F). Soon thereafter, NAFTA General Agency ("NAFTA") filed a Petition to Intervene in the Hidalgo County suit and on January 11, 2008, the Hidalgo County Court held an evidentiary hearing.  Following the hearing, the Hidalgo County Court terminated the Defendants' TRO effective on the next business day, January 14, 2008. The reason the Hidalgo County Court gave for delaying termination was so Defendants could notify their subagents that the PMA was terminated.

On January 14, 2008, with the Hidalgo County TRO scheduled to expire, Defendant NAFTA obtained a second identical *ex parte* TRO in Cameron County, Texas, once again blatantly ignoring the venue provision contained in the PMA.

On January 21, 2008, ASI filed a Verified Complaint and Motion for Temporary Restraining Order in this Court.  On January 22, 2008, after reviewing the Declarations

submitted in support of the ASI's motion and hearing argument by telephone from counsel representing Defendants, this Court entered the requested Temporary Restraining Order. Among other things, the Order enjoined Defendants from continuing to sell or renew ASI insurance policies, prohibited Defendants from filing any new lawsuits, directed Defendants to return to ASI all records pertaining to the PMA, and required Defendants to transfer to ASI all monies collected by Defendants under the PMA. The matter was continued to February 1, 2008, for hearing before the Emergency Judge, Blanche Manning.

On January 23, 2008, and January 25, 2008, ASI removed the pending Texas cases to the District Court for the Southern District of Texas in anticipation of moving to transfer the Texas actions to the District Court for the Northern District of Illinois. During this time, Defendants ignored the provisions of this Court's Order requiring Defendants to immediately deliver to ASI its records pertaining to the PMA and to transfer all monies collected by Defendants connected with the sale of ASI insurance.

In advance of the hearing before Judge Manning, which had been reset for January 31, 2008, Defendants filed the instant Motion to Dismiss or Stay Proceedings. At the hearing, Judge Manning continued the Defendants' motion to February 4, 2008 to be heard in this Court.[1]

**ARGUMENT**

**I.    Venue Over This Dispute Is Proper Only In This Court**

On January 22, 2008, this Court entered a Temporary Restraining Order after hearing oral argument from counsel for Defendants. During the oral argument, counsel for the Defendants argued that this matter should be heard in Texas and, over Defendants' counsel's objection, this Court found that it had jurisdiction over the subject matter and parties involved.

---

[1] During the hearing on January 31, 2008, Judge Manning declined to extend paragraph 4 of the January 22, 2008 Order entered by this Court which required Defendants to transfer to ASI all monies collected from the sale of ASI insurance policies. Her ruling was made without prejudice on this point.

The Court's finding of jurisdiction in this Court over the dispute between the parties was entirely correct. The PMA clearly and without question requires disputes under the PMA to be resolved in this forum. Article XX, paragraph F states, in part, as follows:

> The parties hereby consent to the _exclusive_ jurisdiction of either the Circuit Court of Cook County, Illinois, or the United States District Court for the Northern District of Illinois, sitting at 7th Circuit regarding any disputes relating to or arising out of this Agreement.

(Emphasis added.) Forum selection clauses, of the type found in the PMA, are afforded great deference by the Courts and are _prima facie_ valid unless they are unreasonable or derived as the result of fraud or overreaching. M/V Bremen v. Zapata Off-Shore Co., 407 U.S. 1 (1972); Carnival Cruise Lines, Inc. v. Shute, 499 U.S. 585 (1991). Defendants have not argued nor have they provided any evidence showing that the forum selection clause is invalid in any way. In seeking to dismiss this action, Defendants ask this Court to disregard the forum selection clause contained in the PMA because they filed two Texas state court actions prior to this action. Defendants' reliance on the first to file doctrine is misplaced because of the forum selection clause contained in the PMA.

In Hy Cite Corporation v. Advanced Marketing International, Inc., 2006 U.S. Dist. LEXIS 18615, *10 (W.D. Wis. 2006), the plaintiff was the first to file by bringing an action in the District Court for the Western District of Wisconsin. The contract between the parties, however, contained a forum selection clause designating venue in Florida. The court found the first to file rule inapplicable and stated that the plaintiffs "are obligated to be bound by the terms of their agreements even if [the plaintiffs'] declaratory judgment was the first-filed action." Hy Cite, U.S. Dist. LEXIS at *12.

Hy Cite is directly on point. As in that case, the PMA between ASI and Defendants contains a forum selection clause. The forum selection clause of the PMA designates venue in

this District.  Under the reasoning of the Court in <u>Hy Cite,</u> the interests of justice mandate

jurisdiction in this forum even if Defendants' Texas state court actions were filed first.

The Seventh Circuit does not rigidly adhere to a 'first to file' rule and instead holds that

the second-filed action may proceed in the interest of justice.  <u>Trippe Manufacturing Company v.</u>

<u>Power Conversion Corp.,</u> 46 F.3d 624, 629 (7th Cir. 1995) citing <u>Tempco Elec. Heater Corp. v.</u>

<u>Omega Engineering, Inc.,</u> 819 F.2d 746, 750 (7th Cir. 1987). See <u>Hy Cite,</u> 2006 U.S. Dist. LEXIS

18615 at *10.   Factors that weigh against enforcement of the first-to-file rule include

extraordinary circumstances, inequitable conduct, bad faith, anticipatory suits and forum

shopping.  <u>EEOC v. University of Pennsylvania,</u> 850 F.2d 969, 972 (3rd Cir. 1988). In light of

Defendants' conduct and bad faith forum shopping, the interests of justice clearly require that

this suit be permitted to proceed here in this District.

Defendants have repeatedly misused the Texas state court system in an attempt to stymie

ASI's contractual right to terminate the PMA.  For example, on the day the Hidalgo county court

terminated Defendants' improperly-obtained Temporary Restraining Order, Defendants simply

moved to the next county to obtain another Temporary Restraining Order.  This bad faith act of

forum shopping is one of the reasons this Court entered its Order of January 22, 2008.

Furthermore, the unopposed facts show that Defendants specifically agreed on November

15, 2007, that the PMA would be terminated as of December 31, 2007.  (Ver. Comp., Exh. C).

ASI made this accommodation to Defendants for the specific purpose of allowing Defendants to

contact their subagents and inform them of the termination of the parties' relationship.

Notwithstanding that specific agreement, Defendants broke its word by going around ASI's back

to secure the ex parte TRO in the first place.  The interests of justice require that Defendants' bad

faith behavior should not be rewarded.

In addition, the cases filed by Defendants in the Texas state courts do not even fall under the first to file doctrine recognized by Federal courts. Under the first to file doctrine, a Federal court may dismiss a later-filed case when substantially similar actions have been filed in two different *federal district* courts. Healthcare Capital, LLC v. Healthmed, Inc., 213 F. Supp. 2d 850 (S.D. Ohio 2002). The rule is intended to encourage comity among federal courts of equal rank. Healthcare Capital, 213 F. Supp. 2d at 856.

Defendants' two Texas claims were not filed in Federal court. Rather, they were filed in state courts located in Hidalgo County and Cameron County, Texas. The first to file rule, therefore, does not, by definition, apply in this case. Healthcare Capital, 213 F. Supp. 2d at 856 ("Here the actions similar to the matter *sub judice* were previously filed in *state* court, not federal court. Thus, the first-to-file doctrine is inapplicable in this case."); See also Zide Sport Shop of Ohio, Inc. v. Ed Tobergte Associates, Inc., 16 Fed. Appx. 433 (6th Cir. 2001) (unpublished); North American Communications, Inc. v. Homeowners Loan Corporation, 2007 U.S. Dist. LEXIS 4288 at *9 (W.D. Pa. 2007).

In support of their argument, Defendants attach the entirely distinguishable case Finovia Capital Corp. v. Ryan Helicopters USA, Inc., 1998 WL 698900 (N.D. Ill. Oct. 2, 1998). In that case, a party filed a breach of contract action in St. Lucia four months before the other party filed a second lawsuit on the same facts in the District Court for the Northern District of Illinois. Unlike this case, the contract in Finovia allowed the parties to elect either the courts of St. Lucia or the Northern District of Illinois. In the present matter, the parties' contract specifically requires venue only in this District. Unlike in Finovia, venue in this case was never appropriate in Texas state courts. Therefore, the first to file doctrine cannot apply.

A dismissal or stay in this case as requested by Defendants would result in wasteful, time-consuming litigation. As described above, ASI removed the Texas state court cases to the District Court for the Southern District of Texas with the intention of transferring those cases to this Court in accordance with the forum selection clauses of the PMA. There is, therefore, no justification for dismissing or staying this matter since the Texas actions will shortly be transferred to this Court. The only effect of such a dismissal would be to allow Defendants to enjoy the fruits of their bad faith filings in the State of Texas and deprive ASI of the injunction this Court has already found ASI deserves.

Defendants also misleadingly claim ASI acknowledged that "venue is appropriate" in Texas Federal court based upon a statement made in ASI's notice of removal. In advancing this argument, Defendants take the words completely out of context. In fact, the Notice of Removal states only that, "*Removal* venue is appropriate because the McAllen Division of the Southern District Court of Texas embraces the place where the state court action is pending, namely Hidalgo County." (emphasis added). In other words, ASI was merely acknowledging the basic rule of law that it was required to remove the cases first to the District Court for the Southern District of Texas before moving for transfer to this Court. As stated in Lambert v. Kysar, 983 F.2d 1110, Fn. 2 (1st Cir. 1993):

> It is well settled that the filing of a removal petition in a diversity action, without more, does not waive the right to object in federal court to the state court venue. In order to obtain the benefits of a federal forum, "[the] removal must be 'into the district where such suit is pending'; no choice is possible and for that reason nothing in respect to venue can be waived. Moss v. Atlantic Coast Line R. Co., 157 F.2d 1005 (2nd Cir. 1946 cert den. 330 U.S. 839 (1947).

As such, the mere filing of ASI's Notice of Removal does not constitute an acknowledgement of venue in the Southern District of Texas.

7

In light of the forum selection clause contained in the PMA, and the fact that ASI was the first to file a federal action, this Court must reject Defendants' attempts to delay justice in this case and deny Defendants' motion to dismiss or stay.

**II.     ASI Has Not Violated This Court's Temporary Restraining Order**

Defendants argue that ASI has violated the Temporary Restraining Order by removing Defendants' Texas state cases to Federal court. Not only does the filing of a Notice of Removal not constitute a new proceeding, but there is nothing contained in the Order which would prevent ASI from instituting a new legal action if it so desired. Contrary to Defendants' claims, the Order states only that *Defendants* are precluded from filing new cases, not ASI.

Defendants claim that, because ASI and Defendants are each parties to the PMA, ASI was "acting in concert" with Defendants. Therefore, Defendants assert, this Court's Order prohibited ASI from removing Defendants' Texas state law claims. This argument, while inventive, is without merit and begs the question. The entire basis for ASI's injunction is that ASI terminated the PMA effective December 31, 2007. Stated differently, Defendants no longer have the right to act as program managers for ASI. As such, ASI cannot be "acting in concert" with Defendants so as to be enjoined by the terms of this Court's Order of January 22, 2008. Consequently, ASI cannot have violated this Court's Order by removing the state law cases to Federal court.

**CONCLUSION**

For the reasons as stated herein, ASI respectfully requests this Court deny Defendants' Motion to Dismiss or Stay Proceedings and grant ASI's Motion for Preliminary Injunction.

Respectfully submitted,

AMERICAN SERVICE INSURANCE COMPANY

By: /s/ Matthew P. Barrette_____.
              One of Its Attorneys

Patrick M. Hincks
Desmond P. Curran
Matthew P. Barrette
Sullivan Hincks & Conway
120 W. 22nd Street, Suite 100
Oak Brook, Illinois 60523
(630) 573-5021

LEXSEE 2006 U.S. DIST. LEXIS 18615

**HY CITE CORPORATION, JAMES CANTRELL, CYNTHIA CANTRELL, KENNETH KNEZEK, JAMES CAMPIDILLI, ROBERT BEAN, MIKE SMITH and LAUNA SMITH, Plaintiffs, v. ADVANCED MARKETING INTERNATIONAL, INC., Defendant.**

**05-C-722-S**

**UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF WISCONSIN**

*2006 U.S. Dist. LEXIS 18615*

**April 10, 2006, Decided**

**SUBSEQUENT HISTORY:** Costs and fees proceeding at *Hy Cite Corp. v. Advanced Mktg. Int'l, Inc., 2006 U.S. Dist. LEXIS 36882 (W.D. Wis., June 1, 2006)*

**PRIOR HISTORY:** *Hy Cite Corp. v. Advanced Mktg. Int'l, 2006 U.S. Dist. LEXIS 13948 (W.D. Wis., Mar. 29, 2006)*

**COUNSEL:** [*1] For HY CITE CORPORATION, JAMES CANTRELL, CYNTHIA CANTRELL, KENNETH KNEZEK, JAMES CAMPIDILLI, ROBERT BEAN, MIKE SMITH, LAUNA SMITH, Plaintiffs: JOHN C. SCHELLER, MICHAEL BEST & FRIEDRICH, LLP, MADISON, WI.

For ADVANCED MARKETING INTERNATIONAL, INC., Defendant: JEFFREY A. SIMMONS, FOLEY & LARDNER, MADISON, WI.; MICHAEL J. FURBUSH, GRONEK & LATHAM, ORLANDO, FL.

**JUDGES:** JOHN C. SHABAZ, District Judge.

**OPINION BY:** JOHN C. SHABAZ

**OPINION**

MEMORANDUM AND ORDER

Plaintiffs Hy Cite Corporation, James and Cynthia Cantrell, Kenneth Knezek, James Campidilli, Robert Bean, Mike and Launa Smith commenced this declaratory judgment action against defendant Advanced Marketing International, Inc. seeking a declaration that: (1) non-compete covenants contained within plaintiffs' distributor agreements are illegal and unenforceable; (2) plaintiffs did not breach non-solicitation clauses contained within their distributor agreements and said

clauses are illegal and unenforceable; (3) liquidated damages clauses contained within plaintiffs' distributor agreements are unenforceable penalties; and (4) plaintiff Hy Cite Corporation has not tortiously interfered with plaintiffs' distributor agreements. Jurisdiction is based [*2] on *28 U.S.C. § 1332(a)(1)*. The matter is presently before the Court on defendant's motion to dismiss for improper venue and failure to state a claim upon which relief can be granted pursuant to *Federal Rules of Civil Procedure 12(b)(3)* and *12(b)(6)*. The following facts relevant to defendant's motion to dismiss are undisputed.

BACKGROUND

Defendant Advanced Marketing International, Inc. is engaged in the business of selling kitchen equipment such as stainless steel and waterless cookware through a distributorship system. Plaintiff Hy Cite Corporation (hereinafter Hy Cite) is a direct competitor of defendant. Plaintiffs James and Cynthia Cantrell, Kenneth Knezek, James Campidilli, Robert Bean, Mike and Launa Smith (hereinafter individual plaintiffs) entered into distributor agreements (hereinafter agreements) with defendant under which they sold its kitchen equipment and products. Each agreement contained a choice of law and venue provision which stated as follows:

> Choice of Law and Venue. The validity, interpretation and performance of this agreement shall be controlled [*3] by and construed under the laws of the State of Florida. Both parties agree that any objections to venue be waived and that venue shall be in the Circuit Court for Lake County, Florida.

2006 U.S. Dist. LEXIS 18615, *

In 2005 each individual plaintiff entered into distributor agreements with plaintiff Hy Cite. On July 26, 2005 defendant sent plaintiff Hy Cite a cease and desist letter. Accordingly, on August 31, 2005 plaintiffs Hy Cite, Knezek, James and Cynthia Cantrell and other former distributors of defendant filed a declaratory judgment action against defendant with the United States District Court for the Central District of California. On December 19, 2005 the district court issued a written order dismissing plaintiffs' action for improper venue as it concerned plaintiffs Hy Cite, Knezek, James and Cynthia Cantrell.

However, the California action simply marked the beginning of litigation between the parties. On September 20, 2005 and October 6, 2005 defendant filed complaints against plaintiff Hy Cite and four of its former distributors (who are not parties to this action) with the Circuit Court for the Fifth Judicial District in and for Lake County, Florida (hereinafter Lake County Circuit Court) seeking [*4] damages. Plaintiff Hy Cite and its co-defendants removed said actions to the United States District Court for the Middle District of Florida. However, on February 1, 2006 and February 2, 2006 Magistrate Judge Jones recommended that the actions be remanded to the Lake County Circuit Court because of the forum selection clause contained within various agreements.

Additionally, on December 9, 2005 plaintiffs filed their complaint in this action. Further, on December 27, 2005 defendant filed an additional complaint with the Lake County Circuit Court against plaintiffs Hy Cite, Knezek, Bean, Campidilli, James and Cynthia Cantrell and other former distributors seeking damages. Plaintiffs (defendants in said Florida action) removed the action to the United States District Court for the Middle District of Florida where it is currently pending. Finally, in either January or February of 2006 (the exact date is unclear from the record) plaintiffs Hy Cite and Bean filed a declaratory judgment action against defendant with the United States District Court for the Southern District of California. Said action is currently pending.

MEMORANDUM

Defendant asserts language contained within individual [*5] plaintiffs' forum selection clauses manifest a clear intent to "lay venue for all disputes over the agreements" with the Lake County Circuit Court. Additionally, defendant asserts the forum selection clause applies to plaintiff Hy Cite because: (1) it acquiesced in the forum selection clause by voluntarily joining individual plaintiffs in filing suit against defendant under the agreements; and (2) it became foreseeable that plaintiff Hy Cite would be bound by the forum selection clause because its claim is closely related to the agreements.

Finally, defendant asserts plaintiffs cannot overcome the strong presumption favoring enforcement of the forum selection clause. Accordingly, defendant argues plaintiffs' second amended complaint should be dismissed pursuant to *Federal Rule of Civil Procedure 12(b)(3)* for improper venue. Additionally, defendant argues plaintiffs' second amended complaint should be dismissed pursuant to *Federal Rule of Civil Procedure 12(b)(6)* for failure to state a claim upon which relief can be granted based on the doctrine of issue preclusion. Defendant asserts the United States District [*6] Court for the Central District of California already adjudicated the venue issue.

Plaintiffs assert the first-to-file rule applies to this action and mandates that litigation proceed in this forum because defendant cannot establish that extraordinary circumstances exist which rebut application of said rule. Additionally, plaintiffs assert the forum selection clause cannot be enforced because: (1) plaintiff Hy Cite is not a party to the agreements; and (2) conflicting rulings from multiple courts will likely result if the forum selection clause is enforced against individual plaintiffs. Accordingly, plaintiffs argue defendant's motion to dismiss for improper venue should be denied. Additionally, plaintiffs assert their claims are not precluded under the doctrine of issue preclusion because they are not identical to the claims at issue in the California action. Accordingly, plaintiffs argue defendant's motion to dismiss for failure to state a claim upon which relief can be granted should be denied.

### A. Defendant's motion to dismiss for improper venue

A threshold question concerning defendant's motion to dismiss for improper venue is whether federal or state law governs the issue [*7] of validity of a forum selection clause when a motion to transfer venue pursuant to *Section 1404(a)* is not involved. *IFC Credit Corp. v. Aliano Bros. Gen. Contractors, Inc., 437 F.3d 606, 608 (7th Cir. 2006).* Several of the federal circuits have concluded that federal law governs validity of forum selection clauses in all diversity suits. *See Id. at 609 (citing Jumara v. State Farm Ins. Co., 55 F.3d 873, 877-878 (3rd Cir. 1995); Jones v. Weibrecht, 901 F.2d 17, 19 (2nd Cir. 1990); Manetti-Farrow, Inc. v. Gucci Am., Inc., 858 F.2d 509, 513 (9th Cir. 1988)).* However, the Seventh Circuit has not yet conclusively determined which law governs such situations. *See Id. at 611.* Defendant asserts federal law governs the validity and effect of plaintiffs' forum selection clause. Plaintiffs do not dispute said assertion. Accordingly, because the parties are permitted to designate what law shall control their case, validity and enforcement of plaintiffs' forum selection clause will be decided under federal law. *See Nw. Nat'l. Ins. Co. v.*

*Donovan, 916 F.2d 372, 374 (7th Cir. 1990)* [*8] (citations omitted).

A forum selection clause is treated like any other contractual provision and it will be enforced unless it is subject to any infirmity such as fraud or mistake. *Id. at 375.* Additionally, a forum selection clause is prima facie valid and enforceable unless enforcement is shown by the resisting party to be unreasonable or unjust under the circumstances. *M/S Bremen v. Zapata Off-Shore Co., 407 U.S. 1, 10, 92 S.Ct. 1907, 1913, 32 L.Ed.2d 513 (1972)*(citations omitted). Such approach accords with ancient concepts of freedom of contract and absent some compelling and countervailing reason a forum selection clause should be honored by parties and enforced by courts. *Id. at 11-12, 92 S.Ct. at 1914.* However, a contractual forum selection clause will be unenforceable if enforcement would contravene a strong public policy of the forum in which suit is brought "whether declared by statute or by judicial decision." *Id. at 15, 92 S.Ct. at 1916* (citation omitted). Additionally, a forum selection clause will not be enforced if trial in the contractual forum will be so "gravely... inconvenient that [a party] [*9] will for all practical purposes be deprived of [its] day in court." *Id. at 18, 92 S.Ct. at 1917.*

Plaintiffs assert venue for their declaratory judgment action is proper in this forum pursuant to the first-to-file rule and dismissing the action in favor of a Florida forum would merely shift the inconvenience of litigating in a distant forum from defendant to plaintiffs. The purposes of declaratory judgments are to "clarify[] and settle the legal relations at issue" and to "terminate and afford relief from the uncertainty, insecurity, and controversy giving rise to the proceeding." *Tempco Elec. Heater Corp. v. Omega Eng'g., Inc., 819 F.2d 746, 749 (7th Cir. 1987)*(quoting Borchard, *Declaratory Judgments* 299 (2nd ed. 1941)). Accordingly, declaratory judgment actions serve an important role because they permit prompt settlement of actual controversies and establish the legal rights and obligations that will govern the parties' relationship in the future. *Hyatt Int'l. Corp. v. Coco, 302 F.3d 707, 711 (7th Cir. 2002)*(citing Edwin Borchard, *Declaratory Judgments* 107 (1934)).

However, declaratory judgments are not tools with [*10] which potential litigants may secure a delay or choose the forum. *Schumacher Elec. Corp. v. Vector Prods., Inc., 286 F.Supp.2d 953, 955 (N.D.Ill. 2003)*(citations omitted). Accordingly, while the general rule favors the forum of the first-filed suit, *Warshawsky & Co. v. Arcata Nat. Corp., 552 F.2d 1257, 1263 (7th Cir. 1977)*, the Seventh Circuit does not rigidly adhere to a first-to-file rule instead holding that in the interests of justice a second-filed action may proceed. *Tempco Elec. Heater Corp., at 749-750* (citations omitted). The interests of justice mandate that the first-to-file rule should

not be applied to plaintiffs' action because of the forum selection clause contained within individual plaintiffs' agreements.

The forum selection clause contained within individual plaintiffs' agreements reads as follows:

> Choice of Law and Venue. The validity, interpretation and performance of this agreement shall be controlled by and construed under the laws of the State of Florida. Both parties agree that any objections to venue be waived and that venue shall be in the Circuit Court for Lake County, Florida.

The phrase "shall be" [*11] coupled with language "in the Circuit Court for Lake County, Florida" clearly manifests an intent to make venue compulsory and exclusive because said language is obligatory. *Paper Express, Ltd. v. Pfankuch Maschinen GmbH, 972 F.2d 753, 756 (7th Cir. 1992)*. Additionally, individual plaintiffs' agreed to waive any objections to venue when they signed their agreements. A person who signs a contract is presumed to know its terms and consents to be bound by such terms. *Id. at 757* (citations omitted). Accordingly, plaintiffs had notice that if any disputes arose under their agreements such disputes were to be resolved by the Lake County Circuit Court.

Plaintiffs argue dismissing this action in favor of a Florida forum would merely shift the inconvenience of litigating in a distant forum from defendant to plaintiffs. However, from society's point of view it is essentially irrelevant which party bears the expense of litigating in a distant forum because someone must. *Tempco Elec. Heater Corp., at 749.* Additionally, plaintiffs did not assert that trial in the contractual forum will be so gravely inconvenient that they will for all practical purposes be [*12] deprived of their day in court. *M/S Bremen, at 18, 92 S.Ct. at 1917.* Further, plaintiffs have not asserted that the forum selection clause was the product of fraud, mistake, overreaching or any other contractual infirmity. Accordingly, plaintiffs' are obligated to be bound by the terms of their agreements even if their declaratory judgment was the first-filed action. [1] *See Paper Express, Ltd., at 757* (citations omitted).

---

> 1 Considering the voluminous litigation history between the parties as well as the variety of individuals named as plaintiffs and defendants in said litigation it is unclear whether plaintiffs' action in this district even constitutes the first-filed action.

Concluding that the first-to-file rule is not applicable does not end the Court's analysis because plaintiffs assert

the forum selection clause does not apply to either plaintiff Hy Cite (because it is not a party to the agreements) or plaintiff Bean (because the California district court ruled the forum selection [*13] clause is unenforceable against California residents as a violation of public policy.) However, plaintiffs indicate that plaintiff Bean "will seek to be voluntarily dismissed from this case" because he filed a declaratory judgment action with the United States District Court for the Southern District of California. Accordingly, validity and enforcement of the forum selection clause concerning plaintiff Bean is moot.

When an action involves contract law the general rule is a party who does not enter into a contract with another does not owe any contractual obligations to that party. *See Chicago Coll. of Osteopathic Med. v. George, 719 F.2d 1335, 1344 (7th Cir. 1983)*. Accordingly, to bind a non-party to a forum selection clause said party must be closely related to the dispute such that it becomes foreseeable that it will be bound. *Hugel v. Corp. of Lloyd's, 999 F.2d 206, 209 (7th Cir. 1993)*(citations omitted). Third-party beneficiaries of a contract by definition satisfy the closely related and foreseeability requirements. *Id. at 209 n. 7* (citations omitted). However, third-party beneficiary status is not required. Id.

Plaintiff [*14] Hy Cite seeks a declaration that it did not tortiously interfere with individual plaintiffs' agreements. Individual plaintiffs seek a declaration that their agreements are illegal and unenforceable. Accordingly, the sole basis for the controversy between the parties concerns enforceability of individual plaintiffs' agreements which renders plaintiff Hy Cite's claim entirely dependent on the agreements. Indeed, plaintiff Hy Cite concedes that its claim is inextricably intertwined with individual plaintiffs' claims. Because plaintiff Hy Cite's claim is both inextricably intertwined with individual plaintiffs' claims and entirely dependent on individual plaintiffs' agreements it satisfies the closely related and foreseeability requirements.

Finally, plaintiffs argue that multiple and conflicting rulings will likely result if the forum selection clause is enforced. However, their argument hinges on the Court deciding that plaintiff Hy Cite is not subject to defendant's forum selection clause. Should the Court find in such a manner plaintiff Hy Cite's action would proceed in this forum and individual plaintiffs' claims would proceed in the Florida forum. However, as previously indicated, [*15] the Court determined that plaintiff Hy Cite is bound by the forum selection clause contained within individual plaintiffs' agreements. Accordingly, judicial

economy is served by having all issues related to the agreements decided in a single forum which pursuant to the mandatory forum selection clause should be the Lake County Circuit Court. Enforcing the forum selection clause is the clearest way to avoid the multiple and conflicting rulings plaintiffs' fear will occur.

A forum selection clause is prima facie valid and enforceable unless enforcement is shown by the resisting party to be unreasonable or unjust under the circumstances. *M/S Bremen, at 10, 92 S.Ct. at 1913* (citations omitted). Plaintiffs failed to demonstrate that enforcing the forum selection clause would be either unreasonable or unjust under the circumstances. Plaintiffs did not argue that enforcement of the forum selection clause would violate Wisconsin public policy. Additionally, plaintiffs did not assert that trial in the contractual forum would be so gravely inconvenient that they would for all practical purposes be deprived of their day in court. *Id. at 18, 92 S.Ct. at 1917.* [*16] Accordingly, the forum selection clause should be enforced. Such enforcement accords with ancient concepts of freedom of contract. *Id. at 11, 92 S.Ct. at 1914.* Defendant's motion to dismiss plaintiffs' second amended complaint for improper venue is granted.

**B. Defendant's motion to dismiss for failure to state a claim**

Because the Court dismissed plaintiffs' second amended complaint for improper venue it need not decide defendant's motion to dismiss for failure to state a claim upon which relief can be granted.

ORDER

IT IS ORDERED that defendant's motion to dismiss for improper venue pursuant to *Federal Rule of Civil Procedure 12(b) (3)* is GRANTED.

IT IS FURTHER ORDERED that defendant's motion to dismiss for failure to state a claim upon which relief can be granted pursuant to *Federal Rule of Civil Procedure 12(b) (6)* is DENIED as moot.

Entered this 10th day of April, 2006.

BY THE COURT:

S/

JOHN C. SHABAZ

District Judge

LEXSEE 16 FED. APPX. 433

**ZIDE SPORT SHOP OF OHIO, INC., ROBERT M. ZIDE, RODNEY M. ZIDE, and PRO-LINE, INC., Plaintiffs-Appellants, v. ED TOBERGTE ASSOCIATES, INC., d/b/a GEAR 2000, and EDWARD H. TOBERGTE, Defendants-Appellees.**

No. 00-3183

**UNITED STATES COURT OF APPEALS FOR THE SIXTH CIRCUIT**

*16 Fed. Appx. 433; 2001 U.S. App. LEXIS 17225*

**July 31, 2001, Filed**

**NOTICE:** [**1] NOT RECOMMENDED FOR FULL-TEXT PUBLICATION. SIXTH CIRCUIT RULE 28(g) LIMITS CITATION TO SPECIFIC SITUATIONS. PLEASE SEE RULE 28(g) BEFORE CITING IN A PROCEEDING IN A COURT IN THE SIXTH CIRCUIT. IF CITED, A COPY MUST BE SERVED ON OTHER PARTIES AND THE COURT. THIS NOTICE IS TO BE PROMINENTLY DISPLAYED IF THIS DECISION IS REPRODUCED.

**PRIOR HISTORY:** ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF OHIO. 99-00217. Dlott. 01-05-00.

**DISPOSITION:** AFFIRMED.

**COUNSEL:** For ZIDE SPORT SHOP OF OHIO, INC., ROBERT M. ZIDE, RODNEY M. ZIDE, PRO-LINE, INC., Plaintiffs - Appellants: Joel Robert Chambers, Theodore R. Remaklus, Wood, Herron & Evans, Cincinnati, OH.

For ED TOBERGTE ASSOCIATES, INC., Defendant - Appellee: Michael Yakimo, Jr., Ginnie D. Derusseau, Chase & Yakimo, Overland Park, KS.

For ED TOBERGTE ASSOCIATES, INC., EDWARD H. TOBERGTE, Defendants - Appellees: James J. Kernell, Chase & Yakimo, Overland Park, KS.

For ED TOBERGTE ASSOCIATES, INC., EDWARD H. TOBERGTE, Defendants - Appellees: David E. Schmit, Frost, Brown & Todd, Cincinnati, OH.

**JUDGES:** Before: KEITH, SILER, and CLAY, Circuit Judges.

**OPINION BY:** SILER

**OPINION**

[*435] **SILER**, Circuit Judge. Plaintiffs Zide Sport Shop of Ohio, Inc., [**2] Robert M. Zide ("Zide"), Rodney M. Zide ("Rodney") and Pro-Line, Inc. ("Pro-Line") filed a declaratory judgment action against defendants Ed Tobergte Associates, Inc. ("ETA") and Edward Tobergte in the Southern District of Ohio. Subsequent to the plaintiffs' filing but before being served with the complaint, the defendants filed suit against the plaintiffs in the District of Kansas. Upon defendants' motion, the Southern District of Ohio dismissed plaintiffs' declaratory judgment action. We affirm.

I. Background

This case arises from various business dealings among the plaintiffs and defendants. Prior to its dissolution in December 1996, Gear 2000, Ltd. ("Gear 2000") purchased all rights to the Air Release shoulder pad from Zide, James Rector, and Pro-Line. Gear 2000 also purchased assets in Athletic Technologies, Inc. ("ATI"), a corporation that was chaired by Zide. Gear 2000 and ATI entered into a noncompetition agreement, which limited ATI's rights. Furthermore, Pro-Line and Zide each entered into an agreement to provide various professional services to Gear 2000. In December 1996, Gear 2000 dissolved, entering into an asset purchase agreement with ETA. Pursuant to that agreement, [**3] ETA purchased Gear 2000 assets and continued to conduct business under the name Gear 2000.

Zide, Rector, Pro-Line, and ATI were accused of violating various agreements that they had with Gear 2000. In November 1998, Robert Zide received a letter from counsel representing "Gear 2000" -- counsel really represented ETA and Ed Tobergte as successors in inter-

est to Gear 2000 -- that accused him of trademark infringement and breaching agreements made with Gear 2000. The letter stated that Gear 2000 would pursue a legal remedy if necessary, but that it would be willing to settle. Over the next few months, the parties made various settlement demands and offers.

No settlement offers were made after February 25, 1999. On that date, Gear 2000 sent a letter to Zide's counsel stating that "it would file suit if [it] did not receive a serious settlement offer within seven days...." Zide then obtained new counsel and, on March 3, 1999, that new counsel requested a twenty-five day extension so that he could review the matter and respond to Gear 2000's previous letter. "In the spirit of settlement," Gear 2000 granted Zide a "final extension" until March 26, 1999.

On March 25, 1999, one day before [**4] the extension expired, the plaintiffs filed an action against the defendants in the Southern District of Ohio seeking trademark cancellation and declaratory relief. Rather than serving the defendants, Zide's counsel sent them a letter listing six reasons why his clients possessed no liability. The letter was drafted on March 26, 1999, and it did not inform the defendants of the federal action filed against them a day earlier. No further communication took place among the parties until May 11, 1999.

On May 11, 1999, ETA filed suit against the plaintiffs and others in the District of Kansas. ETA alleged federal and common law trademark infringement, unfair competition, [*436] breach of contract, tortious interference with contract, and interference with prospective business advantage. That same day, the plaintiffs were served with ETA's complaint. So that they could obtain Kansas counsel, the plaintiffs were given an extension of time, until July 2, 1999, to answer ETA's complaint.

On July 1, 1999, Zide filed an amended complaint in the Southern District of Ohio. The amended complaint added Rodney and Pro-Line, parties named in the Kansas action, as plaintiffs. ETA, d/b/a Gear 2000 and Edward [**5] Toberge remained the defendants. The amended complaint sought cancellation of the AIR RELEASE(R) trademark and declaratory relief pursuant to the Federal Declaratory Judgment Act, 28 U.S.C. § 2201. On July 2, 1999, defendants were served with the both the original March 25, 1999 and the amended July 1, 1999 complaints.

Defendants filed a motion asking the Southern District of Ohio to exercise its discretion not to hear plaintiffs' declaratory judgment action by either dismissing or, in the alternative, transferring that action. The Southern District of Ohio granted the motion and dismissed the action.

## II. Standard of Review

Prior to the Supreme Court's decision in *Wilton v. Seven Falls Co., 515 U.S. 277, 132 L. Ed. 2d 214, 115 S. Ct. 2137 (1995)*, this court "held that entertainment of a declaratory judgment action is discretionary with the trial court, but that that discretion is reviewable on a de novo basis by the Court of Appeals...." *American Home Assurance Co. v. Evans, 791 F.2d 61 (6th Cir. 1986)*. But in *Wilton*, a declaratory judgment case where a parallel state proceeding existed, the Supreme Court stated: [**6]

> District courts' decisions about the propriety of hearing declaratory judgment actions, which are necessarily bound up with their decisions about the propriety of granting declaratory relief, should be reviewed for abuse of discretion. We do not attempt at this time to delineate the outer boundaries of that discretion in other cases, for example, cases raising issues of federal law or cases in which there are no parallel state proceedings.

*515 U.S. at 289-90.* Plaintiffs argue that *Wilton* establishes an abuse of discretion standard for declaratory judgment actions only where a parallel state proceeding exists. In cases where no parallel state proceeding exists, such as this case, they contend that this court should still apply de novo review.

We reject plaintiffs' position that de novo review is still appropriate in cases where no parallel state proceeding exists. Since *Wilton*, we have applied the abuse of discretion standard in all cases where district courts have decided whether to entertain declaratory judgment actions. *See, e.g., Foundation for Interior Design Educ. Research v. Savannah Coll. of Art & Design, 244 F.3d 521, 526 (6th Cir. 2001)* [**7] (applying the abuse of discretion standard where no parallel state proceeding existed); *Scottsdale Ins. Co. v. Roumph, 211 F.3d 964, 967 (6th Cir. 2000)* (applying the abuse of discretion standard where a parallel state proceeding existed). Therefore, we will review for abuse of discretion here.

## III. Discussion

Plaintiffs contend that the Southern District of Ohio abused its discretion by dismissing their declaratory judgment action. They argue that a) the first-to-file rule precluded dismissal and b) the district court misapplied the standard used to determine whether it should entertain a declaratory judgment action.

[*437] a. First-To-File Rule

16 Fed. Appxx. 433, *; 2001 U.S. App. LEXIS 17225, **

A plaintiff has 120 days after he files his complaint with the court to effect service of the summons and complaint upon a defendant. See Fed. R. Civ. P. 4(m). For purposes of first-to-file chronology, the date that an original complaint is filed controls. See Plating Res., Inc. v. Uti Corp., 47 F. Supp. 2d 899, 904 (N.D. Ohio 1999).

The first-to-file rule is a well-established doctrine that encourages comity among federal courts of equal rank. The rule provides that when actions involving nearly identical [**8] parties and issues have been filed in two different district courts, "the court in which the first suit was filed should generally proceed to judgment." In re Burley, 738 F.2d 981, 988 (9th Cir. 1984). The Sixth Circuit has referenced the rule without discussing it by name, see In re American Med. Sys., Inc., 75 F.3d 1069, 1088 (6th Cir. 1996); Barber-Greene v. Blaw-Knox Co., 239 F.2d 774, 778 (6th Cir. 1957), while other circuits have explicitly applied it. See, e.g., First Nat. Bank of Kansas City v. Kansas Pub. Employees Ret. Sys., 57 F.3d 638 (8th Cir. 1995); E.E.O.C. v. University of Pennsylvania, 850 F.2d 969 (3d Cir. 1988); In re Burley, 738 F.2d at 981.

District courts have the discretion to dispense with the first-to-file rule where equity so demands. A plaintiff, even one who files first, does not have a right to bring a declaratory judgment action in the forum of his choosing. See, e.g., Tempco Elec. Heater Corp. v. Omega Eng'g, Inc., 819 F.2d 746, 749-50 (7th Cir. 1987) ("The mere fact that [plaintiff] filed its declaratory judgment action first does [**9] not give it a 'right' to choose a forum. This circuit has never adhered to a rigid 'first to file' rule. We decline [Plaintiff's] invitation... to adopt such a rule here.") (internal citations omitted)). Factors that weigh against enforcement of the first-to-file rule include extraordinary circumstances, inequitable conduct, bad faith, anticipatory suits, and forum shopping. See Alltrade, Inc. v. Uniweld Prods., Inc., 946 F.2d 622, 628 (9th Cir. 1991); University of Pennsylvania, 850 F.2d at 972.

b. Declaratory Judgment Standard

The Declaratory Judgment Act empowers the district court to entertain certain actions, but it does not compel it to exercise the jurisdiction thus granted to it. See 28 U.S.C. § 2201(a); Wilton, 515 U.S. at 282. Discretion not to hear a declaratory judgment action, even where jurisdiction exists, is undisputed. See Brillhart v. Excess Ins. Co. of America, 316 U.S. 491, 494, 86 L. Ed. 1620, 62 S. Ct. 1173 (1942).

The Sixth Circuit applies the following criteria to determine whether it is appropriate for a district court to issue a declaratory ruling:

(1)  [**10]  when the judgment will serve a useful purpose in clarifying and settling the legal relationship in issue, and (2) when it will terminate and afford relief from the uncertainty, insecurity, and controversy giving rise to the proceeding. It follows that when neither of these results can be accomplished, the court should decline to render the declarations prayed.

Grand Truck Western R.R. Co. v. Consolidated Rail Corp., 746 F.2d 323, 326 (6th Cir. 1984) (quoting E. BORCHARD, DECLARATORY JUDGMENTS 299 (2d ed. 1941)). In assessing whether to exercise its discretion to accept jurisdiction in a declaratory judgment action, a district court considers five specific factors:

(1) whether the judgment would settle the controversy;

[*438]  (2) whether the declaratory judgment action would serve a useful purpose in clarifying the legal relations at issue;

(3) whether the declaratory remedy is being used merely for the purpose of "procedural fencing" or "to provide an arena for a race for res judicata";

(4) whether the use of a declaratory action would increase the friction between our federal and state courts and improperly encroach on state jurisdiction; and

(5) whether [**11] there is an alternative remedy that is better or more effective.

Scottsdale, 211 F.3d at 968 (quoting Omaha Property & Cas. Ins. Co. v. Johnson, 923 F.2d 446, 447-48 (6th Cir. 1991)).

c. Analysis

The Ohio district court reconciled the first-to-file rule and the declaratory judgment standard with the facts of this case. Even though it recognized that the plaintiffs were eligible for the first-to-file rule since their original complaint was filed on March 25, 1999, well before the defendants' Kansas complaint was filed on May 11, 1999, the court exercised its discretion and declined to enforce the rule. Likewise, it exercised its discretion not to entertain the plaintiffs' declaratory judgment action at all. In reaching its conclusions, the court found that the plaintiffs' original complaint was filed in bad faith, and that the plaintiffs had engaged in procedural fencing.

16 Fed. Appx. 433, *; 2001 U.S. App. LEXIS 17225, **

A finding of bad faith is overwhelmingly supported in the record. The plaintiffs misled the defendants by going along with written correspondence regarding settlement while, in fact, the plaintiffs had already filed but not served an anticipatory federal action. The plaintiffs [**12] knew that if a settlement was not reached, the defendants would seek legal recourse. Thus, they filed their federal action on March 25, 1999, the day before a negotiation extension period granted to them by the defendants expired. In a March 26, 1999 letter, plaintiffs' counsel merely listed six reasons that his clients faced no liability -- he did not inform defendants that a federal action had been filed against them in Ohio. As the district court stated:

> If Plaintiffs' conduct was not mere deceptive gamesmanship, then they would have informed Defendants that they did not intend to make another settlement offer and would prefer to seek a judicial resolution. If it was not gamesmanship, Plaintiffs would not have filed suit in this Court during the extension period they requested for their new counsel. If it was not gamesmanship, they would have informed Defendants in the March 26, 1999 letter that they had filed suit.

The court also found that the "defendants likely would have filed the Kansas action in early March 1999 and not waited until May 1999" had the plaintiffs not requested the extension period.

While *Fed. R. Civ. P. 4(m)* gives a plaintiff 120 days to serve [**13] a defendant before an action will be dismissed for lack of service, the rule does not state that a plaintiff's action cannot be dismissed during that 120 day period for other reasons. Here, the district court considered lack of service to be evidence of gamesmanship and procedural fencing, factors that also weigh in favor of dismissing a declaratory action. The plaintiffs did not serve defendants until July 2, 1999, after the plaintiffs had time to review the Kansas complaint. On July 1, 1999, in order to qualify for the first-to-file rule, the plaintiffs filed an amended complaint that incorporated parties and allegations first raised in the defendants' Kansas action.

Because the plaintiffs filed their complaint in bad faith and engaged in procedural fencing, the district court did not [*439] abuse its discretion by dismissing the plaintiffs' action.

**AFFIRMED.**

LEXSEE 2007 U.S. DIST. LEXIS 4288

**NORTH AMERICAN COMMUNICATIONS, INC., Plaintiff, v. HOMEOWNERS LOAN CORPORATION, Defendant.**

**CIVIL ACTION NO. 3:2006-147**

**UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

*2007 U.S. Dist. LEXIS 4288*

**January 22, 2007, Decided**
**January 22, 2007, Filed**

**COUNSEL:** [*1] For NORTH AMERICAN CORPORATIONS, INC., Plaintiff: Heather Z. Kelly, LEAD ATTORNEY, Rhoads & Sinon, Harrisburg, PA US; Robert J. Tribeck, LEAD ATTORNEY, Rhoads & Sinon LLP, Harrisburg, PA.

For HOMEOWNERS LOAN CORP., Defendant: Ashley Cummings, LEAD ATTORNEY, Hunton & Williams, LLP, Atlanta, GA US; Jonathan P. Ford, LEAD ATTORNEY, Atlanta, GA US; Raymond P. Pepe, LEAD ATTORNEY, Kirkpatrick & Lockhart Nicholson Graham LLP, Harrisburg, PA U.S.; Robert A. Lawton, LEAD ATTORNEY, Kirkpatrick & Lockhart Nicholson Graham, Harrisburg, PA.

**JUDGES:** KIM R. GIBSON.

**OPINION BY:** KIM R. GIBSON

**OPINION**

**Memorandum Opinion and Order of Court**

**GIBSON, J.**

This case comes before the Court on the Defendant, Homeowners Loan Corporation's (hereinafter "HLC") Motion to Dismiss (Document No. 7) and Brief in Support (Document No. 6). HLC seeks the dismissal of Plaintiff, North American Communications, Inc.'s (hereinafter "NAC") Complaint that seeks damages for breach of contract and declaratory relief under Pennsylvania law. A second motion filed by HLC entitled Motion to Stay Discovery Pending Ruling on Motion to Dismiss or Transfer (Document No. 22) is also before the Court. This matter was removed [*2] to this Court on July 3, 2006 from the Court of Common Pleas of Blair County, Pennsylvania. *See* Notice of Removal (Document No. 1).

Subject matter jurisdiction is based upon diversity of citizenship and the amount in controversy exceeds $ 75,000 pursuant to *28 U.S.C. § 1332*. Venue is proper pursuant to *28 U.S.C. § 1391(a)(2)*.

The present matter arises from a contractual relationship between the parties that has since been terminated. HLC contracted with NAC for NAC to provide mailing services for HLC's mortgage lending business and that contract existed for the period of November 2004 through January 2006. Notice of Removal, Exhibit 3 (Complaint), PP 7, 9. NAC did not provide any trucking services itself, but subcontracted with a trucking company that, pursuant to HLC's contract, would pick up its mail; the contract language offered a 10 *per centum* discount should more than ten *per centum* of HLC's mail in any month be delivered late. Notice of Removal, Exhibit 3 (Complaint), PP 10-15. During the course of the contractual relationship, NAC forwarded invoices from the trucking company to HLC for its services performed under [*3] the contract "[f]rom December 2004 through July 2005" in the amount of $ 153,034.77, but HLC refused to remit such a balance claiming such amount to be equal to "trucking credits" to which HLC was entitled pursuant to the contract discount. Notice of Removal, Exhibit 3 (Complaint), PP 16-24. NAC disputes the fact that HLC can "unilaterally withhold[] [the] trucking credits", and that if the withholding of the amounts is permissible, the credits claimed exceed the possible amount that may be withheld. *Id.* "On January 19, 2006, NAC learned that HLC was ceasing its operations with NAC." Notice of Removal, Exhibit 3 (Complaint), P 25. NAC subsequently invoiced HLC for the amount of $ 34,246,21, representing outstanding mailing services, but HLC contended that such an invoice was incorrect because unused postage previously paid to NAC in the amount of $ 175,071.76 had not yet been refunded to HLC. Notice of Removal, Exhibit 3 (Complaint), PP 26-

33. HLC indicated that the trucking credits of $ 153,034.77 also should apply. Notice of Removal, Exhibit 3 (Complaint), P 31. NAC takes the position that the trucking credits were taken "unilaterally" under the contract, and thus were [*4] improper, and indicated to HLC that it would not refund the outstanding postage until the outstanding trucking invoices were first paid by HLC. Notice of Removal, Exhibit 3 (Complaint), PP 28-33.

The present action was initiated in the Court of Common Pleas of Blair County through the filing of a praecipe for a writ of summons on May 25, 2006 and that court subsequently issued the writ of summons on May 31, 2006; a complaint was later filed on June 15, 2006. Notice of Removal, Exhibits 1, 2, 3.

HLC filed its own complaint on May 31, 2006 in the United States District Court for the Northern District of Georgia. HLC claims not to have known of the Pennsylvania action as of the day it filed its complaint. HLC's Brief (Document No. 6), p. 3. Thereafter, "[o]n June 27, 2006, NAC filed a Motion to Dismiss or, in the Alternative, to Stay the Georgia Action in favor of the Pennsylvania Action" HLC's Brief, p. 4. HLC filed the present Motion to Dismiss or Transfer on July 11, 2006. NAC's motion to dismiss remains pending before the district court for the Northern District of Georgia. HLC's Motion to Stay, P 1. This Court must determine whether to retain jurisdiction over the case *sub* [*5] *judice,* dismiss it or transfer it to the district court in the Northern District of Georgia. The Court will deny HLC's Motion to Dismiss, but grant its alternative Motion to Transfer, and in light of this ruling, the Court will also deny HLC's Motion to Stay as moot.

Generally speaking, NAC claims it was the first to file a civil action on these matters and its choice of forum should be respected, while HLC styles NAC's actions in filing its praecipe for a writ of summons as "anticipatory." HLC's Brief, p. 11. Since 1941, the Court of Appeals for the Third Circuit has recognized the "first-filed rule" which has been summarized by the Third Circuit as follows: "We concluded that '[i]n all cases of federal concurrent jurisdiction, the court which first has possession of the subject must decide it.'" *E.E.O.C. v. University of Pennsylvania, 850 F.2d 969, 971 (3d Cir. 1988)*(citations omitted). The rule itself promotes efficiency in the judicial system and is flexible:

The first-filed rule encourages sound judicial administration and promotes comity among federal courts of equal rank. It gives a court "the power" to enjoin the subsequent prosecution of proceedings [*6] involving the same parties and the same issues already before another district court. *See Triangle Conduit & Cable Co. v. National Elec. Products Corp., 125 F.2d 1008, 1009 (3d Cir.), cert. denied, 316 U.S. 676, 62 S.Ct. 1046, 86 L.Ed. 1750 (1942).* That authority, however, is not a mandate directing wooden application of the rule without regard to rare or extraordinary circumstances, inequitable conduct, bad faith, or forum shopping. District courts have always had discretion to retain jurisdiction given appropriate circumstances justifying departure from the first-filed rule.

*E.E.O.C. v. University of Pennsylvania, 850 F.2d 969, 971-972 (3d Cir. 1988)*(citations omitted). Jurisdiction pursuant to the first-filed rule has been refused where the federal court found that an anticipatory filing was made to avoid "another, less favorable, forum" and also where a later-filed civil action had progressed to a greater extent than the first-filed action. *E.E.O.C. at 976.* In resolving a conflict, under the authority of the first-filed rule, between proceedings involving the same parties and same issues filed in different federal courts [*7] possessing "concurrent jurisdiction" judges are granted discretion, but are guided by the principles of equity "to avoid burdening the federal judiciary and to prevent the judicial embarrassment of conflicting judgments." *E.E.O.C. at 977.*

The parties attempt to characterize this present matter as either equitable or legal in character in order to support their respective arguments for the application or inapplication of the "first-filed" rule as they both read the rule as not applying to legal actions. Specifically, NAC makes much of the assertion that the "first-filed" rule is inapplicable to claims for declaratory relief rather than legal claims and that its claim is one for a legal claim, *i.e.* breach of contract. HLC characterizes the present civil action as equitable in character. The Court does not agree with NAC's interpretation of *Drugstore-Direct v. The Cartier Div. Of Richemont North America, Inc., 350 F.Supp.2d 620 (E.D.Pa. 2004)* as precedent for the concept that only claims at law, not claims in equity or declaratory relief actions, that are filed first require the application of the first-filed rule. The Court finds that the first-filed rule applies [*8] to all types of actions. *See E.E.O.C. at 971* (citing *Crosley Corp. v. Hazeltine Corp., 122 F.2d 925, 929 (3d Cir. 1941)).* Additionally, NAC's reliance on *Drugstore-Direct, Inc.,* which cites the Supreme Court case of *Wilton v. Seven Falls Co., 515 U.S. 277, 115 S.Ct. 2137, 132 L.Ed.2d 214 (1995),* is misplaced in that it does not stand for the proposition that *all* declaratory actions are within the discretion of this Court to hear, because *Wilton* is based upon the federal De-

claratory Judgment Act, not the Pennsylvania act presently before the Court or any other state law regarding declaratory judgments. However, the Court does note that under Pennsylvania's Declaratory Judgments Act Pennsylvania courts certainly do have the discretion to exercise jurisdiction over a declaratory claim. *See Pennsylvania State Lodge, F.O.P. v. Commonwealth of Pennsylvania, Dept. Of Labor and Industry, 692 A.2d 609, 613 (Pa. Commw. 1997), aff'd, Pennsylvania State Lodge, F.O.P. v. Commonwealth of Pennsylvania, Dept. Of Labor and Industry, 550 Pa. 549, 707 A.2d 1129 (Pa. 1998).*

Despite the legal posturing of the parties concerning the [*9] legal or equitable character of the present civil action, both parties are incorrect; the present action is one for both breach of contract and a declaratory judgment under Pennsylvania law. Therefore, the arguments made by the parties that attempt to classify this action as either legal or equitable are unpersuasive to this Court. *Accord, Koresko v. Nationwide Life Ins. Co., 403 F.Supp.2d 394, 401 (E.D.Pa. 2005).* As stated above, the first-filed rule applies to all civil actions, whether they contain requests for declaratory relief or not.

With this understanding, the Court concludes that the first *federal* court to possess jurisdiction was the Northern District of Georgia, not this Court. It is this Court's understanding that the "first-filed" rule is intended to promote "comity" within the federal courts and discourage conflicting orders among federal courts. *EEOC at 971, 977.* The Court further finds that there was no bad faith, forum shopping or other inequities that occurred with the filing of the Georgia action or the progress of the case *sub judice* that would mandate this Court to retain jurisdiction over this case. Therefore, in applying the first-filed [*10] rule to the existing conflict between the case *sub judice* and the Georgia action the Court determines that the United States District Court for the Northern District of Georgia was the first federal district court to possess jurisdiction over this subject matter and therefore jurisdiction is properly in that federal court. [1]

_____

1  In applying the first-filed rule, the first-filed case is the federal civil action which is first in time, whether by removal or the actual filing of a civil action in federal court. Since the rule the Court follows today is limited to federal district courts, the plaintiff in a state civil action can avoid being the second-filed matter by simply filing a complaint in a federal district court, not a state trial court at the outset. This is particularly notable in that instance where it appears that an abuse of the timing of the filings may occur with a defendant that waits to remove an existing state

action in order to file a separate federal action, in a different district court, prior to removing the plaintiff's state civil action. Although this may appear to be an abuse of the rule because one party is controlling timing of two civil actions entry into federal court, it is not an abuse because the plaintiff chose state court jurisdiction over the equally permissible jurisdiction of a federal court and therefore cannot invoke the first-filed rule.

Finally, it would appear to this Court that a defendant in the state action would frequently be disinclined to remove that matter prior to filing its own federal civil action in another district court. Thus, for all practical purposes, the onus is upon the competing parties to file their respective civil actions first in a federal district court in order to invoke the filed-first rule and failure to do so will result in deference to the jurisdiction of the district court obtaining jurisdiction first, absent the application of an exception to the rule. If a federal court found that one of the parties engaged in inequitable conduct, bad faith or forum shopping that court could exercise its discretion to determine jurisdiction without application of the first-filed rule. *See E.E.O.C. v. University of Pennsylvania, supra.*

[*11] Having determined that the "first-filed" rule applies and that the Georgia federal action is the first filed action, the Court has three possible courses of action with respect to the case *sub judice:* dismissal without prejudice, staying the present action until completion of the Georgia federal action, or transfer to the Northern District of Georgia pursuant to *28 U.S.C. § 1404(a).* *Koresko, 403 F.Supp.2d at 403.* The Court believes that transfer pursuant to *§ 1404(a)* is the appropriate remedy. This is so because the Court cannot conclude that the other two remedies would promote efficiency in the judiciary as a dismissal without prejudice could result in a re-filing of this matter in the future and a staying of the present action would delay further resolution of this matter.

The Court must evaluate both public and private factors in evaluating a motion to transfer pursuant to *§ 1404(a):*

> The private interests that may be considered include: (1) the plaintiff's forum preference as manifested in the original choice, (2) the defendant's preference of forum, (3) whether the claim arose elsewhere, (4) the convenience of the parties [*12] as indicated by their relative physical and financial condition, (5) the convenience of the witnesses, to the extent

that the witnesses may actually be un-available for trial in one of the fora, and (6) the location of books and records, similarly limited to the extent that the files could not be produced in the alternative forum. *Jumara v. State Farm Ins. Co., 55 F.3d 873, 879* (internal citations omitted). The public interests include: (1) the en-forceability of the judgment, (2) practical considerations that could make the trial easy, expeditious, or inexpensive, (3) the relative administrative difficulty in the two fora resulting from court congestion, (4) the local interest in deciding local con-troversies at home, (5) the public policies of the fora, and (6) the familiarity of the trial judge with the applicable state law in diversity cases. *Id. at 879-80* (internal ci-tations omitted).

*Schiller-Pfeiffer, Inc. v. Country Home Prods., 2004 WL 2755585, *8, 2004 U.S.Dist. LEXIS 24180 at *29, n. 10 (E.D.Pa. Dec. 1, 2004).*

The Court recognizes that HLC's choice of forum is the United States District Court for the Northern District [*13] of Georgia while the NAC's choice is this district, that the witnesses, records and other evidence concerning the subject matter of this civil action appear to be spread relatively equally between Georgia and Pennsylvania. The public interests at issue do not appear to favor either forum as either district court would appear to be able to enforce its judgment upon the parties, be competent to apply either of the state laws that could be applicable and

no public policies appear to be present that would pre-clude either court from moving forward with its respec-tive jurisdiction over these matters. Although this Court cannot speak concerning the Northern District of Geor-gia's docket, it could be at least several months before the case *sub judice* could proceed to trial before this Court. In light of the application of the "first-filed" rule with the Georgia federal action being first-filed, and with the pri-vate interests and public interests to be taken into consid-eration under *§ 1404(a)* not indicating that a transfer to Georgia would be inappropriate, this Court, in order to promote efficiency and prevent conflicting rulings among courts exercises its discretion and chooses to transfer [*14] the case *sub judice* to the United States District Court for the Northern District of Georgia rather than granting dismissal or entering a stay.

**AND NOW,** this 22<nd> day of January, 2007, in accordance with the foregoing Memorandum Opinion, IT IS HEREBY ORDERED THAT the Defendant, Home-owners Loan Corporation's Motion to Dismiss or Trans-fer (Document No. 6) is DENIED IN PART as to the Motion to Dismiss and GRANTED IN PART as to the Motion to Transfer. IT IS FURTHER ORDERED THAT the case *sub judice* be transferred to the United States District Court for the Northern District of Georgia. IT IS FURTHER ORDERED THAT the Defendant, Home-owners Loan Corporation's Motion to Stay Discovery Pending Ruling on Motion to Dismiss or Transfer (Document No. 22) is DENIED AS MOOT.

**BY THE COURT:**

**KIM R. GIBSON, UNITED STATES DISTRICT COURT**