IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| AMERICAN SERVICE INSURANCE COMPANY, an Illinois insurance company,<br><br>Plaintiff,<br><br>v.<br><br>NAFTA GENERAL AGENCY, a Texas corporation, UNDERWRITERS MGA, INC., a Texas corporation, and RAMON VILLARREAL, an individual,<br><br>Defendants. | Case No.: 08 C 443<br><br>Judge David H. Coar |

**DEFENDANTS' OPPOSITION TO PLAINTIFF'S
MOTION FOR RULE TO SHOW CAUSE**

**INTRODUCTION**

Each Defendant has acted in good faith and complied completely and with every provision of this Court's Temporary Restraining Order ("TRO"). AMERICAN SERVICE INSURANCE COMPANY's ("ASI") Motion For Rule To Show Cause ("Motion"), when exposed to the light of day, fails to provide any evidence that any Defendant sold or authorized the sale of ASI insurance in Mexico after January 22, 2008 as alleged. The Motion relies upon a materially misleading declaration from its Vice President (the "Bosy Declaration"), which attaches purported "Certificates of Insurance" that third-party insurance brokers doing business in Mexico (the "Third-Party Brokers") allegedly issued after January 22. Based upon this information, the Motion falsely claims that Defendants issued those certificates. The truth is that if any ASI insurance was sold after January 22, Third-Party Brokers sold it *after Defendants issued express written instructions not to do so.*

The sworn facts establish that no Defendant (i) was involved in the issuance of those certificates; (ii) authorized issuance of those certificates; or (iii) signed any of those certificates. The purported signature of Mr. Hernandez is part of a preprinted form and is not an original signature. Neither Defendants nor Mr. Hernandez were even aware that those certificates existed until ASI brought them to their attention through this Motion.

The most egregious part of ASI's Motion is that it neglects to tell the Court that it has directly contracted with the Third-Party Brokers to sell insurance in Mexico, because the Defendants are not licensed to sell insurance in Mexico, yet it did not attempt to terminate their right to do so until February 8, 2008. Moreover, ASI did not join those parties to this action even though they are indispensable to obtain the relief that ASI seeks. To the extent the Third-Party Brokers are selling ASI insurance in Mexico, they are doing so pursuant to a written contract with ASI and they cannot be controlled through injunctions issued against the Defendants. Because Defendants have complied with the TRO and should not be held accountable for ASI's failure to bring the Third-Party Brokers before this Court, this Motion should be denied.

## ARGUMENT

I. **DEFENDANTS DO NOT HAVE LEGAL AUTHORITY TO SELL ASI POLICIES IN MEXICO AND THEY HAVE NOT DONE SO.**

One of the most disturbing aspects of the Motion is that it fails to even mention a key fact that utterly undermines all of ASI's claims: Defendants do not have, and have never had, the legal authority to sell ASI policies in Mexico. Based upon this fact, ASI and Defendants contracted with independent Mexican companies (the Third-Party Agents) authorized to sell

insurance, including ALMEX[1] and ARIMEX.[2] Thus even if ASI policies were sold in Mexico since January 22, ASI knows full well that Defendants could not have sold them.

NAFTA and Underwriters MGA are both "Managing General Agents" authorized under the laws of Texas to manage insurance policies. (*See* attached affidavit of Daniel Hernandez ("Hernandez Aff."), attached as Exhibit A hereto and made a part hereof, at ¶ 4; attached affidavit of Ramon Villarreal ("Villarreal Aff."), attached as Exhibit B hereto and made a part hereof, at ¶ 4). Neither Defendant has ever sold ASI insurance in Mexico. (Hernandez Aff. at ¶¶ 5, 17; Villarrreal Aff. at ¶¶ 5, 17.) Both companies contracted separately with Third-Party Brokers authorized to sell insurance in Mexico. (Hernandez Aff. at ¶¶ 5, 10; Villarrreal Aff. at ¶¶ 5, 10.) Defendants NAFTA and Underwriters MGA have no direct control over them. (Hernandez Aff. at ¶¶ 10-14; Villarreal Aff. at ¶¶ 10-14.) Defendants' responsibilities are limited to managing ASI policies that Third-Party Brokers sell and processing claims. (Hernandez Aff. at ¶¶ 47-48; Villarrreal Aff. at ¶¶ 45-46.) Defendants' name, and Mr. Hernandez' preprinted signature, appear on those Certificates for informational purposes because they manage the policies and handle policy claims. (*Id.*)

ASI is fully aware of all this, but its Motion omits any mention of it. ASI, in fact, insisted that the parties amend the July 1, 2006 Program Manager Agreement ("PMA") to add and authorize those Third-Party Brokers to act as managers and empower them to sell ASI insurance in Mexico. (Hernandez Aff. at ¶ 9.) ASI requested this change to the PMA because (1) it was fully aware that NAFTA and Underwriters MGA could not sell insurance policies in

---

[1] ALMEX Seguros, S.A. de C.V

[2] ASESORES DE Reisgos Internacionales De Mexico, S.A. de C.V.

3

Mexico, and (2) it recognized that the Third-Party Brokers are separate and distinct entities from any of the Defendants.

## II. DEFENDANTS DID NOT ISSUE INSURANCE AFTER JANUARY 22, 2008.

### A. No Evidence Shows Defendants Authorized "Certificates Of Insurance."

The purported "Certificates of Insurance" supporting the Motion were issued by two Third-Party Brokers, ARAMEX and ALMEX, that have no common owners, officers or employees with Defendants.[3] (Hernandez Aff. at ¶¶ 25-44; Villarrreal Aff. at ¶¶ 29-40.) The only connection that ASI can make is that the "Certificates" bear the names of NAFTA or Underwriters MGA, and/or an image of Daniel Hernandez' (Director of Operations for NAFTA) signature. (*See* Mot. at pp. 3-4.)[4]

The "Certificates of Insurance" are all form documents that the Third-Party Brokers — not Defendants — created and used to sell ASI policies. (Hernandez Aff. at ¶ 29; Villarrreal Aff. at ¶ 29.) The purported "signature" of Mr. Hernandez, the core of ASI's argument, is in fact an image of his signature included on the preprinted portion of the form. (Hernandez Aff. at ¶¶ 31-32.) Mr. Hernandez did not personally sign any of those "Certificates." (*Id.*)

The mere fact that Defendants' names appear on some those forms does not suggest that Defendants authorized them. (ASI also appears on those forms as well as "signatures" of ASI's President and Secretary.) (*See* Exhibit C hereto, attachment to the Adame affidavit in support of ASI's Motion.) This is especially true when Defendants *immediately* directed the Third-Party

---

[3] ASI's argument that existence of these "Certificates" means that there were "hundreds of such policies issued" (Mot. at p. 4) is utterly baseless.

[4] Even if the "Certificates of Insurance" were probative of anything (which they are not), ASI has failed to offer evidence sufficient to authenticate them or to suggest that they could be admissible evidence.

Brokers to stop selling ASI insurance on January 22, 2008, the date that the Court entered the TRO. (Hernandez Aff. at ¶¶ 21-23; Villarrreal Aff. at ¶¶ 21-23.)

      **B.    Claims That Third-Party Brokers' Act At The Direction of NAFTA And Underwriters MGA is False.**

ASI tries to mislead the Court by asserting that the actions of those Third-Party Brokers are the actions of Defendants. Specifically, ASI alleges that "NAFTA issued ten (10) separate certificates " on January 23, 2008. (Mot. at p. 3.) That statement is patently false. ARIMEX issued those policies. (Hernandez Aff. at ¶¶ 29-31.) ASI claims that "UMGA issued two (2) certificates" on January 23, 2008. (Mot. at p. 3.) That statement is also patently false; ALMEX issued those policies. (Villarreal Aff. at ¶¶ 34-36.) And ARIMEX issued the January 24 and February 5 "Certificates" which ASI claims, again falsely, both that "NAFTA issued" and Mr. Hernandez signed. (Mot. at p. 3.)

ASI cannot argue that ALMEX and ARIMEX are corporate affiliates or subsidiaries of Defendants. Moreover, ASI cannot legitimately argue the conduct complained of was within the scope of an agency relationship when the actions are in direct contravention of Mr. Hernandez' January 22 written instructions. It is ASI who has authorized ALMEX and ARIMEX to sell the policies complained of, through the PMA, without directly instructing them to stop until on or about February 8, 2008.

      **C.    ASI Misleadingly Omits The Fact That Defendants Immediately Instructed The Third-Party Brokers To Stop Selling ASI Insurance.**

ASI's Motion is also false and materially misleading because, as ASI knows, Defendants immediately notified the Third-Party Brokers to stop selling ASI insurance. (Hernandez Aff. at ¶¶ 19-23; Villarrreal Aff. at ¶¶ 19-23 (January 22 letters are attached to both affidavits).) Mr. Hernandez' January 22 instructions, in both English and Spanish, to those entities could not have

5

been more clear.[5] (*Id.*.) Mr. Hernandez reiterated those instructions in letters that he sent on January 28. (*Id.*) This is not new information to ASI, as Defendants' counsel sent copies of those notifications to counsel for ASI on February 1, 2008. Nowhere does ASI advise the Court of this fact or address the written instruction in the Motion.

D.  **"Evidence" Regarding "01/08/2008" Statement Is Unfounded.**

ASI's argument that Defendants are "attempting to defraud the public" (Mot. at pp. 3-4) is wild speculation and inaccurate. ASI rests this theory on its unsupportable interpretation of a notation appearing on the ARIMEX insurance forms stating that "THIS CERTIFICATE OF INSURANCE WILL NOT BE ABLE TO BE SOLD AFTER 01/08/2008." Even if Defendants created that form (which, as explained above, they did not), a cursory investigation would have shown ASI that in Spanish – the prevalent language of Mexico where the certificates were made and the policies sold - the date "01/08/2008" refers to "August 1, 2008." (Hernandez Aff. at ¶¶ 33-35.) ARIMEX, a Mexican company, clearly intended that as an expiration date for its forms. (*Id.*) In any event, ASI's speculative conspiracy theory is illogical because "January 8, 2008" has no apparent significance in this litigation.

E.  **Defendants Have Delivered All Documents In Their Possession To ASI.**

ASI's claim that Defendants have not delivered documents in their possession in accordance with the TRO is also patently false. (Mot. at p. 4.) As Defendants have informed ASI, they do not receive copies of insurance certificates until thirty- to forty-five-days after they issue. (Hernandez Aff. At ¶ 16.) As agreed, Defendants made a written request to the Third-Party Brokers to forward insurance certificates issued or renewed after December 31, 2007 as

---

[5] "[A]ll portions of the Non-Resident Program written through [ASI] are suspended effective 12:01 AM CST on Wednesday, January 23, 2008 ... Please notify all of your agents and/or sub-agents and anyone else that may have access to this program of this suspension. **Any policies written after the time mentioned above will have no validity and will afford no coverage by either ASI or [NAFTA]**" (emphasis in original).

soon as possible (*see* Hernandez Aff. at ¶ 24; Villarrreal Aff. at ¶ 24 (copies of these letters are attached to each affidavit)). Defendants have complied, and continue to comply, with the TRO's requirement to produce documents as promptly as possible.[6]

### F.    Relief Requested Will Not Address The Alleged Harm.

ASI's Motion also fails because the relief it seeks will not prevent the Third-Party Brokers from issuing "Certificate of Insurance" forms (if in fact they have done so) in Mexico.[7] Initially, ASI fails to cite a valid basis to seek such extraordinary relief. More important, however, allowing ASI to take Defendants' documents, computers and money cannot prevent Third-Party Brokers from continuing to sell "Certificates of Insurance" with ASI's name. To do that, they must be brought before this Court.

### G.    Bad Faith On The Part Of ASI.

Finally, it must be noted that ASI's Motion reflects that ASI brought it in bad faith. In accordance with this Court's instructions at the February 4, 2008 hearing, Defendants negotiated language of an agreed TRO for several days with ASI. ASI's Motion makes clear that, at the very time ASI's counsel was engaged in those negotiations, it was aware of certificates of insurance that it would later claim (falsely) that Defendants issued in violation of the TRO. Yet, ASI never disclosed to Defendants that it was aware of such Certificates until the filing of this Motion. A simple letter asking Defense counsel for an explanation of the certificates attached to the Bosy Affidavit would have eliminated the need for the Motion and this Response, and would

---

[6]    Defendants served ASI with a written response to its expedited discovery requests on February 13, 2008.

[7]    ASI requests the Court to grant what are essentially quasi-police powers, allowing it to enter Defendants' property, seize documents, computer equipment and other things that it unilaterally sees fit to remove; to require Defendants to pay for a forensic analysis of computer equipment; and to require Defendants to post a quarter-million dollars as security. (Mot. at pp. 6-7.)

not have wasted this Court's valuable time. Litigation is not a game, and this Court should prevent ASI from benefiting from its disingenuous conduct by denying its Motion.

## CONCLUSION

Accordingly, for all of the reasons set forth herein, Defendants, NAFTA GENERAL AGENCY, UNDERWRITERS MGA, INC., and RAMON VILLARREAL, respectfully request that this Court deny the Plaintiff's Motion For Rule To Show Cause, and to grant Defendants any and all other relief that this Court deems to be reasonable and appropriate in light of ASI's conduct of concealing the certificate from Defense counsel during the negotiation of the TRO language, failing to address the issue with Defense counsel before filing this Motion, and filing a Motion it knew was misleading given both its contract with the Third-Party Brokers and Defendants' specific instructions to the Third-Party Brokers to cease issuing ASI policies in accordance with the current TRO.

Respectfully submitted,

**NAFTA GENERAL AGENCY,**
**UNDERWRITERS MGA, INC.** and
**RAMON VILLAREAL,** Defendants

By: ___s/ Paul A. Duffy___
    One of their attorneys

Michael J. Scotti, III  #6205868
Paul A. Duffy  #6210496
**FREEBORN & PETERS LLP**
311 S. Wacker Dr., Suite 3000
Chicago, Illinois  60606
(312) 360-6000

Dated: February 15, 2008
#1481330v1

**CERTIFICATE OF SERVICE**

The undersigned certifies that he served Defendants' **OPPOSITION TO PLAINTIFF'S MOTION FOR RULE TO SHOW CAUSE**, via the United States District Court, Northern District of Illinois, Eastern Division, ECF filing system, on February 15, 2008 to the parties set forth below:

>Patrick M. Hincks
>Desmond Patrick Curran
>Matthew P. Barrette
>Sullivan Hinks & Conway
>120 W. 22nd Street, Suite 100
>Oak Brook, IL  60523
>(630) 573-5021

                                        s/ Paul A. Duffy