AO88 (Rev. 12/07) Subpoena in a Civil Case

## Issued by the
# UNITED STATES DISTRICT COURT
### Northern District of Illinois

AMERICAN SERVICE INSURANCE COMPANY,

v.

NAFTA GENERAL AGENCY, UNDERWRITERS
MGA, INC. and RAMON VILLARREAL,

**SUBPOENA IN A CIVIL CASE**

Case Number:[1]  08 C 443

TO:   Michael John Scotti, III
      Freeborn & Peters
      311 South Wacker Drive, Ste. 300
      Chicago, Illinois 60606

☑  YOU ARE COMMANDED to appear in the United States District court at the place, date, and time specified below to testify in the above case.

| PLACE OF TESTIMONY | COURTROOM |
|---|---|
| 219 South Dearborn Chicago, Illinois | 1419 |
| | DATE AND TIME |
| | 5/29/2008 10:00 am |

☐  YOU ARE COMMANDED to appear at the place, date, and time specified below to testify at the taking of a deposition in the above case.

| PLACE OF DEPOSITION | DATE AND TIME |
|---|---|
| | |

☑  YOU ARE COMMANDED to produce and permit inspection and copying of the following documents or objects at the place, date, and time specified below (list documents or objects):

See Rider attached hereto

| PLACE | DATE AND TIME |
|---|---|
| Kubiesa, Spiroff, Gosselar, Acker & DeBlasio, P.C. 105 South York Street, Ste. 250, Elmhurst, Illinois 60126 | 5/27/2008 11:00 am |

☐  YOU ARE COMMANDED to permit inspection of the following premises at the date and time specified below.

| PREMISES | DATE AND TIME |
|---|---|
| | |

Any organization not a party to this suit that is subpoenaed for the taking of a deposition shall designate one or more officers, directors, or managing agents, or other persons who consent to testify on its behalf, and may set forth, for each person designated, the matters on which the person will testify.  Federal Rule of Civil Procedure 30(b)(6).

| ISSUING OFFICER'S SIGNATURE AND TITLE (INDICATE IF ATTORNEY FOR PLAINTIFF OR DEFENDANT) | DATE |
|---|---|
| Attorney for Defendants | 5/22/2008 |

ISSUING OFFICER'S NAME, ADDRESS AND PHONE NUMBER

Antonio DeBlasio, 105 South York Street, Ste. 250, Elmhurst, Illinois 60126 (630) 516-1800

(See Federal Rule of Civil Procedure 45 (c), (d), and (e), on next page)

[1] If action is pending in district other than district of issuance, state district under case number.

**EXHIBIT**

A

## PROOF OF SERVICE

| | DATE | PLACE |
|---|---|---|
| SERVED | | |

| SERVED ON (PRINT NAME) | MANNER OF SERVICE |
|---|---|
| | |

| SERVED BY (PRINT NAME) | TITLE |
|---|---|
| | |

## DECLARATION OF SERVER

I declare under penalty of perjury under the laws of the United States of America that the foregoing information contained in the Proof of Service is true and correct.

Executed on _____

| DATE | SIGNATURE OF SERVER |
|---|---|
| | |
| | ADDRESS OF SERVER |
| | |

---

## Federal Rule of Civil Procedure 45 (c), (d), and (e), as amended on December 1, 2007:

(c) PROTECTING A PERSON SUBJECT TO A SUBPOENA.

(1) Avoiding Undue Burden or Expense; Sanctions. A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The issuing court must enforce this duty and impose an appropriate sanction — which may include lost earnings and reasonable attorney's fees — on a party or attorney who fails to comply.

(2) Command to Produce Materials or Permit Inspection.

(A) Appearance Not Required. A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.

(B) Objections. A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing or sampling any or all of the materials or to inspecting the premises — or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:

(i) At any time, on notice to the commanded person, the serving party may move the issuing court for an order compelling production or inspection.

(ii) These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

(3) Quashing or Modifying a Subpoena.

(A) When Required. On timely motion, the issuing court must quash or modify a subpoena that:

(i) fails to allow a reasonable time to comply;

(ii) requires a person who is neither a party nor a party's officer to travel more than 100 miles from where that person resides, is employed, or regularly transacts business in person — except that, subject to Rule 45(c)(3)(B)(iii), the person may be commanded to attend a trial by traveling from any such place within the state where the trial is held;

(iii) requires disclosure of privileged or other protected matter, if no exception or waiver applies; or

(iv) subjects a person to undue burden.

(B) When Permitted. To protect a person subject to or affected by a subpoena, the issuing court may, on motion, quash or modify the subpoena if it requires:

(i) disclosing a trade secret or other confidential research, development, or commercial information;

(ii) disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party; or

(iii) a person who is neither a party nor a party's officer to incur substantial expense to travel more than 100 miles to attend trial

(C) Specifying Conditions as an Alternative. In the circumstances described in Rule 45(c)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:

(i) shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and

(ii) ensures that the subpoenaed person will be reasonably compensated

(d) DUTIES IN RESPONDING TO A SUBPOENA.

(1) Producing Documents or Electronically Stored Information. These procedures apply to producing documents or electronically stored information:

(A) Documents. A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.

(B) Form for Producing Electronically Stored Information Not Specified. If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.

(C) Electronically Stored Information Produced in Only One Form. The person responding need not produce the same electronically stored information in more than one form.

(D) Inaccessible Electronically Stored Information. The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

(2) Claiming Privilege or Protection.

(A) Information Withheld. A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:

(i) expressly make the claim; and

(ii) describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.

(B) Information Produced. If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information to the court under seal for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

(e) CONTEMPT.

The issuing court may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena. A nonparty's failure to obey must be excused if the subpoena purports to require the nonparty to attend or produce at a place outside the limits of Rule 45(c)(3)(A)(ii).

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | | |
|---|---|---|
| AMERICAN SERVICE INSURANCE COMPANY, an Illinois insurance company,<br>Plaintiff, | )<br>)<br>)<br>) | |
| v. | ) | Case No. 08 C 443 |
| | ) | |
| NAFTA GENERAL AGENCY, a Texas corporation, UNDERWRITERS MGA, INC., a Texas corporation, and RAMON VILLARREAL, an individual,<br>Defendants. | )<br>)<br>)<br>)<br>)<br>) | |

### Rider to Subpoena

1.      All documents (including, but not limited to, correspondence, e-mails (and attachments), facsimiles, voice mails and recordings) reflecting communications between American Service Insurance Company ("ASI") (including, but not limited to, their officers, agents, employees and attorneys) and one or more of the persons who are identified as signatories to the purported "Settlement Agreement and Mutual General Release" ("Agreement") (attached hereto as **Exhibit "A"**) (including, but not limited to, their officers, agents, employees and attorneys) regarding the negotiation, execution and/or partial performance of the Agreement from February 1, 2008 through the current date.

2.      All documents (including, but not limited to, correspondence, e-mails (and attachments), facsimiles, voice mails and recordings) reflecting communications between two or more of the of the persons who are identified as signatories to the purported Agreement (including, but not limited to, their officers, agents, employees and attorneys) regarding the negotiation, execution and/or partial performance of the Agreement from February 1, 2008 through the current date.

3.      All drafts of the Agreement.

# EXHIBIT A

## SETTLEMENT AGREEMENT AND MUTUAL GENERAL RELEASE

The parties to this Settlement Agreement and Mutual General Release, (the "Agreement"), entered into this ___ day of February, 2008 are AMERICAN SERVICE INSURANCE COMPANY, an Illinois insurance company, (hereinafter referred to as "ASI") as parties of the first part, and NAFTA GENERAL AGENCY, a Texas corporation ("NAFTA"), UNDERWRITERS MGA, Inc., a Texas corporation (UMGA), ALMEX SEGUROS, S.A. de C.V. ("ALMEX"), ASESORES de RIESGOS INTERNACIONALES DE MEXICO, S.A. de ,C.V. ("ARIMEX"), ASESORES de RIESGOS INTERNACIONALES, S.A. de C.V., ( "INTERNATIONAL"), International Underwriters General Agency, Inc. ("IUGA"), EAGLE MGA, INC., a Texas corporation, RAMON VILLARREAL, DANIEL HERNANDEZ, ALEJANDRO VILLARREAL, ALBERTO VILLARREAL AND LUPITA PELACHE (referred to incorrectly as "Pelanche" in the PMA), all other than ASI collectively referred to as "Parties of the second part," all parties being sometimes referred to individually as "Party" or collectively as "Parties."

### RECITALS

WHEREAS, ASI and NAFTA entered into a Program Manager Agreement ("PMA") effective July 1, 2006, for the issuance by ASI of personal and commercial non resident automobile insurance policies to Mexican nationals coming into the United States pursuant to the North American Free Trade Agreement. Per the Agreement, NAFTA agreed to act as the agent or manager of the insurance program with their duties including, inter alia, soliciting, issuing and servicing policies, collecting premiums and depositing the same into a Premium account for remittance to ASI.

WHEREAS, on or about February 23, 2007, UMGA, ALMEX, and ARIMEX were appointed as additional managers per the PMA . On or about June 12, 2007, INTERNATIONAL , IUGA and ALEJANDRO VILLARREAL were also added as parties to the PMA. RAMON VILLARREAL is a licensee of NAFTA and guarantor of NAFTA and UMGA's obligations under the PMA. DANIEL HERNANDEZ is Director of operations for NAFTA and per the PMA was given binding authority to bind the nonresident insurance policies the subject of the PMA. LUPITA PELACHE was also listed as an individual having binding authority per the PMA .

WHEREAS, on November 7, 2007, ASI notified NAFTA and UMGA that it intended to terminate the PMA based upon asserted excessive loss ratios, effective November 12, 2007. On November 15, 2007, ASI, NAFTA and UMGA agreed to extend the PMA until December 31, 2007, at which time the PMA would be terminated.

WHEREAS, on December 28, 2007, UMGA filed suit in Hidalgo County, Texas, against ASI, Case Number C-3094-07-A, and received an ex-parte temporary restraining order (TRO-1) purporting to extend the PMA termination based upon UMGA's challenge of the Loss ratio figures. NAFTA intervened in that case as an additional plaintiff. On January 11, 2008, a preliminary injunction hearing was held and the ex-parte TRO-1 was extended one business day until January 14, 2008 at 5:00 P.M.



TO

WHEREAS, on January 14, 2008, NAFTA filed suit in Cameron County, Texas, against ASI, Case Number 2008-01-0188, and received another ex-parte temporary restraining order (TRO-2) purporting to extend the PMA termination based upon NAFTA's challenge of the Loss ratio figures. Said TRO-2 expired on January 24, 2008.

WHEREAS, on January 21, 2008, ASI filed suit in the United Sates District Court for the Northern District of Illinois, Eastern Division, entitled, AMERICAN SERVICE INSURANCE COMPANY v. NAFTA, UMGA and RAMON VILLARREAL, Case No. 08 CV 443, seeking relief including a temporary restraining order prohibiting the further writing of any insurance policies per the PMA, an order prohibiting any further lawsuits from being filed by NAFTA or UMGA, and providing the immediate turnover of documents and the payment of monies per the PMA. On January 22, 2008, a TRO was issued providing the relief requested and a preliminary injunction hearing set for February 4, 2008. On February 4, 2008, after argument of counsel, the court issued an agreed injunction prohibiting the further issuing policies by NAFTA, UMGA and any of their agents, employees, affiliates or anyone acting in concert with them until further order of court.

WHEREAS, on January 23, 2008, *Underwriters MGA, Inc. v. American Service Insurance, et al.*, Hidalgo County, Texas Case No. C-3094-07-A ("the Hidalgo County case") was removed to Texas Federal court. On January 25, 2008, *NAFTA General Agency, Inc. v. American Service Insurance*, Cameron County, Texas Case No. 2008-01-0188-C ("the Cameron County, Texas case") was removed to Texas federal court.

WHEREAS, ASI, UMGA and EAGLE MGA, Inc. also entered into an Agreement entitled Program Manager Agreement effective January 1, 2007 for the Texas Private Passenger Auto insurance program (different and unrelated to the previously identified Program Manager Agreement which pertained only to the Nonresident auto insurance Program). On February 11, 2008, ASI terminated that Agreement by providing written notice to UMGA and Eagle per the Agreement effective ninety (90) days from the date of the Notice or May 11, 2008.

WHEREAS, THE PARTIES have agreed to settle all the pending matters and litigation between them and dismiss the two (2) pending cases in Texas Federal court and the Illinois Federal court action with prejudice, subject to the terms and conditions contained herein, and with the caveat that this Settlement Agreement shall be filed with the Federal court in Illinois and shall be entered as an Agreed Permanent Injunction Order and that Court shall retain jurisdiction over all parties to this Settlement Agreement for the purposes of enforcing the Settlement Agreement and its Order.



NOW, THEREFORE, IN CONSIDERATION OF THE MUTUAL PROMISES HEREIN CONTAINED, THE PARTIES HEREBY AGREE TO SETTLE FULLY ALL DISPUTES OF ANY KIND AND NATURE BETWEEN THEM UPON THE FOLLOWING TERMS AND CONDITIONS:

<u>TERMS</u>

1.    NAFTA and UMGA shall pay to ASI the sum of Three Hundred Fifty Thousand Dollars ($350,000) (hereinafter the "Payment"), which said sums shall be paid to ASI via wire transfer to ASI's Premium Fund Trust Account held at LaSalle Bank, NA bearing Account number 2153492 and ABA number 071000505, which wire transfers shall be as follows:  $250,000 shall occur on or before March 10, 2008; $50,000 shall occur on or before April 1, 2008; $50,000 shall occur on or before May 1, 2008.

2    All parties agree that the PMA is terminated as of May 31, 2008, with no extensions, and without any ability to challenge the validity of the termination date .

3.    No person or entity to this agreement shall solicit, sell, issue or renew any insurance policy to be issued by ASI per the PMA non resident program after March 31, 2008, and the parties all agree that all binding authority is suspended as of April 15, 2008, without any notice requirements, with no extensions and without any ability to challenge the validity of the suspension of binding authority date, the parties specifically waiving any and all challenges and or issues that may or could have been raised regarding the validity of the suspension of binding authority date. ASI and only ASI in their sole and absolute discretion, may elect to allow policies under the PMA nonresident program be issued after April 15, 2008 and until May 31, 2008, which said sole and absolute discretion shall not be subject to any challenge or review and the parties waive any and all challenges and or issues that may or could have been raised regarding the validity of the exercise of ASI's absolute discretion in determining any extension of the binding authority date after April 15, 2008. Regardless of whether ASI affords the parties additional binding authority after April 15, 2008, under no circumstances shall the PMA or any ability to solicit, sell, issue or renew ASI insurance polices under the PMA ever extend beyond May 31, 2008.  During any period of continuation of the PMA Nonresident Program, all premiums and fees generated shall be forwarded to ASI monthly consistent with the terms of the November 15, 2007, letter sent from ASI to Underwriters MGA, which said letter specified that 100% of all premiums and fees generated by Policies written by NAFTA/UMGA shall be sent to ASI. This shall also apply to any premiums and fees generated by any other entity or person a party to this Agreement including but not limited to the ALMEX, ARIMEX, INTERNATIONAL AND IUGA. The monthly payments of all fees and premiums generated shall be payable regardless of whether or not they are received by the parties of the second part.  The rates charged for any nonresident program business shall be based upon the November 15, 2007, rate pages as referenced in the November 15, 2007 Letter from ASI to UMGA. During any period of continuation of the PMA Nonresident Program, no commercial policies shall be issued for a term exceeding 6 months. The parties agree that ASI shall retain at all times sole and exclusive binding authority as to any commercial policies written during any such period of continuation of the PMA Nonresident Program.  The parties agree that, except to the extent that the parties are expressly permitted to issue ASI policies during a period of continuation of the PMA Nonresident Program, any documents purporting to be ASI policies or certificates that are issued by the parties of the second part as to the PMA Nonresident Program after April 15, 2008 are null and void. 

4.    The parties agree that NAFTA and UMGA shall both, upon entry of this Settlement Agreement and related orders in the U.S. District Court for the Northern District of Illinois,

immediately dismiss the current pending federal court cases in Texas federal court naming ASI and AVALON as a defendants with prejudice and provide copies of the dismissal with prejudice orders to ASI's Illinois counsel immediately upon receipt. ASI shall, upon the entry of this Settlement Agreement and related Orders in the U.S. District Court for the Northern District of Illinois, dismiss the current Illinois federal case naming NAFTA, UMGA and Ramon Villarreal as defendants with prejudice. The federal court in Illinois shall at all times retain personal an d subject matter jurisdiction over the parties to this agreement, to enforce the terms of this settlement agreement and corresponding Agreed Permanent Injunction court order. All parties to this Agreement agree to the exclusive personal and subject matter jurisdiction of the federal court in the Northern District of Illinois and also agree that the federal court of the Northern District of Illinois is the proper venue to enforce the terms of this Settlement Agreement and corresponding Court order. All parties to this Agreement further agree that they shall refrain from the filing of any and all new lawsuits of any kind related in any way to the PMA or the termination of the PMA or events arising out the PMA and its termination by ASI between and among or against the parties to this Agreement, including but not limited to any claims of Business defamation, tortuous interference, wrongful termination or any other related suit of any kind including against ASI, or any of its affiliates or parent company Kingsway Financial Services, Inc. or any of its subsidiaries or affiliates. Nothing herein, shall prevent ASI from pursuing any payments due to ASI from the parties to this Agreement for amounts owed under the PMA from January 1, 2008 to the termination hereunder.

5.    Each party of the second part shall forward all copies of Policy records to ASI ninety (90) days after the termination date of the program as set forth herein. Specifically, for the Nonresident program per the PMA, all policy records shall be forwarded to ASI by all entities by August 31, 2008. For the Eagle nonstandard program, which is terminated without extension as of May 11, 2008, all policy records shall be forwarded to ASI by UMGA and Eagle MGA, Inc. by August 9, 2008.

6.    All parties to this Agreement agree that the Program Manager Agreement for the Texas Private Passenger Auto Insurance Program between ASI and UMGA and Eagle MGA is terminated as of May 11, 2008, without extension and both UMGA and Eagle MGA and any all parties to that Agreement waive any and all objection to the termination of that Program or any issues related to the termination and agree that they will not file any lawsuit or legal proceeding of any kind including any arbitration regarding the validity of the termination of the Agreement. The parties agree that any documents purporting to be ASI policies or certificates for the Texas Private Passenger Auto Insurance Program that are issued by the parties of the second part after May 11, 2008 are null and void.



7.    The parties agree to cooperate fully with regard to the reporting, investigation and disposition of any and all claims including but not limited to collecting new loss report information and transmitting to ASI, securing copies of certificates, translation s ervices, securing cooperation of insureds for investigation, forwarding any and all claim correspondence, including but not limited to demands, complaints or lawsuits, and all legal correspondence. All pertinent communications and new loss information must be transmitted to ASI within 2 business days of receipt by NAFTA. and or UMGA, etc.

4

8.     ASI agrees to provide a Letter of Good Standing regarding the Nonresident PMA and agree that the parties to this Agreement can show the insurance marketplace such let ter.

9.     In the event that this Settlement Agreement is violated in any way by any of the parties of the Second part, such violation shall cause the rights of the parties to the Second part under the PMA or the Texas Private Passenger Auto Insurance Prog ram or this Settlement Agreement to immediately terminate without need for any further notice or demand.   Such immediate termination shall not affect ASI's ability to enforce any of its rights under the PMA, the Texas Private Passenger Auto Insurance Prog ram or under this Settlement Agreement.   (A violation of this Settlement Agreement shall also entitle ASI to enforce this Agreement and the corresponding Agreed Permanent Injunction against the violator(s) as contempt of the Federal court.)

10.     EFFECTIVE UPON  THE TENDER OF THE PAYMENT TO ASI BY UMGA AND OR NAFTA, ASI HEREBY RELEASES AND FOREVER DISCHARGE THE PARTIES OF SECOND PART, AS WELL AS THEIR CHILDREN, DESCENDANTS, HEIRS, TRUSTEES, PERSONAL REPRESENTATIVES, PARTNERS, CREDITORS, JUDGMENT CREDITORS , AGENTS, ATTORNEYS IN FACT AND ATTORNEYS AT LAW, ADMINISTRATORS AND FIDUCIARIES, AND EACH OF THEM, FROM ANY AND ALL MANNER OF ACTIONS, CAUSES OF ACTIONS, DEMANDS, CLAIMS, AGREEMENTS, PROMISES, DEBTS, LAWSUITS, LIABILITIES, RIGHTS, DUES, CONTROVERSIES, COS TS, EXPENSES AND FEES WHATEVER, WHETHER ARISING IN CONTRACT, TORT OR ANY OTHER THEORY OF ACTION, WHETHER ARISING IN LAW OR EQUITY, WHETHER KNOWN OR UNKNOWN, CHOATE OR INCHOATE, MATURED OR UNMARRIED, CONTINGENT OR FIXED, LIQUIDATED OR UNLIQUIDATED); ACCRUED OR UNACCRUED, ASSERTED OR UNASSERTED, FROM THE BEGINNING OF TIME UP TO THE DATE OF THIS AGREEMENT EXCEPT FOR THOSE OBLIGATIONS CREATED BY OR ARISING OUT OF THIS AGREEMENT, ASI EXPRESSLY WAIVES THE BENEFIT OF ANY STATUTE OR RULE OF LAW, WHICH, IF APPLIED TO THIS AGREEMENT, WOULD OTHERWISE PRECLUDE FROM ITS BINDING EFFECT ANY CLAIM AGAINST ANY RELEASED PARTY NOT NOW KNOWN BY ASI TO EXIST, EXCEPT AS NECESSARY FOR THE ASI TO ENFORCE THIS AGREEMENT, THIS AGREEMENT IS INTENDED TO BE A GENERAL RELEASE. NOTHING HEREIN SHALL LIMIT ASI'S ABILITY TO RECOVER ANY AMOUNTS DUE AND OWING PURSUANT TO THE PMA NONRESIDENT PROGRAM OR THE EAGLE TEXAS PRIVATE PASSENGER PMA WHICH MAY ACCRUE UNTIL THE TERMINATION DATES AGREED TO HEREIN BY THE PARTIES. 

11.     THE PARTIES OF THE SECOND PART, AND EACH OF THEM, HEREBY RELEASE AND FOREVER DISCHARGE ASI, AND EACH OF THEM, AS WELL AS THEIR PREDECESSORS, SUCCESSORS, ANY AND ALL OF THEIR RESPECTIVE PAST OR PRESENT OFFICERS, DIRECTORS, PARTNERS, AGENTS, ATTORNEYS, EMPLOYEES, TRUSTEES, ADMINISTRATORS AND FIDUCIARIES FROM ANY AND ALL MANNER OF ACTIONS, CAUSES OF ACTIONS, DEMANDS, CLAIMS, AGREEMENTS, PROMISES, DEBTS, LAWSUITS, LIABILITIES, RIGHTS, DUES, CONTROVERSIES, COSTS, EXPENSES AND FEES WHATEVER, WHETHER ARISING IN CONTRACT, TORT OR ANY OTH ER THEORY OF ACTION, WHETHER ARISING IN LAW OR EQUITY, WHETHER KNOWN OR

UNKNOWN, CHOATE OR INCHOATE, MATURED OR UNMATURED, CONTINGENT OR FIXED, LIQUIDATED OR UNLIQUIDATED, ACCRUED OR UNACCRUED, ASSERTED OR UNASSERTED, FROM THE BEGINNING OF TIME UP TO THE DATE OF THIS AGREEMENT EXCEPT FOR THOSE OBLIGATIONS CREATED BY OR ARISING OUT OF THIS AGREEMENT. ASI EXPRESSLY WAIVES THE BENEFIT OF ANY STATUTE OR RULE OF LAW, WHICH, IF APPLIED TO THIS AGREEMENT, WOULD OTHERWISE PRECLUDE FROM ITS BINDING EFFECT ANY CLAIM AGAINST ANY RELEASED PARTY NOT NOW KNOWN BY ASI TO EXIST. EXCEPT AS NECESSARY FOR ASI TO ENFORCE THIS AGREEMENT, THIS AGREEMENT IS INTENDED TO BE A GENERAL RELEASE.

12.    ASI represents that it has not assigned or transferred, or purported to assign or transfer, to any person or entity, any claim or any portion thereof or interest therein that is encompassed by this Agreement or the Lawsuit.

13    The PARTIES OF THE SECOND PART represent that none of them have assigned or transferred, or purported to assign or transfer, to any person or entity any claim or any portion thereof or interest therein that is encompassed by this Agreement or the Lawsuit.

14.    The Parties of the Second Part represent and warrant that they are not aware of any other person or entity besides the parties to this agreement that has been expressly or impliedly authorized to issue or bind any ASI policies or certificates under the PMA Nonresident Program or the Texas Private Passenger Auto Insurance Program at any time and will not create any new entity purporting to be able to bind any ASI policies. The Parties of the Second Part further agree that their rights under this Settlement Agreement shall not be assignable and that they will not attempt to assign any such rights.

15.    The Parties of the Second Part agree to indemnify, defend and hold harmless ASI against any and all losses, damages, expenses or costs, including but not limited to attorneys' fees and costs, stemming from certificates or policies issued after the termination of the PMA Nonresident Program or the Texas Private Passenger Auto Insurance Program. At all times, the Parties of the Second Part agree to take all reasonable steps to prevent the dissemination or issuance of any unauthorized ASI policies or certificates by any person or entity. Upon the termination of the PMA for the Nonresident Program and the PMA for the Texas Private Passenger Auto Insurance Program, the Parties of the Second Part also agree to: a) promptly notify any and all sub-producers, sub-agents, insurance brokers or clients with which they have dealings that the PMA Nonresident Program and the PMA for the Texas Private Passenger Auto Insurance Program have terminated; and b) take all reasonable steps to insure the prompt return to ASI or the prompt destruction of any unused ASI policy or certificate forms. 

16.    Confidentiality

(a)    Except as otherwise required by law or by a court of competent jurisdiction, Parties agree never to disclose or discuss the terms, conditions and amount of the Payment set forth in this Agreement, except to attorneys, accountants and financial advisors with a business need to know. The Parties agree that this Agreement will be kept confidential by each of the Parties except as

6

TO

required by law or a court of competent jurisdiction. Nothing herein shall preclude ASI from disclosing the contents herein to its Board of Directors and corporate parent and affiliates.

(b)    In the event any Party receives an inquiry about this settlement from any person or entity other than a person or entity identified in paragraph 13(a) herein, that Party shall respond that this matter has been settled and that the terms of the settlement itself are confidential.

(c)    If disclosure of the amount or any other term of this Settlement Agreement is requested by a person or entity pursuant to subpoena or other legal process, then the Party receiving such request shall provide written notice of said request to the other Parties hereto not less than five (5) days prior to due date disclosure is requested. The Party receiving such legal process shall make disclosure only as required by an order of a court of competent jurisdiction.

17.    This Agreement shall be binding upon and inure to the benefit of the respective successors, heirs, assigns, administrators, executors and legal representatives of the Parties and other entities described in this Agreement.

18.    Each Party warrants that no promise or inducement to enter into this Agreement has been offered or made except as set forth in this Agreement that they are entering into this Agreement without any threat or coercion and without reliance on any statement or representation made on behalf of any other Party, or by any person employed by or representing any Party, except for the written provisions and promises contained in this Agreement.

19.    This Agreement constitutes the entire agreement and understanding between the Parties with regard to the settlement of all matters, including but not limited to the matters raised, or which could have been raised, in the Lawsuit. This Agreement supersedes and replaces all prior commitments, negotiations and all agreements proposed or otherwise, whether written or oral, concerning the subject matters contained in this Agreement. This Agreement is an integrated document and the consideration stated in it is the sole consideration for this Agreement. This Agreement may only be amended by a written document signed by the Parties.

20.    If any provision, section, subsection or other portion of this Agreement shall be determined by any court of competent jurisdiction to be invalid, illegal of unenforceable in whole or in part, and such determination shall become final, such provision or portion shall be deemed to be severed or limited, but only to the extent required to render the remaining provisions and portion of this Agreement enforceable. This Agreement as thus amended shall be enforced so as to give effect to the intention of the Parties insofar as that is possible. 

21.    Nothing in this Agreement shall be construed as an admission of any wrongdoing or liability by any person or entity or an admission of the validity or invalidity of any claim or defense.

22.    This Agreement shall be deemed to have been executed and delivered within the State of Illinois and the rights and obligations of the Parties shall be construed and enforced in accordance with, and governed by, the laws of the State of Illinois without regard to any state's rules regarding conflict laws.

23.    This Settlement Agreement may be executed in one or more counterparts, each counterpart to be considered an original portion of this Settlement Agreement.

24.    The parties hereto each hereby submit to the jurisdiction of the United States District Court for the Northern District of Illinois sitting in Chicago, Illinois ("Northern District Court") and agree that the Northern District Court shall be the exclusive venue for the resolution of any and all disputes relating to or arising out of this Settlement Agreement. For the purpose of service of process or service of notice, the parties agree that notice or service shall be effective if served by personal delivery, U.S. Mail, certified mail or overnight delivery/courier service as follows:

To ASI:

American Service Insurance Company
150 Northwest Point Boulevard
Fifth Floor
Elk Grove Village, IL 60007
Attn: Thomas R. Ossmann

With a copy to:

Patrick M. Hincks
Sullivan Hincks & Conway
120 W. 22nd Street, Suite 100
Oak Brook, IL 60523

To the Parties of the Second Part:

Nafta General Agency, Inc.
594 Jose Marti Boulevard
Brownsville, TX 78526

IN WITNESS WHEREOF, the Parties have executed this Agreement on this date or dates set forth below.

AMERICAN SERVICE INSURANCE COMPANY
("ASI")

By: _____
      Date _March 20, 2008_____

8

INTERNATIONAL UNDERWRITERS GENERAL AGENCY, INC.
("IUGA")

By: _____
      Date _____

NAFTA GENERAL AGENCY                    UNDERWRITERS MGA, INC.

By: _____          By: _____
      Date   3/13/08                          Date _____

ALMEX SEGUROS, S.A. de C.V.             ASESORES de RIESGOS
                                        INTERNACIONALES DE MEXICO, S.A. de
                                        C.V.

By: _____          By: _____
      Date _____                  Date _____

ASESORES de RIESGOS INTERNACIONALES,    EAGLE, MGA, INC.
S.A. de C.V.

By: _____          By: _____
      Date _____                  Date _____

RAMON VILLARREAL                        DANIEL HERNANDEZ

_____              _____
      Date _____                  Date   3/13/08

9

TU

ALEJANDRO VILLARREAL                     LUPITA PELACHE

_____                  _____
      Date_____                     Date_____
ALBERTO VILLARREAL.

_____
      Date _____



10

ALEJANDRO VILLARREAL                    LUPITA PELACHE

_____          _____
Date_____                Date_____

ALBERTO VILLARREAL
_____
Date _____3-14-08_____

10

AV

TU

INTERNATIONAL UNDERWRITERS GENERAL AGENCY, INC.
("IUGA")

By: _____
    Date _____


NAFTA GENERAL AGENCY                    UNDERWRITERS MGA, INC.


By: _____        By: _____
    Date _____        Date _____


ALMEX SEGUROS, S.A. de C.V.             ASESORES de RIESGOS
                                        INTERNACIONALES DE MEXICO, S.A. de
                                        C.V.


By: _____        By: _____
    Date _____        Date ___ 3 - 14 - 08 ___


ASESORES de RIESGOS INTERNACIONALES,    EAGLE, MGA. INC.
S.A. de C.V.


By: _____        By: _____
    Date _____        Date _____


RAMON VILLARREAL                        DANIEL HERNANDEZ


_____            _____
    Date _____        Date _____

9

INTERNATIONAL UNDERWRITERS GENERAL AGENCY, INC.
("IUGA")

By: _____
    Date _____

NAFTA GENERAL AGENCY                    UNDERWRITERS MGA, INC.

By: _____    By: _____
    Date _____    Date _____

ALMEX SEGUROS, S.A. de C.V.            ASESORES de RIESGOS
                                       INTERNACIONALES DE MEXICO, S.A. de
                                       C.V.

By: _____    By: _____
    Date _____    Date _____

ASESORES de RIESGOS INTERNACIONALES,   EAGLE, MGA, INC.
S.A. de C.V.

By: _____    By: _____
    Date _____    Date 3/19/08

RAMON VILLARREAL                        DANIEL HERNANDEZ

_____         _____
    Date _____    Date _____

9

ALEJANDRO VILLARREAL

_____
    Date____

ALBERTO VILLARREAL

_____
    Date____

LUPITA PELACHE

_Lupita Pelache_
    Date____ 3/19/08

03/19/2008   07:34    9566839574              ALBENE GROUP                    PAGE 02/02

INTERNATIONAL UNDERWRITERS GENERAL AGENCY, INC.
("IUGA")

By: _____
      Date _____


NAFTA GENERAL AGENCY                    UNDERWRITERS MGA, INC.

By: _____        By: _____
      Date _____      Date _____


ALMEX SEGUROS, S.A. de C.V.             ASESORES de RIESGOS
                                         INTERNACIONALES DE MEXICO, S.A. de
                                         C.V.

By: _____        By: _____
      Date _____      Date _____


ASESORES de RIESGOS INTERNACIONALES,    EAGLE, MGA, INC.
S.A. de C.V.

By: _____        By: _____
      Date _____      Date _____


RAMON VILLARREAL                        DANIEL HERNANDEZ

      Date _____      Date _____

9

INTERNATIONAL UNDERWRITERS GENERAL AGENCY, INC. ("IUGA")

By: _____ PRESIDENT

Date _____

NAFTA GENERAL AGENCY

By: _____

Date _____

UNDERWRITERS MGA, INC.

By: _____

Date _____

ALMEX SEGUROS, S.A. de C.V.

By: _____

Date _____

ASESORES de RIESGOS INTERNACIONALES DE MEXICO, S.A. de C.V.

By: _____

Date _____

ASESORES de RIESGOS INTERNACIONALES, S.A. de C.V.

By: _____

Date _____

EAGLE, MGA, INC.

By: _____

Date _____

RAMON VILLARREAL

Date _____

DANIEL HERNANDEZ

Date _____

9

TO

ALEJANDRO VILLARREAL                        LUPITA PELACHE

_____            _____
            Date    3/7/08                              Date _____

ALBERTO VILLARREAL

_____
            Date

10

INTERNATIONAL UNDERWRITERS GENERAL AGENCY, INC.
("IUGA")

By: _____
    Date _____

NAFTA GENERAL AGENCY                    UNDERWRITERS MGA, INC.

By: _____            By: _____
    Date _____         Date _____

ALMEX SEGUROS, S.A. de C.V.             ASESORES de RIESGOS
                                        INTERNACIONALES DE MEXICO, S.A. de
                                        C.V.

By: _____            By: _____
    Date _____            Date _____

ASESORES de RIESGOS INTERNACIONALES,    EAGLE, MGA, INC.
S.A. de C.V.

By: _____            By: _____
    Date _____3/18/2008_____            Date _____

RAMON VILLARREAL                        DANIEL HERNANDEZ

_____                _____
    Date _____              Date _____

9