

Kubiesa, Spiroff, Gosselar,
Acker & DeBlasio, P.C.
Law Offices

105 South York Street, Ste. 250
Elmhurst, Illinois 60126
PHONE (630) 516-1800
FAX (630) 516-1808
E-MAIL: thefirm@ksgalaw.com
www.ksgalaw.com

May 28, 2008

VIA FACSIMILE
AND E-MAIL

Patrick M. Hincks
Sullivan Hincks & Conway
120 West 22nd Street
Suite 100
Oak Brook, IL 60523

Re: <u>American Service Insurance Company v. NAFTA General Agency, et al.</u>
U.S. District Court, N.D. of Ill., No. 08 CV 443

Dear Mr. Hincks:

This Letter Agreement is entered into between American Service Insurance Company ("ASI"), NAFTA General Agency, a Texas corporation ("NAFTA"), Underwriters MGA, Inc. ("UMGA"), Ramon Villarreal ("Villarreal") and Daniel Hernandez ("Hernandez") (hereinafter, collectively, the "Parties") on the date last set forth below to confirm and clarify the intentions of the Parties with respect to that certain "Settlement Agreement and Mutual General Release" ("Settlement Agreement") executed in connection with, and arising from, certain litigation commenced by ASI against NAFTA, UMGA and Villarreal styled <u>American Service Insurance Company v. NAFTA General Agency, et al.</u>, United States District Court for the Northern District of Illinois, Eastern Division, No. 08 C 443, a copy of which is attached hereto as **Exhibit A**, and incorporated by reference.

Specifically, the Parties confirm, clarify, warrant, represent and agree that:

1.     ~~With respect to Villarreal and Hernandez only~~ Paragraph 15 of the Settlement Agreement is amended to add a second paragraph that states: "Villarreal, Hernandez, NAFTA and UMGA shall have no obligation to indemnify, defend and hold harmless ASI against any and all losses, damages, expenses or costs, including but not limited to attorneys' fees and costs stemming from certificates or policies issued in violation of paragraphs 2 or 3 of the Settlement Agreement by ALMEX, ARIMEX, INTERNATIONAL and/or IUGA, unless it is found that Villarreal, Hernandez, NAFTA and/or UMGA, or any of NAFTA's or UMGA's officer, directors, employees or agents, acted in concert with or directly or indirectly authorized the issuance of ASI non-resident policies after April 15, 2008, in violation of paragraphs 2 or 3 of the Settlement Agreement with any of these entities; Villarreal, Hernandez, NAFTA and UMGA shall otherwise have all the indemnification obligations set forth in Paragraph 15 of the Settlement Agreement pertaining to their own respective actions."

1



Kubiesa, Spiroff, Gosselar, Acker & DeBlasio, P.C.

2.      Paragraph 1 of the Settlement Agreement is amended to add a second paragraph that states: "As of May 28, 2008, ASI, UMGA and NAFTA agree that $83,000 of the Payment remains outstanding. NAFTA and UMGA shall pay to ASI $20,000 towards the Payment by no later than Friday, June 6, 2008 via wire transfer to ASI's Premium Fund Trust Account held at LaSalle Bank, NA bearing account number 2153492 and ABA number 071000505. The remaining balance of the Payment owed to ASI in the amount of $63,000 (the "Balance Payment") shall be paid to ASI via wire transfer to ASI's Premium Fund Trust Account held at LaSalle Bank, NA bearing account number 2153492 and ABA number 071000505 on or before July 1, 2008. If the Balance Payment, or any portion thereof, is not paid in full by July 1, 2008, NAFTA and UMGA shall pay ASI the Balance Payment, or any remaining portion thereof, plus five (5) percent interest (which shall not be per annum or prorated), by no later than July 16, 2008. For example, if $50,000 is owed on July 1, 2008, the payment due by no later than July 16, 2008 shall be $52,500.00. If the Balance Payment, or any portion thereof, together with accumulated interest, remains unpaid as of July 16, 2008, NAFTA and UMGA shall pay ASI the Balance Payment, or any remaining portion thereof, together with accumulated interest (the "Unpaid Balance Payment") plus an additional five (5) percent interest (which shall not be per annum or prorated) on the Unpaid Balance Payment, by no later than July 30, 2008. If any portion or all of the Unpaid Balance Payment, together with accumulated interest, remains unpaid as of July 30, 2008, ASI shall be entitled to entry of a judgment against UMGA, NAFTA and Villarreal, jointly and severally, in the amount of the Unpaid Balance Payment and accumulated interest, by the United States District Court for the Northern District of Illinois, Eastern Division, which has retained jurisdiction to enforce the Settlement Agreement and this Letter Agreement, *and the amendment in Paragraph 1 of this letter Agreement is void.*

3.      Paragraph 1 of the Settlement Agreement is further amended to add a third paragraph that states: "With respect to premium *and fees* payments owed by ~~NAFTA and UMGA for the months of February 2008 and March 2008~~, which total $103,615.20 (the "February and March Premium Payment"), NAFTA and UMGA shall pay ASI the February and March Premium Payment, via wire transfer to ASI's Premium Fund Trust Account held at LaSalle Bank, NA bearing account number 2153492 and ABA number 071000505 on or before July 1, 2008. If the February and March Premium Payment, or any portion thereof, is not paid in full by July 1, 2008, NAFTA and UMGA shall pay ASI the February and March Premium Payment, or any remaining portion thereof, plus five (5) percent interest (which shall not be per annum or prorated), by no later than July 16, 2008. For example, if $50,000 is owed on July 1, 2008, the payment due by no later than July 16, 2008 shall be $52,500.00. If the February and March Premium Payment, or any portion thereof, together with accumulated interest, remains unpaid as of July 16, 2008, NAFTA and UMGA shall pay ASI the February and March Premium Payment, or any remaining portion thereof, together with accumulated interest (the "Unpaid February and March Premium Payment") plus an additional five (5) percent interest (which shall not be per annum or prorated), by no later than July 30, 2008. If any portion or all of the Unpaid February and March Premium Payment, together with accumulated interest, remains unpaid as of July 30, 2008, ASI shall be entitled to entry of a judgment against UMGA, NAFTA and Villarreal, jointly and severally, in the amount of the Unpaid February and

*any Parties of the Second Part pursuant to paragraph 3 of the Settlement Agreement for policies issued/coverage 2/1/08 through 3/31/08,*

2

Kubiesa, Spiroff, Gosselar, Acker & DeBlasio, P.C.

March Premium Payment and accumulated interest, by the United States District Court for the Northern District of Illinois, Eastern Division, which has retained jurisdiction to enforce the Settlement Agreement and this Letter Agreement." *written before April 15, 2008 12:01 a.m., regardless of when any such policy was issued.*

4.      Paragraph 1 of the Settlement Agreement is further amended to add a fourth *and fees* paragraph that states:  "With respect to any premium payments *to any* owed by NAFTA and UMGA related to policies issued from April 1, 2008 through April 15, 2008 (or any policies authorized to be issued by ASI thereafter, at its sole discretion, through May 31, 2008, (the "**Final Premium Payment**"). NAFTA and UMGA shall use their best efforts to agree on *determine* the amount of the Final Premium Payment by no later than June 15, 2008. NAFTA and UMGA shall then pay ASI the Final Premium Payment, via wire transfer to ASI's Premium Fund Trust Account held at LaSalle Bank, NA bearing account number 2153492 and ABA number 071000505 on or before July 15, 2008.  If the Final Premium Payment, or any portion thereof, is not paid in full by July 15, 2008, NAFTA and UMGA shall pay ASI the Final Premium Payment, or any remaining portion thereof, plus five (5) percent interest (which shall not be per annum or prorated), by no later than July 31, 2008.   For example, if $50,000 is owed on July 15, 2008, the payment due by no later than July 31, 2008 shall be $52,500.00.   If the Final Premium Payment, or any portion thereof, together with accumulated interest, remains unpaid as of July 31, 2008, NAFTA and UMGA shall pay ASI the Final Premium Payment, or any remaining portion thereof, together with accumulated interest (the "**Unpaid Final Premium Payment**") plus an additional five (5) percent interest (which shall not be per annum or prorated),  by no later than August 15, 2008.  If any portion or all of the Unpaid Final Premium Payment, together with accumulated interest, remains unpaid as of August 15, 2008, ASI shall be *Hernandez* entitled to entry of a judgment against UMGA, NAFTA and Villatreal, jointly and severally, in the amount of the Unpaid Final Premium Payment and accumulated interest, by the United States District Court for the Northern District of Illinois, Eastern Division, which has retained jurisdiction to enforce the Settlement Agreement and this Letter Agreement."

*any of the Parties to the Second Part pursuant to paragraph 3 of the Settlement Agreement*

5.      All other terms, conditions and provisions of the Settlement Agreement shall remain in full force and effect.

[balance of this page is blank]

3



Kubiesa, Spiroff, Gosselar, Acker & DeBlasio, P.C.

6.     Villarreal and Hernandez have no ownership interest in, and are not officers, directors and/or employees of, or compensated consultants to, any of the following entities identified in the Settlement Agreement: ALMEX SEGUROS, S.A. de C.V. ("ALMEX"), ASESORES de RIESGOS INTERNACIONALES DE MEXICO, S.A. de C.V. ("ARIMEX"), ASESORES de RIESGOS INTERNACIONALES, S.A. de C.V. ("INTERNATIONAL"), and International Underwriters General Agency, Inc. ("IUGA").

I, Ramon Villarreal, pursuant to 28 U.S.C. § 1746, declare under penalty of perjury, that the foregoing statements in Paragraph 6 of this Letter Agreement as they relate to me personally are true and correct.

/s/   _____

I, Daniel Hernandez, pursuant to 28 U.S.C. § 1746, declare under penalty of perjury, that the foregoing statements in Paragraph 6 of this Letter Agreement as they relate to me personally are true and correct.

/s/   _____

7.     The signature in the Settlement Agreement on behalf of ARIMEX is that of Roberto Teran. The signature in the Settlement Agreement on behalf of ALMEX is that of Jose Antonio Raigoza. The signature in the Settlement Agreement on behalf of IUGA is that of Alejandro Villarreal. The signature in the Settlement Agreement on behalf of INTERNATIONAL is that of *Mario Martinez. Hernandez procured signatures on behalf of these entities for purposes of the Settlement Agreement and based upon information obtained from these entities and/or personal knowledge, the individuals signing on behalf of these*

I, Daniel Hernandez, pursuant to 28 U.S.C. § 1746, declare under penalty of perjury, that the *entities were authorized to do so.* foregoing statements in Paragraph 7 of this Letter Agreement are true and correct.

*TO*

/s/   _____

8.     By this Letter Agreement, Villarreal, Hernandez, NAFTA and UMGA waive any objection to t he Settlement Agreement and agree to the entry of the Agreed Permanent Injunction attached hereto as **Exhibit B**.

4

*TO*

Kubiesa, Spiroff, Gosselar, Acker & DeBlasio, P.C.

6.    Villarreal and Hernandez have no ownership interest in, and are not officers, directors and/or employees of, or compensated consultants to, any of the following entities identified in the Settlement Agreement: ALMEX SEGUROS, S.A. de C.V. ("ALMEX"), ASESORES de RIESGOS INTERNACIONALES DE MEXICO, S.A. de C.V ("ARIMEX"), ASESORES de RIESGOS INTERNACIONALES, S.A. de C.V. ("INTERNATIONAL"), and International Underwriters General Agency, Inc. ("IUGA").

I, Ramon Villarreal, pursuant to 28 U.S.C. § 1746, declare under penalty of perjury, that the foregoing statements in Paragraph 6 of this Letter Agreement as they relate to me personally are true and correct.

/s/

I, Daniel Hernandez, pursuant to 28 U.S.C. § 1746, declare under penalty of perjury, that the foregoing statements in Paragraph 6 of this Letter Agreement as they relate to me personally are true and correct

/s/

7    The signature in the Settlement Agreement on behalf of ARIMEX is that of Roberto Teran. The signature in the Settlement Agreement on behalf of ALMEX is that of Jose Antonio Ruigoza. The signature in the Settlement Agreement on behalf of IUGA is that of Alejandro Villarreal. The signature in the Settlement Agreement on behalf of INTERNATIONAL is that of _Merix Martinez_

I, Daniel Hernandez, pursuant to 28 U.S.C. § 1746, declare under penalty of perjury, that the foregoing statements in Paragraph 7 of this Letter Agreement are true and correct.

/s/

8.    By this Letter Agreement, Villarreal, Hernandez, NAFTA and UMGA waive any objection to the Settlement Agreement and agree to the entry of the Agreed Permanent Injunction attached hereto as Exhibit B.

4

Kubiesa, Spiroff, Gosselar, Acker & DeBlasio, P.C.

6.    Villarreal and Hernandez have no ownership interest in, and are not officers, directors and/or employees of, or compensated consultants to, any of the following entities identified in the Settlement Agreement: ALMEX SEGUROS, S.A. de C.V. ("ALMEX"), ASESORES de RIESGOS INTERNACIONALES DE MEXICO, S.A. de C.V. ("ARIMEX"), ASESORES de RIESGOS INTERNACIONALES, S.A. de C.V. ("INTERNATIONAL"), and International Underwriters General Agency, Inc. ("IUGA").

I, Ramon Villarreal, pursuant to 28 U.S.C. § 1746, declare under penalty of perjury, that the foregoing statements in Paragraph 6 of this Letter Agreement as they relate to me personally are true and correct.

/s/    _____

I, Daniel Hernandez, pursuant to 28 U.S.C. § 1746, declare under penalty of perjury, that the foregoing statements in Paragraph 6 of this Letter Agreement as they relate to me personally are true and correct.

/s/    

7.    The signature in the Settlement Agreement on behalf of ARIMEX is that of Roberto Teran. The signature in the Settlement Agreement on behalf of ALMEX is that of Jose Antonio Raigoza. The signature in the Settlement Agreement on behalf of IUGA is that of Alejandro Villarreal. The signature in the Settlement Agreement on behalf of INTERNATIONAL is that of MARIO MARTINEZ.

I, Daniel Hernandez, pursuant to 28 U.S.C. § 1746, declare under penalty of perjury, that the foregoing statements in Paragraph 7 of this Letter Agreement are true and correct.

/s/    

8.    By this Letter Agreement, Villarreal, Hernandez, NAFTA and UMGA waive any objection to the Settlement Agreement and agree to the entry of the Agreed Permanent Injunction attached hereto as Exhibit B.

4



Kubiesa, Spiroff, Gosselar, Acker & DeBlasio, P.C.

9.    The Parties warrant, represent and agree that this Letter Agreement constitutes a valid writing between the Parties that is legally sufficient to constitute an amendment to the Settlement Agreement. This Letter Agreement may only be amended by a writing signed by the Parties.

10.    This Letter Agreement shall be deemed to have been executed and delivered within the State of Illinois and the rights and obligations of the Parties shall be construed and enforced in accordance with, and governed by, the laws of the State of Illinois without regard to any State's conflict of interest laws or rules.

[balance of this page is blank,
signatures to follow]

5

## SETTLEMENT AGREEMENT AND MUTUAL GENERAL RELEASE

The parties to this Settlement Agreement and Mutual General Release, (the "Agreement"), entered into this ____ day of February, 2008 are AMERICAN SERVICE INSURANCE COMPANY, an Illinois insurance company, (hereinafter referred to as "ASI") as parties of the first part, and NAFTA GENERAL AGENCY, a Texas corporation ("NAFTA"), UNDERWRITERS MGA, Inc., a Texas corporation (UMGA"), ALMEX SEGUROS, S.A. de C.V. ("ALMEX"), ASESORES de RIESGOS INTERNACIONALES DE MEXICO, S.A. de C.V. ("ARIMEX"), ASESORES de RIESGOS INTERNACIONALES, S.A. de C.V., ("INTERNATIONAL"), International Underwriters General Agency, Inc. ("IUGA"), EAGLE MGA, INC., a Texas corporation, RAMON VILLARREAL, DANIEL HERNANDEZ, ALEJANDRO VILLARREAL, ALBERTO VILLARREAL AND LUPITA PELACHE (referred to incorrectly as "Pelanche" in the PMA), all other than ASI collectively referred to as "Parties of the second part," all parties being sometimes referred to individually as "Party" or collectively as "Parties."

### RECITALS

WHEREAS, ASI and NAFTA entered into a Program Manager Agreement ("PMA") effective July 1, 2006, for the issuance by ASI of personal and commercial non resident automobile insurance policies to Mexican nationals coming into the United States pursuant to the North American Free Trade Agreement. Per the Agreement, NAFTA agreed to act as the agent or manager of the insurance program with their duties including, inter alia, soliciting, issuing and servicing policies, collecting premiums and depositing the same into a Premium account for remittance to ASI.

WHEREAS, on or about February 23, 2007, UMGA, ALMEX, and ARIMEX were appointed as additional managers per the PMA. On or about June 12, 2007, INTERNATIONAL, IUGA and ALEJANDRO VILLARREAL were also added as parties to the PMA. RAMON VILLARREAL is a licensee of NAFTA and guarantor of NAFTA and UMGA's obligations under the PMA. DANIEL HERNANDEZ is Director of operations for NAFTA and per the PMA was given binding authority to bind the nonresident insurance policies the subject of the PMA. LUPITA PELACHE was also listed as an individual having binding authority per the PMA .

WHEREAS, on November 7, 2007, ASI notified NAFTA and UMGA that it intended to terminate the PMA based upon asserted excessive loss ratios, effective November 12, 2007. On November 15, 2007, ASI, NAFTA and UMGA agreed to extend the PMA until December 31, 2007, at which time the PMA would be terminated.

WHEREAS, on December 28, 2007, UMGA filed suit in Hidalgo County, Texas, against ASI, Case Number C-3094-07-A, and received an ex-parte temporary restraining order (TRO-1) purporting to extend the PMA termination based upon UMGA's challenge of the Loss ratio figures. NAFTA intervened in that case as an additional plaintiff. On January 11, 2008, a preliminary injunction hearing was held and the ex-parte TRO-1) was extended one business day until January 14, 2008 at 5:00 P.M.





*Ex. A*

*TO*



**EXHIBIT**

B

WHEREAS, on January 14, 2008, NAFTA filed suit in Cameron County, Texas, against ASI, Case Number 2008-01-0188, and received another ex-parte temporary restraining order (TRO-2) purporting to extend the PMA termination based upon NAFTA's challenge of the Loss ratio figures. Said TRO-2 expired on January 24, 2008.

WHEREAS, on January 21, 2008, ASI filed suit in the United Sates District Court for the Northern District of Illinois, Eastern Division, entitled, AMERICAN SERVICE INSURANCE COMPANY v. NAFTA, UMGA and RAMON VILLARREAL, Case No. 08 CV 443, seeking relief including a temporary restraining order prohibiting the further writing of any insurance policies per the PMA, an order prohibiting any further lawsuits from being filed by NAFTA or UMGA, and providing the immediate turnover of documents and the payment of monies per the PMA. On January 22, 2008, a TRO was issued providing the relief requested and a preliminary injunction hearing set for February 4, 2008. On February 4, 2008, after argument of counsel, the court issued an agreed injunction prohibiting the further issuing policies by NAFTA, UMGA and any of their agents, employees, affiliates or anyone acting in concert with them until further order of court.

WHEREAS, on January 23, 2008, *Underwriters MGA, Inc. v. American Service Insurance, et al.*, Hidalgo County, Texas Case No. C-3094-07-A ("the Hidalgo County case") was removed to Texas Federal court. On January 25, 2008, *NAFTA General Agency, Inc. v. American Service Insurance*, Cameron County, Texas Case No. 2008-01-0188-C ("the Cameron County, Texas case") was removed to Texas federal court.

WHEREAS, ASI, UMGA and EAGLE MGA, Inc. also entered into an Agreement entitled Program Manager Agreement effective January 1, 2007 for the Texas Private Passenger Auto insurance program (different and unrelated to the previously identified Program Manager Agreement which pertained only to the Nonresident auto insurance Program). On February 11, 2008, ASI terminated that Agreement by providing written notice to UMGA and Eagle per the Agreement effective ninety (90) days from the date of the Notice or May 11, 2008.

WHEREAS, THE PARTIES have agreed to settle all the pending matters and litigation between them and dismiss the two (2) pending cases in Texas Federal court and the Illinois Federal court action with prejudice, subject to the terms and conditions contained herein, and with the caveat that this Settlement Agreement shall be filed with the Federal court in Illinois and shall be entered as an Agreed Permanent Injunction Order and that Court shall retain jurisdiction over all parties to this Settlement Agreement for the purposes of enforcing the Settlement Agreement and its Order.

NOW, THEREFORE, IN CONSIDERATION OF THE MUTUAL PROMISES HEREIN CONTAINED, THE PARTIES HEREBY AGREE TO SETTLE FULLY ALL DISPUTES OF ANY KIND AND NATURE BETWEEN THEM UPON THE FOLLOWING TERMS AND CONDITIONS:



10

<u>TERMS</u>

1.     NAFTA and UMGA shall pay to ASI the sum of Three Hundred Fifty Thousand Dollars ($350,000) (hereinafter the "Payment"), which said sums shall be paid to ASI via wire transfer to ASI's Premium Fund Trust Account held at LaSalle Bank, NA bearing Account number 2153492 and ABA number 071000505, which wire transfer's shall be as follows:  $250,000 shall occur on or before March 10, 2008; $50,000 shall occur on or before April 1, 2008; $50,000 shall occur on or before May 1, 2008.

2.     All parties agree that the PMA is terminated as of May 31, 2008, with no extensions, and without any ability to challenge the validity of the termination date .

3.     No person or entity to this agreement shall solicit, sell, issue or renew any insurance policy to be issued by ASI per the PMA non resident program after March 31, 2008, and the parties all agree that all binding authority is suspended as of April 15, 2008, without any notice requirements, with no extensions and without any ability to challenge the validity of the suspension of binding authority date, the parties specifically waiving any and all challenges and or issues that may or could have been raised regarding the validity of the suspension of binding authority date. ASI and only ASI in their sole and absolute discretion, may elect to a llow policies under the PMA nonresident program to be issued after April 15, 2008 and until May 31, 2008, which said sole and absolute discretion shall not be subject to any challenge or review and the parties waive any and all challenges and or issues that may or could have been raised regarding the validity of the exercise of ASI's absolute discretion in determining any extension of the binding authority date after April 15, 2008.  Regardless of whether ASI affords the parties additional binding authority after April 15, 2008, under no circumstances shall the PMA or any ability to solicit, sell, issue or renew ASI insurance polices under the PMA ever extend beyond May 31, 2008.   During any period of continuation of the PMA Nonresident Program, all premiums and fees generated shall be forwarded to ASI monthly consistent with the terms of the November 15, 2007, letter sent from ASI to Underwriters MGA, which said letter specified that 100% o f all premiums and fees generated by Policies written by NAFTA/UMGA shall be sent to ASI.  This shall also apply to any premiums and fees generated by any other entity or person a party to this Agreement including but not limited to the ALMEX, ARIMEX, INTERNATIONAL AND IUGA.  The monthly payments of all fees and premiums generated shall be payable regardless of whether or not they are received by the parties of the second part.  The rates charged for any nonresident program business shall be based upon the November 15, 2007, rate pages as referenced in the November 15, 2007 Letter from ASI to UMGA. During any period of continuation of the PMA Nonresident Program, no commercial policies shall be issued for a term exceeding 6 months. The parties agree that AS I shall retain at all times sole and exclusive binding authority as to any commercial policies written during any such period of continuation of the PMA Nonresident Program.  The parties agree that, except to the extent that the parties are expressly permi tted to issue ASI policies during a period of continuation of the PMA Nonresident Program, any documents purporting to be ASI policies or certificates that are issued by the parties of the second part as to the PMA Nonresident Program after April 15, 2008 are null and void.



4.     The parties agree that NAFTA and UMGA sha ll both, upon entry of this Settlement Agreement and related orders in the U.S. District Court for the Northern District of Illinois,

3

*TO*

immediately dismiss the current pending federal court cases in Texas federal court naming ASI and AVALON as a defendants with prejudice and provide copies of the dismissal with prejudice orders to ASI's Illinois counsel immediately upon receipt.   ASI shall, upon the entry of this Settlement Agreement and related Orders in the U.S. District Court for the Northern District of Illinois, dismiss the current Illinois federal case naming NAFTA, UMGA and Ramon Villarreal as defendants with prejudice. The federal court in Illinois shall at all times retain personal an d subject matter jurisdiction over the parties to this agreement, to enforce the terms of this settlement agreement and corresponding Agreed Permanent Injunction court order.  All parties to this Agreement agree to the exclusive personal and subject matter jurisdiction of the federal court in the Northern District of Illinois and also agree that the federal court of the Northern District of Illinois is the proper venue to enforce the terms of this Settlement Agreement and corresponding Court order. All parties to this Agreement further agree that the y shall refrain from the filing of any and all new lawsuits of any kind related in any way to the PMA or the termination of the PMA or events arising out the PMA and its termination by ASI between and among or against the parties to this Agreement, including but not limited to any claims of Business defamation, tortuous interference, wrongful termination or any other related suit of any kind including against ASI, or any of its affiliates or parent company Kingsw ay Financial Services, Inc. or any of its subsidiaries or affiliates. Nothing herein, shall prevent ASI from pursuing any payments due to ASI from the parties, to this Agreement for amounts owed under the PMA from January 1, 2008 to the termination hereunder.

5.     Each party of the second part shall forward all copies of Policy records to ASI ninety (90) days after the termination date of the program as set forth herein. Specifically, for the Nonresident program per the PMA, all policy records shall be forw arded to ASI by all entities by August 31, 2008. For the Eagle nonstandard program, which is terminated without extension as of May 11, 2008, all policy records shall be forwarded to ASI by UMGA and Eagle MGA, Inc. by August 9, 2008.

6.     All parties to this Agreement agree that the Program Manager Agreement for the Texas Private Passenger Auto Insurance Program between ASI and UMGA and Eagle MGA is terminated as of May 11, 2008, without extension and both UMGA and Eagle MGA and any all parties to that Agreement waive any and all objection to the termination of that Program or any issues related to the termination and agree that they will not file any lawsuit or legal proceeding of any kind including any arbitration regarding the validity of the termination of the Agreement.  The parties agree that any documents purporting to be ASI policies or certificates for the Texas Private Passenger Auto Insurance Program that are issued by the parties of the second part after May 11, 2008 are null and void.



7.     The parties agree to cooperate fully with regard to the reporting, investigation and disposition of any and all claims including but not limited to collecting new loss report information and transmitting to ASI, securing copies of certificates, translation s ervices, securing cooperation of insureds for investigation, forwarding any and all claim correspondence, including but not limited to demands, complaints or lawsuits, and all legal correspondence. All pertinent communications and new loss information must be transmitted to ASI within 2 business days of receipt by NAFTA, and or UMGA, etc.

4

TO

8.     ASI agrees to provide a Letter of Good Standing regarding the Nonresident PMA and agree that the parties to this Agreement can show the insurance marketplace such letter.

9.     In the event that this Settlement Agreement is violated in any way by any of the parties of the Second part, such violation shall cause the rights of the parties to the Second part under the PMA or the Texas Private Passenger Auto Insurance Program or this Settlement Agreement to immediately terminate without need for any further notice or demand.  Such immediate termination shall not affect ASI's ability to enforce any of its rights under the PMA, the Texas Private Passenger Auto Insurance Program or under this Settlement Agreement.   (A violation of this Settlement Agreement shall also entitle ASI to enforce this Agreement and the corresponding Agreed Permanent Injunction against the violator(s) as contempt of the Federal court.)

10.     EFFECTIVE UPON THE TENDER OF THE PAYMENT TO ASI BY UMGA AND OR NAFTA, ASI HEREBY RELEASES AND FOREVER DISCHARGE THE PARTIES OF SECOND PART, AS WELL AS THEIR CHILDREN, DESCENDANTS, HEIRS, TRUSTEES, PERSONAL REPRESENTATIVES, PARTNERS, CREDITORS, JUDGMENT CREDITORS, AGENTS, ATTORNEYS IN FACT AND ATTORNEYS AT LAW, ADMINISTRATORS AND FIDUCIARIES, AND EACH OF THEM, FROM ANY AND ALL MANNER OF ACTIONS, CAUSES OF ACTIONS, DEMANDS, CLAIMS, AGREEMENTS, PROMISES, DEBTS, LAWSUITS, LIABILITIES, RIGHTS, DUES, CONTROVERSIES, COSTS, EXPENSES AND FEES WHATEVER, WHETHER ARISING IN CONTRACT, TORT OR ANY OTHER THEORY OF ACTION, WHETHER ARISING IN LAW OR EQUITY, WHETHER KNOWN OR UNKNOWN, CHOATE OR INCHOATE, MATURED OR UNMARRIED, CONTINGENT OR FIXED, LIQUIDATED OR UNLIQUIDATED); ACCRUED OR UNACCRUED, ASSERTED OR UNASSERTED, FROM THE BEGINNING OF TIME UP TO THE DATE OF THIS AGREEMENT EXCEPT FOR THOSE OBLIGATIONS CREATED BY OR ARISING OUT OF THIS AGREEMENT. ASI EXPRESSLY WAIVES THE BENEFIT OF ANY STATUTE OR RULE OF LAW, WHICH, IF APPLIED TO THIS AGREEMENT, WOULD OTHERWISE PRECLUDE FROM ITS BINDING EFFECT ANY CLAIM AGAINST ANY RELEASED PARTY NOT NOW KNOWN BY ASI TO EXIST, EXCEPT AS NECESSARY FOR THE ASI TO ENFORCE THIS AGREEMENT, THIS AGREEMENT IS INTENDED TO BE A GENERAL RELEASE. NOTHING HEREIN SHALL LIMIT ASI'S ABILITY TO RECOVER ANY AMOUNTS DUE AND OWING PURSUANT TO THE PMA NONRESIDENT PROGRAM OR THE EAGLE TEXAS PRIVATE PASSENGER PMA WHICH MAY ACCRUE UNTIL THE TERMINATION DATES AGREED TO HEREIN BY THE PARTIES.  

11.     THE PARTIES OF THE SECOND PART, AND EACH OF THEM, HEREBY RELEASE AND FOREVER DISCHARGE ASI, AND EACH OF THEM, AS WELL AS THEIR PREDECESSORS, SUCCESSORS, ANY AND ALL OF THEIR RESPECTIVE PAST OR PRESENT OFFICERS, DIRECTORS, PARTNERS, AGENTS, ATTORNEYS, EMPLOYEES, TRUSTEES, ADMINISTRATORS AND FIDUCIARIES FROM ANY AND ALL MANNER OF ACTIONS, CAUSES OF ACTIONS, DEMANDS, CLAIMS, AGREEMENTS, PROMISES, DEBTS, LAWSUITS, LIABILITIES, RIGHTS; DUES, CONTROVERSIES, COSTS, EXPENSES AND FEES WHATEVER, WHETHER ARISING IN CONTRACT, TORT OR ANY OTHER THEORY OF ACTION, WHETHER ARISING IN LAW OR EQUITY, WHETHER KNOWN OR

UNKNOWN, CHOATE OR INCHOATE, MATURED OR UNMATURED, CONTINGENT OR FIXED, LIQUIDATED OR UNLIQUIDATED, ACCRUED OR UNACCRUED, ASSERTED OR UNASSERTED, FROM THE BEGINNING OF TIME UP TO THE DATE OF THIS AGREEMENT EXCEPT FOR THOSE OBLIGATIONS CREATED BY OR ARISING OUT OF THIS AGREEMENT. ASI EXPRESSLY WAIVES THE BENEFIT OF ANY STATUTE OR RULE OF LAW, WHICH, IF APPLIED TO THIS AGREEMENT, WOULD OTHERWISE PRECLUDE FROM ITS BINDING EFFECT ANY CLAIM AGAINST ANY RELEASED PARTY NOT NOW KNOWN BY ASI TO EXIST. EXCEPT AS NECESSARY FOR ASI TO ENFORCE THIS AGREEMENT, THIS AGREEMENT IS INTENDED TO BE A GENERAL RELEASE.

12.    ASI represents that it has not assigned or transferred, or purported to assign or transfer, to any person or entity, any claim or any portion thereof or interest therein that is encompassed by this Agreement or the Lawsuit.

13    The PARTIES OF THE SECOND PART represent that none of them have assigned or transferred, or purported to assign or transfer, to any person or entity any claim or any portion thereof or interest therein that is encompassed by this Agreement or the Lawsuit.

14.    The Parties of the Second Part represent and warrant that they are not aware of any other person or entity besides the parties to this agreement that has been expressly or impliedly authorized to issue or bind any ASI policies or certificates under the PMA Nonresident Program or the Texas Private Passenger Auto Insurance Program at any time and will not create any new entity purporting to be able to bind any ASI policies. The Parties of the Second Part further agree that their rights under this Settlement Agreement shall not be assignable and that they will not attempt to assign any such rights.

15.    The Parties of the Second Part agree to indemnify, defend and hold harmless ASI against any and all losses, damages, expenses or costs, including but not limited to attorneys' fees and costs, stemming from certificates or policies issued after the termination of the PMA Nonresident Program or the Texas Private Passenger Auto Insurance Program. At all times, the Parties of the Second Part agree to take all reasonable steps to prevent the dissemination or issuance of any unauthorized ASI policies or certificates by any person or entity. Upon the termination of the PMA for the Nonresident Program and the PMA for the Texas Private Passenger Auto Insurance Program, the Parties of the Second Part also agree to: a) promptly notify any and all sub-producers, sub-agents, insurance brokers or clients with which they have dealings that the PMA Nonresident Program and the PMA for the Texas Private Passenger Auto Insurance Program have terminated; and b) take all reasonable steps to insure the prompt return to ASI or the prompt destruction of any unused ASI policy or certificate forms. 

16.    Confidentiality

(a)    Except as otherwise required by law or by a court of competent jurisdiction, Parties agree never to disclose or discuss the terms, conditions and amount of the Payment set forth in this Agreement, except to attorneys, accountants and financial advisors with a business need to know. The Parties agree that this Agreement will be kept confidential by each of the Parties except as

6

*TO*

required by law or a court of competent jurisdiction. Nothing herein shall preclude ASI from disclosing the contents herein to its Board of Directors and corporate parent and affiliates.

(b)    In the event any Party receives an inquiry about this settlement from any person or entity other than a person or entity identified in paragraph 13(a) herein, that Party shall respond that this matter has been settled and that the terms of the settlement itself are confidential.

(c)    If disclosure of the amount or any other term of this Settlement Agreement is requested by a person or entity pursuant to subpoena or other legal process , then the Party receiving such request shall provide written notice of said request to the other Parties hereto not less than five (5) days prior to due date disclosure is requested. The Party receiving such legal process shall make disclosure only as required by an order of a court of competent jurisdiction.

17    This Agreement shall be binding upon and inure to the benefit of the respective successors, heirs, assigns, administrators, executors and legal representatives of the Parties and other entities described in this Agreement.

18.    Each Party warrants that no promise or inducement to enter into this Agreement has been offered or made except as set forth in this Agreement that they are entering into this Agreement without any threat or coercion and without reliance on any statement or representation made on behalf of any other Party, or by any person employed by or representing any Party, except for the written provisions and promises contained in this Agreement.

19.    This Agreement constitutes the entire agreement and understanding between the Parties with regard to the settlement of all matters, including but not limited to the matters raised, or which could have been raised, in the Lawsuit. This Agreement supersedes and replaces all prior commitments, negotiations and all agreements proposed or otherwise, whether written or oral, concerning the subject matters contained in this Agreement. This Agreement is an integrated document and the consideration stated in it is the sole consideration for this Agreement.  This Agreement may only be amended by a written document signed by the Parties.

20.    If any provision, section, subsection or other portion of this Agreement shall be determined by any court of competent jurisdiction to be invalid, illegal or unenforceable in whole or in part, and such determination shall become final, such provision or portion shall be deemed to be severed or limited, but only to the extent required to render the remaining provisions and portion of this Agreement enforceable. This Agreement as thus amended shall be enforced so as to give effect to the intention of the Parties insofar as that is possible.

21.    Nothing in this Agreement shall be construed as an admission of any wrongdoing or liability by any person or entity or an admission of the validity or invalidity of any claim or defense.

22.    This Agreement shall be deemed to have been executed and delivered within the State of Illinois and the rights and obligations of the Parties shall be construed and enforced in accordance with, and governed by, the laws of the State of Illinois without regard to any state's rules regarding conflict laws.



7

TO

23.    This Settlement Agreement may be executed in one or more counterparts, each counterpart to be considered an original portion of this Settlement Agreement.

24.    The parties hereto each hereby submit to the jurisdiction of the United States District Court for the Northern District of Illinois sitting in Chicago, Illinois ("Northern District Court") and agree that the Northern District Court shall be the exclusive venue for the resolution of any and all disputes relating to or arising out of this Settlement Agreement. For the purpose of service of process or service of notice or service shall be effective if served by personal delivery, U.S. Mail, certified mail or overnight delivery/courier service as follows:

To ASI:

American Service Insurance Company
150 Northwest Point Boulevard
Fifth Floor
Elk Grove Village, IL 60007
Attn: Thomas R. Ossmann

With a copy to:

Patrick M. Hincks
Sullivan Hincks & Conway
120 W. 22nd Street, Suite 100
Oak Brook, IL 60523

To the Parties of the Second Part:

Nafta General Agency, Inc.
594 Jose Marti Boulevard
Brownsville, TX 78526

IN WITNESS WHEREOF, the Parties have executed this Agreement on this date or dates set forth below.

AMERICAN SERVICE INSURANCE COMPANY
("ASI")

By: _____

Date March 20, 2008

8

INTERNATIONAL UNDERWRITERS GENERAL AGENCY, INC.
("IUGA")

By: _____
     Date _____

NAFTA GENERAL AGENCY                     UNDERWRITERS MGA, INC.

By: _____              By: _____
     Date  3/13/08                            Date _____

ALMEX SEGUROS, S.A. de C.V.              ASESORES de RIESGOS
                                          INTERNACIONALES DE MEXICO, S.A. de
                                          C.V.

By: _____              By: _____
     Date _____             Date _____

ASESORES de RIESGOS INTERNACIONALES,     EAGLE, MGA, INC.
S.A. de C.V.

By: _____              By: _____
     Date _____             Date _____

RAMON VILLARREAL                         DANIEL HERNANDEZ

_____                  _____
     Date _____             Date  3/13/08

9

ALEJANDRO VILLARREAL                    LUPITA PELACHE

_____          _____
Date_____                  Date_____

ALBERTO VILLARREAL

_____
Date_____

10

ALEJANDRO VILLARREAL                    LUPITA PELACHE

_____          _____
       Date_____                          Title_____

ALBERTO VILLARREAL
_____
       Date   3-14-05

10

INTERNATIONAL UNDERWRITERS GENERAL AGENCY, INC
("IUGA")

By: _____
        Date _____

NAFTA GENERAL AGENCY                    UNDERWRITERS MGA, INC.

By: _____          By: _____
        Date_____          Date_____

ALMEX SEGUROS, S.A. de C.V.             ASESORES de RIESGOS
                                        INTERNACIONALES DE MEXICO, S.A. de
                                        C.V.

By: _____          By _____
        Date_____          Date    3 - 14 - 08

ASESORES de RIESGOS INTERNACIONALES,    EAGLE, MGA, INC.
S.A. de C.V.

By:_____          By: _____
        Date_____          Date _____

RAMON VILLARREAL                        DANIEL HERNANDEZ

_____              _____
        Date_____          Date_____

RATM

TO

INTERNATIONAL UNDERWRITERS GENERAL AGENCY, INC.
("IUGA")

By: _____
    Date _____

NAFTA GENERAL AGENCY

By: _____
    Date _____

UNDERWRITERS MGA, INC.

By: _____
Date _____

ALMEX SEGUROS, S.A. de C.V.

By: _____
    Date _____

ASESORES de RIESGOS
INTERNACIONALES DE MEXICO, S.A. de
C.V.

By: _____
    Date _____

ASESORES de RIESGOS INTERNACIONALES,
S.A. de C.V.

By: _____
    Date _____

EAGLE, MGA, INC.

By: _____
    Date 3/19/08

RAMON VILLARREAL

_____
    Date _____

DANIEL HERNANDEZ

_____
    Date _____

9

Mar 19 08 07:48p    Hernandez Family                    (956) 541-3783          p.2

ALEJANDRO VILLARREAL                    LUPITA PELACHE

_____               _____
Date                                    Lupita Pelache
                                        Date  3/19/08
ALBERTO VILLARREAL

_____
Date

10

03/19/2008  07:34    9565839574                    ALBENS GROUP                    PAGE  02/02

INTERNATIONAL UNDERWRITERS GENERAL AGENCY, INC.
("IUGA")

By: _____
       Date_____

NAFTA GENERAL AGENCY                              UNDERWRITERS MGA, INC.

By: _____                       By: _____
       Date_____                       Date_____

ALMER SEGUROS, S.A. de C.V.                       ASESORES de RIESGOS
                                                   INTERNACIONALES DE MEXICO, S.A. de
                                                   C.V.

By: _____                       By: _____
       Date_____                       Date_____

ASESORES de RIESGOS INTERNACIONALES,   EAGLE, MGA, INC.
S.A. de C.V.

By: _____                       By: _____
       Date_____                       Date_____

RAMON VILLARREAL                                  DANIEL HERNANDEZ

_____                           _____
       Date_____                       Date_____

9

INTERNATIONAL UNDERWRITERS GENERAL AGENCY, INC.
("IUGA")

By: _____ PRESIDENT

Date _____

NAFTA GENERAL AGENCY                          UNDERWRITERS MGA, INC.

By: _____                 By: _____
     Date _____              Date _____

ALMEX SEGUROS, S.A. de C.V.                   ASESORES de RIESGOS
                                              INTERNACIONALES DE MEXICO, S.A. de
                                              C.V.

By: _____                 By: _____
     Date _____              Date _____

ASESORES de RIESGOS INTERNACIONALES,   EAGLE, MGA, INC.
S.A. de C.V.

By: _____                 By: _____
     Date _____              Date _____

RAMON VILLARREAL                              DANIEL HERNANDEZ

_____                     _____
     Date _____              Date _____

9

ALEJANDRO VILLARREAL                    LUPITA PELACHE

Date                                    Date

ALBERTO VILLARREAL

Date

10

Mar 18 08 11:05p     Hernandez Family                    (956) 541-3783          p.4

INTERNATIONAL UNDERWRITERS GENERAL AGENCY, INC.
("IUGA")

By: _____
     Date _____

NAFTA GENERAL AGENCY                    UNDERWRITERS MGA, INC.

By: _____              By: _____
    Date _____              Date _____

ALMEX SEGUROS, S.A. de C.V.              ASESORES de RIESGOS
                                         INTERNACIONALES DE MEXICO, S.A. de
                                         C.V.

By: _____              By: _____
    Date _____              Date _____

ASESORES de RIESGOS INTERNACIONALES,     EAGLE, MGA, INC.
S.A. de C.V.

By: _____ DIRECTOR             By: _____
    Date _____ 3/13/2008                    Date _____

RAMON VILLARREAL                         DANIEL HERNANDEZ

_____          _____
    Date                                     Date

9

TO

## DECLARATION OF MICHAEL SUERTH

I, Michael Suerth, pursuant to 28 U.S.C. § 1746, do hereby declare under penalty of perjury that the following statement is true and correct and, if called to testify, my testimony would be as follows:

1.  I am over the age of 18, have personal knowledge of and am competent to testify to the facts set forth herein.

2.  I am the Senior Vice-President of Finance, CFO and Treasurer for American Service Insurance Company ("ASI").

3.  I am familiar with the Program Manager Agreement ("PMA") between and among ASI, NAFTA General Agency and Underwriters MGA, Inc. and guaranteed by Ramon Villarreal.

4.  I am familiar with the Settlement Agreement and Letter Agreement entered into between ASI and NAFTA, UMGA, Ramon Villarreal and Daniel Hernandez.

5.  As part of my regular duties, I reviewed all monetary receipts and accompanying policy information as provided to us by NAFTA and UMGA. In conformity with the Settlement and Letter Agreements, I prepared the accompanying spreadsheet which totaled all monies due and owing to ASI from policies written by NAFTA, UMGA and their subagents along with monies received from them by ASI for the relevant periods. In addition, I added the interest calculation as set forth in the Letter Agreement dated May 28, 2008. In total, NAFTA, UMGA, Ramon Villarreal and Daniel Hernandez owe ASI $225,431.08 which includes interest calculated through August 31, 2008. As of September 1, 2008, an additional $10,246.87 in interest will also be due and owing per the Letter Agreement.

FURTHER AFFIANT SAYETH NOT.

I declare under penalty of perjury that the foregoing is true and correct. Executed on August 25, 2008:

_____
Michael Suerth



## NAFTA Settlement Summary

| Month | | Premiums | Gross Fees | ASI Fees | Commissions | Claim Fee Escrow | Loss Corr. | Gross Claim Fee | 10% Late Fee | Adjustments | Total Due | Earned | Payments | Balance Remaining |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Brought forward | | 3,292,526.27 | 388,373.50 | 120,663.75 | 578,830.64 | 17,348.42 | 102,662.40 | 179,464.20 | 5,396.50 | | (26,428.39) | 2,594,060.00 | | (26,428.39) |
| 1st installment | | | | | | | | | | 250,000.00 | 250,000.00 | 250,000.00 | 250,000.00 | 250,000.00 |
| 2nd installment due 4-1-08 | | | | | | | | | | 50,000.00 | 50,000.00 | 33,000.00 | 17,000.00 | 33,000.00 |
| 3rd installment due 5-1-08 | | | | | | | | | | 50,000.00 | 50,000.00 | | | 50,000.00 |
| January | pre- 11/15 | 16,088.00 | 708.00 | 212.40 | 2,895.84 | 1,140.03 | 6,514.48 | 11,400.34 | 755.30 | | 10,414.03 | | 59,129.03 | (60.50) |
| | post- 11/15 | 45,694.50 | 1,670.00 | 1,670.00 | 2,048.04 | 1,016.13 | 5,806.48 | 10,161.34 | 1,200.50 | | 48,654.50 | | | 0.00 |
| February | pre- 11/15 | 11,376.00 | 2,550.00 | 255.00 | | | | | | | 7,446.73 | 162,862.00 | 56,988.23 | 56,988.23 |
| | post- 11/15 | 46,986.50 | 2,556.00 | 2,556.00 | | | | | | | 49,541.50 | | | |
| March | pre- 11/15 | 23,003.50 | 3,014.00 | 904.20 | 4,140.63 | 1,072.09 | 6,126.24 | 10,720.92 | 3,902.40 | | 20,146.58 | 145,182.00 | 8,660.85 | 8,660.53 |
| | post- 11/15 | 37,661.50 | 1,862.00 | 1,862.00 | | | | | | | 39,523.50 | | | |
| April-est. | pre- 11/15 | | | | | | | | | | | | | |
| | post- 11/15 | | | | | | | | | | | | | |
| May | pre- 11/15 | | | | | | | | | | | | | |
| | post- 11/15 | | | | | | | | | | | | | |
| June | pre- 11/15 | | | | | | | | | | | | | |
| | post- 11/15 | | | | | | | | | | | | | |
| July | pre- 11/15 | | | | | | | | | | | | | |
| | post- 11/15 | | | | | | | | | | | | | |
| August | pre- 11/15 | | | | | | | | | | | 153,156.00 | | 51,009.53 |
| | post- 11/15 | | | | | | | | | | | | | |
| September | | | | | | | | | | | | 51,009.53 | | |
| October | | | | | | | | | | | | | | |
| November | | | | | | | | | | | | | | |
| December | | | | | | | | | | | | | | |
| **Total** | | 3,474,827.27 | 399,033.50 | 128,123.35 | 587,915.15 | 21,176.68 | 121,009.60 | 211,766.80 | 11,254.70 | 350,000.00 | 596,715.46 | 204,937.35 | 391,778.11 | (6,213.17) |
| Less corridor foregone | | | | | | | | | | | (6,213.17) | | | 103,629.87 |
| Excess claim fee paid NAFTA | | | | | | | | | | | 103,629.87 | | | 204,937.35 |
| **Inception to date** | | 3,474,827.27 | 399,033.50 | 128,123.35 | 587,915.15 | 21,176.68 | 121,009.60 | 211,766.80 | 11,254.70 | 350,000.00 | 204,937.35 | 461,180.00 | 391,778.11 | 204,937.35 |

Deposits
| | |
|---|---|
| Overdue | 204,937.35 |
| | 391,778.11 |
| 5% penalty on 7-1-08 balance | 10,246.87 |
| 5% penalty on 8-1-08 balance | 10,246.87 |
| **Total amount due** | 225,431.08 |

Payments received

| Deposit date | Amount | |
|---|---|---|
| 3/7/08 | 250,000.00 | 1st installment |
| 4/4/08 | 17,000.00 | 2nd installment partial |
| 4/4/08 | 8,628.20 | January partial |
| 4/5/08 | 13,511.06 | January partial |
| 4/7/08 | 5,894.17 | January partial |
| 4/8/08 | 60.50 | January partial |
| 4/8/08 | 31,035.10 | January partial |
| 4/4/08 | 13,168.00 | February partial |
| 5/21/08 | 26,780.63 | February partial |
| 6/11/08 | 6,300.00 | February partial |
| 7/10/08 | 19,400.45 | February/March partial |
| **Total** | **391,778.11** | |



EXHIBIT

D

**Pat Hincks**

| | |
|---|---|
| **From:** | Antonio DeBlasio [deblasio@ksgalaw.com] |
| **Sent:** | Tuesday, August 19, 2008 4:09 PM |
| **To:** | Pat Hincks |
| **Subject:** | FW: Email |

Pat - Here is an email from Danny Hernandez re: status.  I will let you know if I hear
from him tomorrow.

Antonio DeBlasio, Esq.
Kubiesa, Spiroff, Gosselar, Acker & DeBlasio, P.C.
150 S. York Street, Suite 250
Elmhurst, Illinois 60126
Tel.  630.516.1800
Fax  630.516.1808
DeBlasio@ksgalaw.com


-----Original Message-----
From: Daniel Hernandez [mailto:dthernandez1118@yahoo.com]
Sent: Tuesday, August 19, 2008 4:01 PM
To: Antonio DeBlasio
Subject: Email

Tony:

This is Danny Hernandez.  I am writing to you from my personal email account because we
are having communication problems down here.  I got your emails yesterday concerning Pat's
voicemail.  Unfortunately a major line was cut in this area so I have lost my company
emails, cell service and land line service.  I haven't been able to receive or make calls
or emails for the past 4 hours.  I will try to reach Ramon tomorrow and will get back to
you mid-morning.

Thanks,
Danny

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

AMERICAN SERVICE INSURANCE                )
COMPANY, an Illinois insurance company,   )
                                          )
            Plaintiff,                    )
                                          )
    v.                                    )        Case No. 08 CV 443
                                          )
NAFTA GENERAL AGENCY, a Texas,            )        Judge David H. Coar
Corporation, UNDERWRITERS MGA, Inc.,      )
a Texas corporation, and RAMON VILLARREAL,)
an individual,                            )
                                          )
            Defendants.                   )

## AGREED ORDER FOR PERMANENT INJUNCTION

This Matter coming to be heard pursuant to American Service Insurance

Company's Motion for Preliminary Injunction pursuant to Rule 65 of the Federal Rules

of Civil Procedure, all parties identified in paragraph B below, having been notified, and

having submitted to the jurisdiction of this Court, the Court having been apprised in the

premises, and the parties identified in paragraph B below, having agreed to the contents

of this Agreed Order for Permanent Injunction,

    A.    The Court finds that this Court has jurisdiction over the subject matter of

this action;

    B.    The Court finds that the following persons have submitted themselves to

the jurisdiction of this Court including for the purpose of entering into this Agreed

Permanent Injunction:  AMERICAN SERVICE INSURANCE COMPANY ("ASI") (also

referred to as "party of the first part", and NAFTA GENERAL AGENCY, a Texas

corporation ("NAFTA"), UNDERWRITERS MGA, Inc., a Texas corporation (UMGA"),

1



ALMEX SEGUROS, S.A. de C.V. ("ALMEX"), ASESORES de RIESGOS INTERNACIONALES DE MEXICO, S.A. de C.V. ("ARIMEX"), ASESORES de RIESGOS INTERNACIONALES, S.A. de C.V., ("INTERNATIONAL"), International Underwriters General Agency, Inc. ("IUGA"), EAGLE MGA, INC., a Texas corporation, RAMON VILLARREAL, DANIEL HERNANDEZ, ALEJANDRO VILLARREAL, ALBERTO VILLARREAL, LUPITA PELACHE (referred to collectively as "parties of the second part."),

IT IS THEREFORE HEREBY ADJUDGED, ORDERED AND DECREED AS FOLLOWS:

1.    The parties of the second part shall be enjoined, restrained and prohibited from soliciting, selling, issuing or renewing any insurance policy to be issued by ASI per the PMA non resident program after April 15, 2008.

2.    The parties of the second part shall be enjoined, restrained and prohibited from exercising any binding authority under the Texas Private Passenger Auto Insurance Program or any other program as of May 11, 2008, without further notice.

3.    The parties of the second part shall be enjoined restrained and prohibited from extending or seeking an extension of binding authority and from challenging the validity of the suspension of binding authority date of April 15, 2008, for policies issued per the PMA non resident program, and May 11, 2008 for any other insurance policy issued by ASI.

4.    ASI and only ASI may, in its sole and absolute discretion, elect to allow policies under the PMA nonresident program to be issued by parties of the second part after April 15, 2008 and until May 31, 2008, but the parties of the second part are enjoined, restrained and prohibited from challenging ASI's use of the discretion exercised

2

pursuant to this paragraph.

5. Regardless of whether ASI affords the parties of the second part additional binding authority after April 15, 2008, in its sole and absolute discretion, the parties of the second part shall be enjoined, restrained and prohibited from soliciting, selling, issuing or renewing ASI insurance polices under the PMA beyond May 31, 2008, under any circumstances.

6. The parties of the second part, including but not limited to, ALMEX, ARIMEX, INTERNATIONAL and IUGA, shall forward all premiums and fees generated in connection with the solicitation, sale, issuance or renewal of any insurance policy issued per the PMA to ASI monthly consistent with the terms of the November 15, 2007, letter sent from ASI to Underwriters MGA, which said letter specified that 100% of all premiums and fees generated by Policies written by NAFTA/UMGA shall be sent to ASI. The monthly payments of all fees and premiums generated shall be payable regardless of whether or not they are received by the parties of the second part. The rates charged for any nonresident program business shall be based upon the November 15, 2007, rate pages as referenced in the November 15, 2007 Letter from ASI to UMGA.

7. The parties of the second part operating pursuant to this Agreed Permanent Injunction are enjoined, restrained, and prohibited from issuing any commercial policy for a term exceeding six months.

8. ASI shall retain at all times sole and exclusive binding authority as to any commercial policies written during any period of continuation of the PMA Nonresident Program.

9. Except to the extent that the parties of the second part are expressly

permitted to issue ASI policies during a period of continuation of the PMA Nonresident Program, any documents purporting to be ASI policies or certificates that are issued by the parties of the second part as to the PMA Nonresident Program are null and void.

10.    Parties of the second part shall forward all copies of Policy records for the Nonresident program per the PMA to ASI by August 31, 2008. Parties of the second part shall forward all copies of Policy records for the Eagle nonstandard program to ASI by August 9, 2008.

11.    Parties of the second part are enjoined, restrained and prohibited from the filing of any and all new lawsuits of any kind related in any way to the PMA or the termination of the PMA or events arising out the PMA and its termination by ASI between and among or against the parties to this Agreement, including but not limited to any claims of business defamation, tortious interference, wrongful termination or any other related suit of any kind including against ASI, or any of its affiliates or parent company, Kingsway Financial Services, Inc., or any of its subsidiaries or affiliates.

12.    This Court shall retain personal and subject matter jurisdiction over ASI and parties of the second part for the purpose of enforcing the terms of the settlement agreement entered on March 2̶4̶, 2008 and for enforcing the provisions of this Agreed Permanent Injunction.

13.    ASI's lawsuit against Defendants NAFTA, UMGA and Ramon Villarreal is hereby dismissed with prejudice.

[continued on next page]

4

Dated: April 29, 2008.

ENTERED:

_____
United States District Court Judge

May 29, 2008
at 2:15

*Order prepared by:*
Patrick M. Hincks
Desmond Patrick Curran
Matthew P. Barrette
Sullivan Hincks & Conway
120 W. 22nd Street, Suite 100
Oak Brook, IL 60523

5